

LOKRING TECHNOLOGY, LLC
38376 APOLLO PARKWAY • WILLOUGHBY • OHIO 44094-7724
TEL.: (440) 942-0880 FAX: (440)-942-1186

# AMENDED & RESTATED

# LOKRING EXCLUSIVE DISTRIBUTOR AGREEMENT

This Agreement is made and entered into on this 25th day of April, 2016, by and between **Lokring Technology, LLC** ("Company"), with its principal offices located at 38376 Apollo Parkway, Willoughby, OH 44094, and **Shepard & Associates, Inc., d/b/a "Lokring Southwest Company"**, a Texas corporation ("Lokring SW"), **Joe Shepard**, an individual and presently the Majority Shareholder of Lokring SW (J. Shepard), and **Brad Shepard**, an individual and as of July 1, 2016 the Majority Shareholder of Lokring SW ("B. Shepard") (hereafter, B. Shepard, J. Shepard and Lokring SW collectively referred to as "Distributor"), is to EVIDENCE THAT:

WHEREAS, Joe Shepard, Lokring SW, and the Company are parties to a certain distributor agreement dated as of July 8th, 2003 (the "2003 Lokring SW Distributor Agreement"), pursuant to which Lokring had granted to Joe Shepard and Lokring SW the exclusive right to solicit purchase order for Lokring products in the service area described therein;

WHEREAS, effective as of July 1, 2016, B. Shepard, Lokring SW and the Joe Shepard closed on a certain Stock Purchase Agreement (the "Purchase Agreement"), pursuant to which B. Shepard will acquire all of the capital stock of the Lokring SW formerly owned by Joe Shepard;

WHEREAS, pursuant to Section 1 of the 2003 Lokring SW Distributor Agreement, Joe Shepard and Lokring SW are required to obtain the Company's written consent to any change of ownership in Lokring SW;

WHEREAS, the Company has agreed to consent to the change of ownership of Lokring SW, subject to the condition that J. Shepard, B.Shepard and Lokring SW enter into an Amended and Restated Lokring Exclusive Distributor Agreement as set forth herein; and

WHEREAS, this Agreement sets forth the understanding of the parties under which the Distributor shall distribute the products of Company within the territory hereinafter described;

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, the parties hereto hereby represent and agree as follows:

1.     **Service Area.**

1.1     Company hereby appoints Distributor as an exclusive, authorized distributor to promote the sale of and sell the following described products manufactured by Company, being hereinafter referred to as "Products" and described below, within the territory consisting of the geographical, industry, and/or customer market area identified as the Primary Sales and Service Area and described in <u>Appendix A</u> attached hereto. Further, Company appoints Distributor, as one of two distributors to sell to and service such customers that operate offshore in the Gulf of Mexico, as more fully described in Appendix A1. The exclusive nature of this Agreement means that Company will not, and will not authorize any other person (as used in this Agreement, "person" includes proprietorship,

EXHIBIT

B

tabbies



LOKRING TECHNOLOGY, LLC
38376 APOLLO PARKWAY • WILLOUGHBY • OHIO 44094-7724
TEL.: (440) 942-0880 FAX: (440)-942-1186

partnership, corporation, limited liability company or partnership, or other entity) to, sell Products within the Primary Sales and Service Area during the term of this Agreement, except as provided in Section 1.6, below. Nothing in this Agreement shall be construed to preclude Company from marketing, selling or leasing any Products to any purchaser outside the Primary Sales and Service Area.

1.2    Distributor agrees to service Company's Products in the Primary Sales and Service Area, regardless of whether Distributor participated in the original sale of such Products, and, if applicable, further agrees to provide necessary service to purchasers of Company's Products located in the area set forth in Appendix B attached hereto (Secondary Sales and Service Area) (the Primary Sales and Service Area and Secondary Sales and Service Area are hereinafter collectively referred to as the "Service Areas"). Distributor acknowledges that Company, in its sole discretion, may appoint other persons to sell and service Company's products in the Secondary Sales and Service Area, at which time Distributor shall be relieved of the obligation imposed by this paragraph to service Company's products in the Secondary Sales and Service Area.

1.3    Distributor shall obtain the written consent of Company prior to opening a branch office located in the Secondary Sales and Service Area.

1.4    Distributor shall be barred, even in the Primary Sales and Service Area, from selling to certain excluded markets as set forth herein and as may be set forth in or modified by polices issued by Company from time to time in accordance with Section 5.1 of this Agreement. As of the date of this Agreement, explicitly excluded markets involve the sale of products for use in home and/or commercial heating, ventilating, air conditioning, purification, refrigerating and freezing. "Refrigerating and freezing" as used herein shall mean any products or services designed for and used in the following refrigeration and air conditioning products used for cooling: refrigerators, freezers, home and commercial air conditioners and automotive air conditioners. These products are (A) primarily designed for copper, aluminum and steel tubing; (B) limited to tubing under one inch (1") in outside diameter; and (C) include both single ring applications and fittings designed for these products. Further, Distributor shall be barred from selling to any customer that purchases through a central purchasing arrangement, that is subject to Company's Central Purchasing Policy (as described in Section 5.1(o) of this Agreement), whether or not such customer previously entered into a Central Purchasing Agreement with Company.

1.5    Distributor shall be prohibited from selling, even in the Primary Sales and Service Area, to certain "house accounts" to which Company sells. As of the date of this Agreement, the "house accounts" are set forth on Appendix C, attached hereto and incorporated herein by reference. From time to time, the list of "house accounts" may be modified, including the deletion of "house accounts" or the addition of new "house accounts" through policies issued by Company in accordance with Section 5.1 of this Agreement. Exhibit 1 shall automatically be deemed to be amended or modified based on any policies issued by Company subsequent to the date of this Agreement.

2

Copyright 2016 Lokring Technology, All rights reserved
Lokring Exclusive Distributor Agreement

www.lokring.com



LOKRING TECHNOLOGY, LLC
38376 APOLLO PARKWAY • WILLOUGHBY • OHIO 44094-7724
TEL.: (440) 942-0880 FAX: (440)-942-1186

1.6     Distributor acknowledges and agrees that if Distributor is unable, at any time, to fully perform Distributor's obligations set forth in Section 5 of this Agreement, adequately and to the satisfaction of Company, in its sole and exclusive discretion, to promote, market and sell the Product in the Primary Sales and Service Area or the Secondary Sales and Service Area, as the case may be, then Company has the exclusive right to modify the Primary Sales and Service Area and/or the Secondary Sales and Service Area, which modified Service Areas will be reflected by an amendment to <u>Appendix A</u> or <u>Appendix B</u> as the case may be. Nothing in this Section 1.5 shall preclude Company from exercising any other rights afforded the Company under this Agreement, including the right to terminate this Agreement in accordance with the applicable provisions of Section 12.

2.      <u>Products.</u> As of the date of this Agreement, Products shall mean the Products listed in <u>Appendix D</u>, and any Installation Tools and Accessories also listed in <u>Appendix D</u>. From time to time, the list of Products may be modified, including the deletion of Products or the addition of new Products through policies issued by Company in accordance with Section 5.1 of this Agreement. <u>Appendix D</u> shall automatically be deemed to be amended or modified based on any policies issued by Company subsequent to the date of this Agreement. Company, in its sole discretion, reserves the right, without limitation and without prior notice, to cease manufacturing any or all Products, to limit quantities of Products ordered by Distributor and to alter or change the composition of Products.

3.      <u>Price and Payment Term.</u>

3.1     **Pricing and Price Modifications:** Distributor shall purchase Products only from Company at the agreed upon prices set forth on the price list furnished by Company and such other price lists as shall be issued from time to time by Company (the "Price Lists"), the most recent Price List to govern all cases. Notwithstanding the preceding, the Company recognizes from time to time, Distributor may purchase Products from another of Company's distributors; as such, Distributor shall not be in breach of this Agreement if it does purchase directly from another of Company's distributors if Distributor provides written notification to Company. All Price Lists shall quote prices in U.S. dollars and all payments made by Distributor to Company shall be made in U.S. dollars. The current Price Lists and Distributor Pricing for all Products are detailed in <u>Appendix E</u>. The Price List set forth in <u>Appendix E</u> shall always be deemed to be modified or amended to conform to the most current Price List offered by Company. All orders, and re-orders, shall at all times be based on the Company's current Price List. Should Distributor order less than the Minimum Reorder Quantities, parts will be billed to Distributor at the prices and quantities listed in <u>Appendix E</u>. In the event that customer requests a non-stock product, Distributor will contact Company for pricing. Company reserves the right to revise pricing at any time upon Company's publishing of revisions to the Price List. Such revised prices shall apply to all orders received and accepted after the date of such revision. Company shall use reasonable efforts to provide Distributor with advance notice of any

3

Copyright 2016 Lokring Technology, All rights reserved
Lokring Exclusive Distributor Agreement                           www.lokring.com



LOKRING TECHNOLOGY, LLC
38376 APOLLO PARKWAY • WILLOUGHBY • OHIO 44094-7724
TEL.: (440) 942-0880 FAX: (440)-942-1186

changes in prices (other than special promotions). All costs and expenses incurred by Distributor in fulfilling its obligations hereunder shall be borne by Distributor.

3.2 **Pricing for LOKTOOL Installation Tooling:** Price List and Distributor Pricing of LOKTOOL Installation Tool Kits, Pumps and Accessories are detailed in <u>Appendix E</u>.

3.3 **Taxes:** The Price List does not include any federal, state, or local taxes, duties or assessments that may be applicable to the Products, which shall be paid by the Distributor. When Company has the legal obligation to collect such taxes, the appropriate amount shall be added to Distributor's invoice and paid by Distributor, in accordance with the payment terms set forth in Section 3.4 below, unless Distributor provides Company with a valid tax exemption certificate authorized by the appropriate taxing authority.

3.4 **Payment:** Upon approval of Distributor's credit by Company, terms of payment for the Product are net thirty (30) days from date of Company's invoice.

3.5 **Late Payment:** Distributor shall pay a late charge at the lesser of: (i) one and one-half percent (1.5%) per month or (ii) the maximum interest rate permitted by law, for any amounts which are not paid in full within the time period provided in Section 3.4 until such amounts are paid in full to Company.

4. <u>**Purchase Terms.**</u>

4.1 **Purchase Orders:** All orders for Products submitted by Distributor shall be initiated by written purchase orders in accordance with this Section ("Purchase Terms"), provided, however, Distributor may place an order by facsimile transmission or e-mail if a confirming purchase order is received by Company within five (5) days thereafter. No Purchase Order shall be binding until accepted and acknowledged by Company in writing.

4.2 **Purchase Order Terms:** All Purchase Orders shall state the part number, description and quantity of the Products ordered, the requested delivery date, the requested location for delivery and the requested method of delivery. Once an order has been accepted, Company shall use its best efforts to deliver Products at the time requested in the Purchase Order, but shall in no event be liable for failure to do so. Any other terms in the Distributor's Purchase Order or acknowledgement are not binding on the Company and are considered deleted and of no force or effect.

4.3 **Inventory:** During the term of this Agreement, Distributor agrees to maintain a minimum line item inventory of no less than ten percent (10%) of the previous year's sales.

4.4 **Lease/Rental Tooling:** Distributor agrees to make this tooling available to first-time users either free of charge, or on a rental/lease basis, as incentive to first-time users of the Company's Products. Distributor also agrees to stock tooling spare parts and accessories,

4

Copyright 2016 Lokring Technology, All rights reserved
Lokring Exclusive Distributor Agreement



LOKRING TECHNOLOGY, LLC
38376 APOLLO PARKWAY • WILLOUGHBY • OHIO 44094-7724
TEL.: (440) 942-0880 FAX: (440)-942-1186

and to train personnel in the assembly, disassembly, repair and maintenance of Installation Tooling.

4.5 **Change Orders:** Distributor may use a written "Change Order" for cancellation, or rescheduling to the extent permitted by this Section 4.5. The Change Order shall be without penalty for Purchase Orders that have not yet been accepted by Company. For Purchase Orders that have been accepted by Company, but have not yet been shipped (excluding the Initial Stocking Order), Distributor may use a Change Order only upon written approval of Company. A cancellation charge may apply (for the cancellation of Purchase Orders already accepted by Company). Special Orders are non-cancelable and non-returnable. For purposes of this Agreement written communications can be in any form of writing customarily used by Company to communicate with Distributor, including through use of Flowan software or other related customer service software.

4.6 **Distributor Breach:** Notwithstanding any prior acceptance by Company of a Purchase Order, Company shall not be obligated to ship Products if Distributor is in breach of this Agreement at the time of the scheduled shipment.

4.7 **Delivery:** All Products delivered pursuant to the terms of this Agreement shall be packed for shipment in Company's standard shipping cartons, marked for shipment to Distributor's address requested in the Purchase Order and delivered to Distributor or its carrier F.O.B. (as that term is defined by Lokring Technology, Willoughby, Ohio) Company's factory or work place, at which time title to such Products and risk of loss shall pass to Distributor. Company may make partial shipments of Products, which will be separately invoiced. Partial shipments will not affect Distributor's obligation relating to the balance of the Purchase Order. The Product prices do not include any freight, insurance and other shipping expenses, special packaging expenses, imposts and similar charges associated with delivery of the Products to Distributor (the "Delivery Costs"). These expenses shall be paid by Distributor, in accordance with payment terms.

4.8 **Inspection/Acceptance:** Distributor shall inspect all Products promptly following delivery and, within ten (10) days following delivery (the "Inspection period"), shall notify the freight forwarder and Company of any claim for damages or shortages. No claims for damages and shortages may be made after this ten-day period.

4.9 **Inventory Returns and Maintenance of Tooling:** The return of any Product shall be handled on a case-by-case basis between Distributor and Company. It is the responsibility of Distributor to return tooling to Company for overhauling, maintenance or upgrade on an annual basis. Annual maintenance of tooling is at a cost of shipping, replacement parts and labor, which costs shall be paid by Distributor. If annual maintenance, overhauling or upgrade is not performed as required herein, tooling will be considered Ineligible Inventory (as defined below in Section 12.5) upon termination of this Agreement.

5

Copyright 2016 Lokring Technology, All rights reserved
Lokring Exclusive Distributor Agreement

www.lokring.com



LOKRING TECHNOLOGY, LLC
38376 APOLLO PARKWAY • WILLOUGHBY • OHIO 44094-7724
TEL.: (440) 942-0880 FAX: (440)-942-1186

4.10 **Modifications or Changes to Products:** No modifications or changes to the Products or Tooling are permitted unless express written permission has been provided by Company.

## 5. Distributor's Obligations.

5.1 **Duties of Distributor:** During the term of this Agreement, from time to time, Company shall furnish Distributor policies and procedures, which it has issued for its distributors, and Distributor agrees to abide by and carry out the provisions of such policies and procedures. Distributor further agrees:

(a) that during the term of this Agreement, Distributor will devote its best reasonable efforts to the promotion, solicitation, and sale of Company's Products, will provide aggressive solicitation and efficient distribution of Company's Products in the Primary Sales and Service Area, will maintain adequate service and warehouse facilities, adequate sales and service representatives, and adequate stocks of inventory so as to service customers and so as to enable Distributor to exercise its best efforts in soliciting purchase orders and promoting the Company's Products in the Primary Sales and Service Area, and will not handle or act as agent, representative or distributor for any products or lines of products other than those of Company or those authorized by Company;

(b) Not to sell competitive products, including but not limited to mechanically attached compression-style tube or pipe fitting and any fluid-connector product (i.e. steam traps, ball valves, etc.);

(c) Distributor will travel to the Primary Sales and Service Area and call on companies whose business is to specify and influence the selection of the Products, even if those companies normally do not purchase the Products;

(d) Distributor shall provide for training and safety seminars for purchasers of the Products, as deemed necessary by Distributor, customer or Company;

(e) Distributor shall undertake the responsibility of investigating all Product complaints in the Service Areas in accordance with Company's instructions, and shall promptly communicate the details of any incident that resulted in injury or property damage to the Company using the Lokring Customer Incident Report Form;

(f) Distributor shall be responsible for providing to all customers within said Primary Sales and Service Areas all technical material and Product information intended for customer use made available to it by Company;

(g) Distributor shall handle all inquiries from customers or prospective customers in the Primary Sales and Service Areas in the following manner:

(i) every effort shall be made to personally call on the customer or prospective customer; and

(ii) any and all assistance or service required as deemed necessary by the Distributor, customer or Company to sell and service the Products shall be communicated and made available to said inquirer;

(h) Distributor shall provide for service in the Primary Sales and Service Areas through its own employees; or, in the case of Secondary Sales and Service Areas,

6

Copyright 2016 Lokring Technology, All rights reserved
Lokring Exclusive Distributor Agreement

www.lokring.com



LOKRING TECHNOLOGY, LLC
38376 APOLLO PARKWAY • WILLOUGHBY • OHIO 44094-7724
TEL.: (440) 942-0880 FAX: (440)-942-1186

       if not through its own employees, by persons approved of in writing by Company;

(i)    Distributor shall not solicit or sell Products outside the Primary Sales and Service Area, except as may be permitted to be sold in the Secondary Sales and Service Area, if any, or as approved by the Company;

(j)    Distributor agrees to sell the Products only for utilization by the purchaser. No Products will be sold to persons who, in the ordinary course of business, are not end users and primarily deal with the Products for resale, unless the end user company name, address, purchase order number, or requisitioner's name and phone number of the end user is disclosed to Distributor. Specifically, no Product shall be sold to supply houses, master distributors, catalogue houses, repackers, etc., unless Distributor has obtained Company's consent and the provisions of this paragraph (j) are satisfied.

(k)    The Majority Shareholder of Distributor, as evidenced by his signature to this Agreement, absolutely and unconditionally personally guarantees the payment of all debts to Company and the performance of all obligations to Company of Distributor including payment for Products which Distributor may from time to time purchase from Company;

(l)    Distributor shall at all times carry general product, fire and umbrella insurance coverage in amounts reasonably satisfactory to Company upon its stock in trade to cover any interest Company may have therein. A copy of the Insurance Policy shall be submitted to Company and updated annually;

(m)    A Minimum Product inventory level of $50,000 shall be maintained at all times. A full set of tooling (separate from Product) with inserts and gages shall also be maintained for all sizes for both SS and CS tooling. Inventory is subject to audit by Company at any time without notice;

(n)    Distributor shall not sell any Products at a price that exceeds Company's Maximum Price Policy, if any. Distributor shall be provided advance written notice of the Maximum Price Policy, and any changes thereto as may be made by Company from time to time in its sole discretion.

(o)    Distributor shall immediately notify Company of any customers that utilize a central purchasing arrangement to acquire products for that customer for use or shipment to one or more of such customer's facilities, if and to the extent at least one of that customer's facilities is located outside of the Distributor's Primary Sale and Service Area, as all sales to such customer shall be and remain subject to Company's Central Purchasing Policy. In accordance with Company's Central Purchasing Policy, Company and the respective customer shall enter into an agreement, pursuant to which the customer shall purchase all Products from Lokring, on behalf of all its distributors located in the sales and services areas to where the customer requires the Products to be shipped.

The Central Purchasing Policy does not apply to customer's that utilize a central purchasing arrangement if all of such customer's facilities are located within the Distributor's Primary Sales and Service Area. It is the obligation of the Distributor to determine if sales to any particular customer are subject to

Copyright 2016 Lokring Technology, All rights reserved
Lokring Exclusive Distributor Agreement

www.lokring.com



LOKRING TECHNOLOGY, LLC
38376 APOLLO PARKWAY • WILLOUGHBY • OHIO 44094-7724
TEL.: (440) 942-0880 FAX: (440)-942-1186

Company's Central Purchasing Policy, and to immediately provide notice of same to the Company.

(p)     Distributor may enter into sub-agent agreements through which the sub-agent shall be the distributor responsible for sales and servicing of the Products in the geographic region set forth in said agreement; provided, however, Distributor may only enter into a sub-agent agreement on the following conditions:  (i) Distributor may only authorize a sub-agent to operate in one of Distributor's Primary or Secondary Sales and Service Area (as set forth in Appendix A and B attached hereto); (ii) the sub-agent must be approved by the Company and the sub-agent, Distributor and Company must enter into a non-exclusive sub-agent distributor agreement containing similar terms and conditions as set forth in this Agreement; and (iii) any breach by the sub-agent under the aforementioned sub-agent agreement shall constitute a breach by Distributor under this Agreement. All sub-agent agreements shall be attached hereto and incorporated herein by reference as a Schedule to this Agreement.

(q)     Distributor shall enter into and cause each employee of Distributor to enter into the Lokring Confidentiality Agreements as more specifically defined in Section 13.1 herein.

5.2     **Promotion of Products:**  Distributor shall use its best efforts to sell and shall vigorously promote the sale of the Products within the Primary Sales and Service Area.  Such promotion shall include, but not be limited to the following:

(a)     maintaining a sales office in the Primary Sales and Service Area,

(b)     directly soliciting orders from customers for the Products,

(c)     assigning an in-house product manager to internally manage the sale and promotion of Company's Products and act as the main liaison between Distributor's sales personnel and Company,

(d)     participating in appropriate trade shows,

(e)     placing the Products in Distributor's catalogs, and

(f)     providing adequate contact with existing and potential customers within the Primary Sales and Service Area on a regular basis, consistent with good business practice.

5.3     **Customer and Sales Reporting:**  Distributor shall, at its own expense and consistent with the sales policies of Company:

(a)     assist Company in assessing customer requirements for the Products, including modifications and improvements thereto, in terms of quality, design, functional capability and other features;

(b)     submit market research information, as reasonably requested by Company, regarding competition and changes in the market within the Primary Sales and Service Area; and

8

Copyright 2016 Lokring Technology, All rights reserved
Lokring Exclusive Distributor Agreement



LOKRING TECHNOLOGY, LLC
38376 APOLLO PARKWAY • WILLOUGHBY • OHIO 44094-7724
TEL.: (440) 942-0880 FAX: (440)-942-1186

(c)     as reasonably requested by Company, in its sole discretion, provide to Company a written monthly report, showing for the month immediately preceding the request: (a) Distributor's shipment of Products by part number and customer showing location, quantity, unit prices, and total prices, and (b) monthly average and current inventory levels of Products in the aggregate and by each Product. This written report is to be supplied not later than the third (3rd) business day after Company's request.

5.4     **Personnel Training:**  Distributor agrees to provide Company reasonable access to its area sales managers, product managers, sales personnel (both inside and outside), and others (collectively, "Personnel") at the Distributor's locations for the purpose of training.  Distributor agrees to send its Personnel to Company training courses should they be requested.  Installation Certification Training which involves a complete review, demonstration and hands-on performance of the five-step installation of the Lokring fitting is the responsibility of Distributor.  Distributor's failure to comply with this Section is a material breach of this Agreement and may result in Company terminating the Agreement.

5.5     **Forecasts/Sales Plans:**  Distributor agrees to meet with Company annually to formulate the annual sales objective for the next calendar year.  In addition, Company, in its sole discretion, may request at the commencement of a calendar quarter, that Distributor provide Company with a forecast for the calendar quarter, to which the request relates, showing prospective orders by customer specifying the Product.  If Company makes the request herein described, Distributor shall provide the forecast no later than the fifteenth (15th) day of the month beginning the calendar quarter.

5.6     **Marketing Policies and Procedures:**  Distributor's marketing policies and procedures shall at all times meet Company's reasonable standards. Company's representatives shall have the right periodically to review Distributor's performance, including marketing policies and procedures or periodic visits to Distributor's location or both.  All such reviews shall be at no cost to Distributor and shall include advice on methods and means best suited to promoting sales hereunder.  Distributor agrees to implement methods and procedures established by Company from time to time.  Upon Company's request, Distributor shall permit Company reasonable access to the customer files and records solely for purposes of establishing Distributor's compliance with the requirements of this Agreement.

5.7     **General Conduct:**  Distributor agrees:

(a)     to conduct business in a manner that reflects favorably at all times on the Products and the good name, goodwill and reputation of Company;

(b)     to avoid deception, misleading or unethical practices that are or might be detrimental to Company or the public, including, but not limited to, disparagement of Company or its Products;

9

Copyright 2016 Lokring Technology, All rights reserved
Lokring Exclusive Distributor Agreement                                  www.lokring.com



LOKRING TECHNOLOGY, LLC
38376 APOLLO PARKWAY • WILLOUGHBY • OHIO 44094-7724
TEL.: (440) 942-0880 FAX: (440)-942-1186

      (c)    not to publish or employ or cooperate in the publication or employment of any misleading or deceptive advertising material;

      (d)    to make no representations, warranties or guarantees to customers or to the trade with respect to the specifications, features or capabilities of Products that are inconsistent with the literature distributed by Company, including the warranties and limitation to liabilities outlined below in Sections 8 and 9; and

      (e)    not to engage in the manufacture or sale, directly or indirectly, of any product that competes with Company's Products.

5.8    **Out of Territory Shipments and Service Obligations:** Distributor shall provide for service for all items it sells. Service inside the Service Areas will be provided as described above in Sections 1 and 5. When Products are shipped outside of Distributor's Service Areas, without value or work added, Distributor shall transmit, within twenty-four (24) hours, copies of the relevant invoices to Company. Upon receipt of the invoices, Company will arrange for service in the area where the Product is being used or installed. Company shall forward the servicing Distributor copies of the relevant invoices and will credit the servicing Distributor's Service Commission Account a percentage consistent with Company's Out-of-Territory Service Commission Policy of the invoiced value of the Products shipped. Company will settle the Service Commission Account on a quarterly basis.

6.    **Financial Obligations.**

6.1    **Net Worth:** Distributor shall maintain at all times during each fiscal year a net worth that is equal to Distributor's net worth as of the end of the prior year plus fifty percent (50%) of the net income of the prior year. For the purpose of this provision, net worth and net income shall be determined based on applicable independent financial statement standards and the books and records of Distributor. Upon written request by Company, Distributor shall produce such books and records as are necessary, and reasonably requested by Company to confirm Distributor's compliance with the requirements of this Section 6.1.

6.2    **Reporting:** Distributor shall, solely and exclusively for the intended purpose of enabling Company to evaluate Distributor's financial ability and structural capacity to fully and adequately service the Primary Sales and Service Area, make the following reports to Company on a quarterly basis, not later than thirty (30) days after the end of each quarter:

      (a)    Distributor shall report to Company the Personnel currently employed by Distributor, including their name, address, phone number, and functional responsibilities in the organization;

      (b)    Distributor shall provide Company with copies of its financial statements, including detailed line item information on payroll and business expenses;

      (c)    Distributor shall provide to Company a copy of its year end financial statement not later than ninety (90) days after its fiscal year end; and

10

Copyright 2016 Lokring Technology, All rights reserved
Lokring Exclusive Distributor Agreement



LOKRING TECHNOLOGY, LLC
38376 APOLLO PARKWAY • WILLOUGHBY • OHIO 44094-7724
TEL.: (440) 942-0880 FAX: (440)-942-1186

(d) All financial statements and reports provided to Company shall be complete and accurate in all material respects and consistent with the books and records of Distributor.

## 7. Company's Obligations.

7.1 **Product Materials:** Company shall provide Distributor with printed marketing and technical information concerning the Products, brochures, instructional material, advertising literature, and other Product data, with all such material printed in the English language.

7.2 **Responses to Inquiries:** Company shall use reasonable efforts to promptly respond to all inquiries from Distributor concerning matters pertaining to this Agreement.

7.3 **Training:** Company will provide such sales, service and repair training to Distributor's Personnel at such periodic intervals as Company deems necessary or desirable. Initial training shall be given at Distributor's location as outlined in Section 5.4 above. In addition to such training, Company shall cooperate with Distributor in establishing efficient service procedures and policies.

7.4 **Cooperative Advertising:** Company may, at Company's sole option, offer cooperative advertising or other incentives to Distributor in connection with Distributor's promotion of the Products. Such promotion shall be subject to such terms and qualification requirements as specified by Company (which may include the prior approval of promotional materials). Company shall not be obligated to provide any such promotion, however, and any agreement by Company to provide such promotion once shall not be deemed to imply agreement for any future or continuing promotion beyond the scope of such promotion. Company further reserves the right to modify or cancel such promotion immediately upon delivery of written notice to Distributor.

## 8. Warranty to Distributor's Customers.

8.1 **Lokring Limited Lifetime Warranty (LLLW):** Distributor shall pass on to its customers Company's Lokring Limited Lifetime Warranty ("LLLW") for the Products. Distributor shall not make any representations as to warranties to any customer or potential customer other than the LLLW, nor shall Distributor, modify, amend or extend any warranties.

8.2 **Limitation:** EXCEPT FOR THE LLLW STATED IN SECTION 8.1, COMPANY GRANTS NO OTHER WARRANTIES, EXPRESS OR IMPLIED, BY STATUTE OR OTHERWISE, REGARDING THE PRODUCTS, THEIR FITNESS FOR ANY PURPOSE, THEIR QUALITY, THEIR MERCHANTABILITY, OR OTHERWISE. IN NO EVENT SHALL COMPANY BE LIABLE FOR THE COST OF PROCUREMENT OF SUBSTITUTE GOODS BY THE CUSTOMER OR FOR ANY INDIRECT,

11

Copyright 2016 Lokring Technology, All rights reserved
Lokring Exclusive Distributor Agreement

www.lokring.com



LOKRING TECHNOLOGY, LLC
38376 APOLLO PARKWAY • WILLOUGHBY • OHIO 44094-7724
TEL.: (440) 942-0880 FAX: (440)-942-1186

SPECIAL, CONSEQUENTIAL OR INCIDENTAL DAMAGES FOR BREACH OF WARRANTY.

**9. Limitation of Liability.**

9.1 **No Consequential Damage:** COMPANY SHALL NOT BE LIABLE TO DISTRIBUTOR OR TO ANY OTHER PERSON FOR ANY INJURY OR DAMAGE TO BUSINESS, EARNINGS, PROFITS, OR GOODWILL SUFFERED BY DISTRIBUTOR OR ANY OTHER PERSON AND CAUSED DIRECTLY OR INDIRECTLY BY THE PRODUCTS SOLD PURSUANT TO THIS AGREEMENT, EVEN IF COMPANY SHALL HAVE BEEN ADVISED OF THE POSSIBILITY OF THE SAME. IN NO EVENT SHALL COMPANY BE LIABLE FOR THE COST OF PROCUREMENT OF SUBSTITUTE GOODS BY THE CUSTOMER OR FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL OR INCIDENTAL DAMAGES.

9.2 **Termination:** In the event of termination by either party in accordance with any of the provisions of this Agreement, neither party shall be liable to the other, because of such termination, for compensation, reimbursement or damages on account of the loss of prospective profits or anticipated sales or on account of expenditures, inventory, investments, leases or commitments in connection with the business or goodwill of Company or Distributor. Termination shall not, however, relieve either party of obligations incurred prior to or on account of the termination.

**10. Intellectual Property Rights.**

10.1 **Ownership of Intellectual Property Rights:** Distributor acknowledges Company's exclusive ownership in all right, title and interest in Company's trademarks, marks, trade name, and trade dress ("Company Trademarks"), patents, inventions, copyrights, know-how, customer lists (i.e., company name, address, and phone number and contact(s) including name, title, phone number, e-mail address, and all notes and related information, whether developed and maintained by Company or Distributor), and trade secrets relating to the design, sale, marketing, manufacture, operation or service of the Products, in any country ("Intellectual Property"). Distributor shall not challenge or act in concert with any other person to challenge Company's ownership or rights in the Intellectual Property. Distributor further acknowledges that all goodwill developed through Distributor's use of such Intellectual Property shall be for Company benefit. The use by Distributor of any of these Intellectual Property rights is authorized only for the purposes and to the extent set forth in this Agreement. Upon termination of this Agreement, for any reason, such authorization shall immediately cease.

10.2 **Use:** During the term of the Agreement, Distributor shall have the right to indicate to the public that it is an Authorized Distributor of Company Products and to advertise (within the Primary Sales and Service Area) such Products under the Company Trademarks that Company may adopt from time to time. Distributor shall not alter or remove any Company Trademark applied to the Products at the factory. Nothing herein shall grant to

12

Copyright 2016 Lokring Technology, All rights reserved
Lokring Exclusive Distributor Agreement

www.lokring.com



LOKRING TECHNOLOGY, LLC
38376 APOLLO PARKWAY • WILLOUGHBY • OHIO 44094-7724
TEL.: (440) 942-0880 FAX: (440)-942-1186

Distributor any right, title or interest in Company Trademarks. At no time during or after the term of this Agreement shall Distributor apply for or obtain any registration or make any application for registration of Company Trademarks, whether by itself or in conjunction with or as a part of any other mark or symbol, including any confusingly similar word, term, trade name, trade dress or trademark. Distributor represents, warrants, covenants and agrees that it shall not do, cause, suffer or omit to be done any act, deed, matter or thing whatsoever which, shall, or is likely to or will be likely to, adversely affect or prejudice, directly or indirectly, Company's interest, right, power or authority, title and interest whatsoever in or in relation to or in respect of Company Trademarks under this Agreement.

10.3 **Approval of Representations:** All representations of Company Trademarks that Distributor intends to use shall first be submitted in writing to Company for approval of design, color and other details or shall be exact copies of those used by Company. Approval by Company may be granted or withheld in its sole and absolute discretion. If any Company Trademarks are to be used in conjunction with another trademark on or in relation to the Products, then the Company Trademark shall be presented equally prominently, and/or greater size than the other, but nevertheless separated from the other so that each appears to be a mark in its own right, distinct from the other mark.

10.4 **Protection of Intellectual Property; Indemnity:**

(a) Distributor shall immediately inform Company, or any other person appointed thereby, about any violation or threatened violation of Company Intellectual Property of which it may become aware and shall provide assistance to Company upon request to determine the nature and origin, the duration and extent of this violation. Distributor agrees not to make any demands or claims, bring suit, effect any settlements or take any action against such party. Distributor agrees to cooperate with Company, at no out-of-pocket expense to Distributor, in connection with any action taken by Company to terminate infringements.

(b) Company shall exclusively be entitled to determine any actions to be taken with regard to the aforementioned violation or threatened violation and to undertake at its expense any suitable action, including litigation to enjoin or correct such violations. Distributor shall provide Company, directly or indirectly, with any assistance that may be reasonably required. Any damages that may be awarded shall be to the account of Company.

(c) If the Products, or any part thereof, are adjudicatively determined to be, or in Company's sole opinion may become, the subject of any claim, suit or proceeding for infringement of any intellectual property, in any country, or if the sale or use of the Products, or any part thereof, is enjoined in any country, then Company may, at its option and expense:

(i) procure for Distributor and its customers the right to sell or use the Products, or such part thereof, under such intellectual property;

(ii) replace the Products, or part thereof, with other suitable Products or parts;

13

Copyright 2016 Lokring Technology, All rights reserved
Lokring Exclusive Distributor Agreement

www.lokring.com



LOKRING TECHNOLOGY, LLC
38376 APOLLO PARKWAY • WILLOUGHBY • OHIO 44094-7724
TEL.: (440) 942-0880 FAX: (440)-942-1186

       (iii)    suitably modify the Products, or part thereof; or

       (iv)    if the use of the Products, or part thereof, is prevented by injunction, remove the Products, or part thereof, and refund the price paid therefore by Distributor, less a reasonable sum for use and damage. Company shall not be liable for any costs or expenses incurred without its prior written authorization.

    (d)    Notwithstanding the provisions of Section 10.4(a), (b) and (c) above, Company assumes no liability for:

       (i)    infringement of patent claims covering completed equipment or any assembly, circuit, combination, method or process in which any of the Products may be used, but not covering the Products standing alone;

       (ii)    any trademark, trade dress or copyright infringements involving any marketing or branding applied at the request of Distributor; or

       (iii)    the modification of the Products, or any part thereof, unless such modification was made by Company.

    (e)    The foregoing provisions of this Section state the entire liability and obligations of Company and the exclusive remedy of Distributor with respect to any alleged intellectual property infringement by the Products or any part thereof.

10.5    **Sale Conveys No Right to Manufacture or Copy:** The Products are offered for sale and are sold by Company subject in every case to the condition that such sale does not convey any license, expressly or by implication, to manufacture, duplicate or otherwise copy or reproduce any of the Products. Distributor shall not:

    (a)    alter or reverse engineer the Products;

    (b)    reproduce any components of the Products without Company's prior written consent; or

    (c)    aid any third party in actions outlined in (a) and (b) above.

10.6    **Software License:** Any software provided with any Product is not sold, but is subject to a license on the terms included with such Product.

11.    **Indemnity.** Distributor shall be solely responsible for, and shall indemnify and hold Company free and harmless from, any and all claims, damages or lawsuits (including Company's attorneys' fees) arising out of Distributor's breach of this Agreement or the acts or omissions of Distributor, its employees or its agents.

12.    **Term and Termination.**

12.1    **Term:** This Agreement shall commence on the date executed and shall continue for one (1) year unless terminated earlier under the provisions of this Section 12. This Agreement shall renew automatically for consecutive one (1) year terms unless either party terminates with notice to the other party within thirty (30) days prior to the end of the current one (1) year term.

14

Copyright 2016 Lokring Technology, All rights reserved
Lokring Exclusive Distributor Agreement

NaNnone



LOKRING TECHNOLOGY, LLC
38376 APOLLO PARKWAY • WILLOUGHBY • OHIO 44094-7724
TEL.: (440) 942-0880 FAX: (440)-942-1186

12.2 **Termination for Convenience:** This Agreement may be terminated by either party for any reason by giving the other party written notice thirty (30) days in advance.

12.3 **Termination for Breach:** If Distributor defaults in the performance of any material provision of this Agreement, then Company may immediately terminate this Agreement. Notwithstanding the preceding, the Company, in its sole and exclusive discretion, may give Distributor, written notice of the breach and the opportunity to cure the default within thirty (30) days. If the Company does grant Distributor the right to cure the default, or the default is not cured within thirty (30) days, this Agreement will automatically be terminated at the end of that thirty (30) day period.

12.4 **Termination for Insolvency:** This Agreement shall terminate, without notice, (i) upon the institution by or against Distributor of insolvency, receivership or bankruptcy proceedings or any other proceedings for the settlement of Distributor's debts, (ii) upon the institution by or against Distributor's majority shareholder of insolvency, receivership or bankruptcy proceedings, (iii) upon Distributor's making an assignment for the benefit of creditors, or (iv) upon Distributor's dissolution.

12.5 **Return of Information, Intellectual Property, Inventory and Tooling:** In the event that this Agreement is terminated by either party (in accordance with Section 12.1, 12.2, 12.3 or 12.4, above), Company and Distributor agree:

    (a)    Distributor shall immediately return all Intellectual Property (as defined in this Agreement) and all Information (as more fully described in the "Lokring Confidentiality Agreements" attached herein as <u>Appendix G</u> and <u>H</u> respectively, and further defined below in Section 13.1 herein). To the extent certain of the Information or Intellectual Property is incapable of being returned in tangible form then Distributor warrants, and will affirm by affidavit immediately delivered to Company, that Distributor has destroyed all records of such Information or Intellectual Property;

    (b)    Distributor will prepay freight on all returned material (including Information and Intellectual Property described above, and Inventory and Tooling described below);

    (c)    Distributor shall make available for inspection, on terms reasonably agreed to by Company and Distributor, within fifteen (15) days of the termination of this Agreement for any reason, all Inventory then in Distributor's possession. The Inventory will be inspected by Company for re-saleability. If, in Company's sole discretion, the inventory is deemed to be in condition not suitable for resale ("Ineligible Inventory"), payment is not warranted and Company will not buy back the Ineligible Inventory. If, in the Company's sole discretion, the inventory is deemed suitable for resale and it is in original factory packaging ("Eligible Inventory"), Company will repurchase all Eligible Inventory at one-hundred percent (100% of Distributor's initial purchase price, and Distributor will return

15

Copyright 2016 Lokring Technology, All rights reserved
Lokring Exclusive Distributor Agreement



LOKRING TECHNOLOGY, LLC
38376 APOLLO PARKWAY • WILLOUGHBY • OHIO 44094-7724
TEL.: (440) 942-0880 FAX: (440)-942-1186

inventory within fifteen (15) days of the inspection described herein. Company will deliver payment for the Eligible Inventory upon Company's receipt of the Eligible Inventory.

(d)     Distributor shall make available for inspection, at the time of the inspection set forth above concerning the Inventory, all tooling previously used by Distributor for demonstration, rental, or loan.. Company will determine what, if any, reconditioning is required to restore these tools to their proper working condition. If Company decides in its own discretion that reconditioning is required, payment to Distributor of the returned tooling's initial purchase price will be net of reconditioning fee unless the tooling has been deemed Ineligible Inventory as described above, in which case, Company will not buy back the same.

12.6    **Fulfillment of Orders Upon Termination:**  Upon termination of this Agreement, Company may continue to fulfill, subject to the terms of Section 4 above, all orders accepted by Distributor prior to the date of termination of this Agreement. Distributor acknowledges and agrees that Company, in its sole discretion, may reject any order submitted after a thirty (30) day notice of termination of this Agreement is delivered by either party.

12.7    **Survival of Certain Terms:**  The provisions of Sections 8, 9, 10, 11, 12, and 13 shall survive the termination of this Agreement for any reason. All other rights and obligations of the parties shall cease upon termination of this Agreement.

13.     **General Provisions.**

13.1    **Lokring Confidentiality Agreements:**  Distributor agrees to comply with, execute, and cause to be executed, the following confidentiality agreements below (collectively, known as the "Lokring Confidentiality Agreements"):

(a)     the Distributor Confidentiality and Non-Competition Agreement attached in as Appendix G; and

(b)     the Distributor Employee Confidentiality and Non-Competition Agreement attached herein as Appendix H.

13.2    **Notices:**  Any notice required or permitted by this Agreement shall be in writing and shall be sent by facsimile, common carrier (i.e., UPS and FedEx) or prepaid registered or certified mail, return receipt requested, addressed to the other party at the address shown at the beginning of this Agreement or at such other address for which such party gives notice hereunder. Such notice shall be deemed to have been given upon deposit, if by email, or if facsimile, shall be accompanied by a notice by mail within five (5) days. Any policy issued by Company pursuant to Section 5.1 of this Agreement, including any policy that amends Appendices as described in this Agreement, may be posted by Company in the Distributors folder maintained by Company through its website. The

16

Copyright 2016 Lokring Technology, All rights reserved
Lokring Exclusive Distributor Agreement



LOKRING TECHNOLOGY, LLC
38376 APOLLO PARKWAY • WILLOUGHBY • OHIO 44094-7724
TEL.: (440) 942-0880 FAX: (440)-942-1186

Distributor shall be deemed to have notice of any such policy as soon as Company posts the same in said Distributors folder.

13.3  **Independent Contractors:**  The parties shall act as independent contractors in the performance of this Agreement, and nothing contained in this Agreement shall be construed to:

(a)  give either party the power to direct and control the day-to-day activities of the other or any personnel employed by the other; and

(b)  constitute the parties as partners, joint ventures, co-owners or otherwise as participants in a joint venture or common undertaking, or allow Distributor to create or assume any obligation on the behalf of Company for any purpose whatsoever.  All financial obligations associated with Distributor's business are the sole responsibility of Distributor.  All sales and other agreements between Distributor and its customers are Distributor's exclusive responsibility and shall have no effect on Distributor's obligations under this Agreement.

13.4  **Assignment; Change of Ownership:**  Distributor may not transfer or assign, directly or indirectly, any or all rights and obligations under this Agreement without Company's prior written consent.  Further, there shall be no change of majority ownership of Distributor without Company's prior written consent.  Company may withhold consent for any reason. Subject to the foregoing sentences, this Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors and permitted assigns. The Parties acknowledge and agree that this Section 13.4 does not apply to the transfer set forth in the Purchase Agreement effective July 1, 2016.

13.5  **Governing Law and Jurisdiction:**  This Agreement is made in the State of Ohio and the validity of this Agreement, any documents incorporated in or executed in connection with this Agreement, and the construction, interpretation, and enforcement of this Agreement, and the rights of the parties to this Agreement shall be determined under, governed by, and construed in accordance with any applicable laws of the United States of America and the laws of the State of Ohio, without regard to principles of conflicts of law.  The parties agree that all actions or proceedings arising in connection with this Agreement and any documents incorporated in or executed in connection with this Agreement, may be brought in any state or federal court of competent jurisdiction sitting in Lake County, Ohio or Cuyahoga County, Ohio.  The parties to this Agreement waive any right each may have to assert the doctrine of *forum non conveniens* or to object to venue to the extent any proceeding is brought in accordance with this Section.  Service of process, sufficient for personal jurisdiction in any action against Distributor, may be made by registered or certified mail, return receipt requested, to the addresses set forth in the records of Company.

13.6  **Entire Agreement/Amendments:**  This Agreement sets forth the entire Agreement and understanding of the parties relating to the subject matter hereof and supersedes all prior discussions and negotiations.  No modification of or amendment to this Agreement,

17

Copyright 2016 Lokring Technology, All rights reserved
Lokring Exclusive Distributor Agreement

www.lokring.com



LOKRING TECHNOLOGY, LLC
38376 APOLLO PARKWAY • WILLOUGHBY • OHIO 44094-7724
TEL.: (440) 942-0880 FAX: (440)-942-1186

whether oral or written, shall be effective unless made in writing signed by the party to be charged.

13.7   **Force Majeure:**  Non-performance of either party shall be excused to the extent that performance is rendered impossible by strike, fire, flood or other acts of God, governmental acts or orders or restrictions, failure of suppliers, or any other reason where failure to perform is beyond the control and not caused by the negligence of the non-performing party.

13.8   **Severability:**  If any provision of this Agreement is held to be invalid by a court of competent jurisdiction, then the remaining provisions shall nevertheless remain in full force and effect. The parties agree to renegotiate in good faith any term held invalid and to be bound by the mutually agreed substitute provision.

13.9   **Expenses and Cost:**  The prevailing party in any action brought by one party to this Agreement against the other and arising out of the interpretation or performance of this Agreement including, without limitation, actions to collect amounts owed hereunder, shall be entitled, in addition to any other applicable rights and remedies, to reimbursement for its expenses, including court costs and reasonable attorney's fees.

13.10   **Waiver:**  Any waiver under this Agreement must be in writing, and any waiver of one event shall not be construed as a waiver of subsequent events.

13.11   **Prior Agreements Superseded:**  This Agreement supersedes and is in lieu of all existing agreements or arrangements between the parties relating to the provisions set forth herein, and no deletions or changes of its terms and conditions shall be valid unless the same are in writing and signed by the parties hereto.

13.12   **Counterparts:**  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

13.13   **Release of J. Shepard:**  Effective as of July 1, 2016, J. Shepard shall be released from any and all liabilities under this Agreement, which is concurrent with the effective date of the Purchase Agreement pursuant to which B. Shepard shall acquire 100% of the issued and outstanding shares of Lokring SW. Notwithstanding the release of J. Shepard as of July 1, 2016, this Agreement shall remain in full force and effect subsequent to July 1, 2016 between Company, B. Shepard and Lokring SW.

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first written above.

Lokring Technology, LLC
By _____

18

Copyright 2016 Lokring Technology, All rights reserved
Lokring Exclusive Distributor Agreement

www.lokring.com



LOKRING TECHNOLOGY, LLC
38376 APOLLO PARKWAY • WILLOUGHBY • OHIO 44094-7724
TEL.: (440) 942-0880 FAX: (440)-942-1186

William Lennon, President/Owner

Date _____
-Company-

Shepard & Associates, Inc., d/b/a "Lokring Southwest
Company", a Texas corporation

By: _____
Joe Shepard, President

Date _____6 / 3 /16_____
-Distributor-

Majority Shareholder

By: _____
Joe Shepard

By: _____
Brad Shepard, Majority Shareholder-7/1/16

19

Copyright 2016 Lokring Technology, All rights reserved
Lokring Exclusive Distributor Agreement