# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| SHEPARD AND ASSOCIATES, INC., *et al.* ) | CASE NO.:  1:20-cv-02488 |
| ) | |
| Plaintiffs, ) | JUDGE PAMELA A. BARKER |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | WILLIAM H. BAUGHMAN, JR. |
| LOKRING TECHNOLOGY, LLC ) | |
| ) | **DEFENDANT'S REPLY IN SUPPORT** |
| Defendant. ) | **OF MOTION TO DISMISS** |
| ) | **PLAINTIFFS' FIRST AMENDED** |
| ) | **COMPLAINT** |

Plaintiffs' Complaint, which contains a single purported breach of contract claim and four improper tort claims necessarily intertwined with the contract, must be dismissed with prejudice. As set forth in Lokring's Motion to Dismiss, Plaintiffs' claims are legally improper and factually implausible. As detailed herein, Plaintiffs' Opposition fails to adequately address the Complaint's legal insufficiencies and cannot cure the Complaint's pleading deficiencies.

**A.     The Breach of Contract Action Fails Because Plaintiff Has Not Fully Complied with its Obligations**

Plaintiffs' Opposition misses the mark and fails to address the arguments raised in the Motion to Dismiss. Lokring's argument is not difficult to understand.  Plaintiffs do not sufficiently plead that Southwest fulfilled its contractual obligations – an essential element for a breach of contract claim.

Plaintiffs allege that Lokring conditions payment for Southwest's inventory on a release agreement. (Opposition, p. 3). This allegation is a complete fabrication.[1] Notwithstanding, it

---

[1] Attached hereto as <u>Exhibit A</u> is true and accurate copy of an email chain with the most recent email in the chain dated November 2, 2020.  Lokring does not condition payment on Southwest executing a release. Requesting a release and demanding a release are two very different things.

completely misses the point. In order to maintain a breach of contract claim, Plaintiffs must sufficiently plead that it fully complied with the Distributor Agreement, and that Lokring failed to comply. Plaintiffs' claims are insufficient and contradicted by the Distributor Agreement (attached to the Complaint as Exhibit D). Plaintiffs have failed to sufficiently plead that Lokring has failed to comply, or that Plaintiffs have fully complied.

According to the Distributor Agreement, "[Lokring] will deliver payment for the Eligible Inventory upon [Lokring's] receipt of the Eligible Inventory." *Id*. at Section 12.5(c). In other words, before Southwest is ever entitled to any payment, Southwest must return the Eligible Inventory. The Complaint is devoid of any allegation that Southwest delivered the inventory, thus triggering the payment obligation. This is because Southwest is still in possession of the inventory, despite Lokring's request for its return. Therefore, before Southwest can allege that Lokring is improperly withholding payment, it must deliver the inventory to Lokring, per the explicit terms of the Distributor Agreement.

In fact, Plaintiffs actually purport to allege an anticipatory breach of the Distributor Agreement because Plaintiffs are alleging that Lokring indicated its intent not to perform in the future. An anticipatory breach of contract occurs when one party to a contract gives notice to the other party that it will not perform a contractual duty due in the future. *Haman Ents., Inc. v. Sharper Impressions Painting Co.*, 2015-Ohio-4967, ¶ 23, 50 N.E.3d 924; *Daniel Terreri & Sons v. Bd. of Mahoning Cty. Commrs.*, 152 Ohio App.3d 95, 2003-Ohio-1227, ¶ 48, 786 N.E.2d 921 (7th Dist.). To prevail on a claim for anticipatory breach, a plaintiff must establish that the parties had entered into a contract containing some duty of performance not yet due and, by word or deed, the defendant refused future performance, causing damage to the plaintiff. *Qutifan v. Shafiq*, 2016-Ohio-4555, ¶ 25, 70 N.E.3d 43; *Haman Ents.* at ¶ 23. Anticipatory breach requires "an overt

1

communication of an intention or an action which renders performance impossible or demonstrates a clear determination not to continue with performance." *Wilson v. Bd. of Trustees*, 10th Dist. No. 91AP-144 (Dec. 24, 1991); *accord Cambridge Co. v. Telsat, Inc.*, 9th Dist. No. 23935, 2008-Ohio-1056, ¶ 8 ("Anticipatory repudiation of a contract has been found where there is an overt action indicating that performance will not be tendered. * * * Indirect inferences are not sufficient."). The communication or action must indicate a clear and unequivocal refusal to perform. *Wilson*; *accord Haman Ents.* at ¶ 23 (holding that a repudiation of a contract must be expressed in clear and unequivocal terms).

Here, Plaintiffs have not sufficiently plead an anticipatory breach. There is no allegation of an overt action or communication from Lokring indicating "a clear and unequivocal refusal to perform." Rather, the Complaint merely contains a single conclusory allegation that "Lokring has refused to pay Southwest unless Brad Shepard signs a release of all claims." (Compl. ¶ 56). Not only is this allegation insufficient to rise above a speculative level, it does not demonstrate a clear indication of Lokring's unwillingness to perform under the contract.

Based on the foregoing, and as set forth in the Motion to Dismiss, the Court should dismiss Plaintiffs' breach of contract claim with prejudice.

### B.     No Fiduciary Duty Exists Between Southwest and Lokring

There is no fiduciary relationship between Lokring and Plaintiffs. Plain and simple. Not only are Plaintiffs unable to cite to a single case to support its legal theory, it cannot allege a plausible factual scenario to support such a relationship. The best Plaintiffs can do is unsupported and conclusory allegations and cite inapposite case law.

Plaintiffs contend that a fiduciary relationship arose between Southwest and Lokring by virtue of the Distributor Agreement. (Compl. ¶ 61-63). In support of this argument, Plaintiffs ask

the Court to take note of provisions that are *absent* from the Distributor Agreement. (Opposition, p. 6).² In doing so, Plaintiffs are asking the Court to "read between the lines" of a valid and enforceable contract, and find a fiduciary relationship through the absence of terms in a mutually negotiated agreement. Plaintiffs' argument is a tacit admission of a critical fact – the Distributor Agreement does not create a fiduciary duty. *Jean v. Stanley Works*, N.D.Ohio No. 1:04CV1904, 2006 U.S. Dist. LEXIS 50027, at *10 (July 5, 2006) (dismissing distributors' breach of fiduciary duty claim because the distributor agreement did not create a fiduciary duty).

Moreover, the Distributor Agreement explicitly provides "[t]he parties shall act as independent contractors in the performance of this Agreement." Ohio courts routinely find no fiduciary relationship when the parties are party to a contract which expressly sets forth the parties' relationship as independent contractors. *See*, Distributor Agreement, Sec. 13.3. *See Iams Co. v. L.A. Pet Foods,* S.D.Ohio No. C-3-93-307, 1998 U.S. Dist. LEXIS 6584, at *43 (Mar. 26, 1998) ("the parties' relationship was governed by Distributorship Agreements, which provided that Defendants were independent contractors, a status which, objectively, contravenes the Defendants' assertion that Plaintiff owed them a de facto fiduciary duty"); citing *Tool Steel Products Sales Corp. v. XTEK, Inc.,* 1993 Ohio App. LEXIS 333, 1993 WL 19476 (Hamilton County App. 1993) (manufacturer did not owe fiduciary duty to distributor when agreement governing their relationship provided that the distributor was an independent contractor).

In *Iams Co.*, a case factually similar to this case, the distributor, L.A. Pet Foods, alleged that the manufacturer, Iams Co., owed it a fiduciary duty. The court summarily dismissed the

---

² It is noteworthy that Plaintiffs ignore certain express contractual terms set forth in the Distributor Agreement, dated April 25, 2016.  For example, Section 4.2 states: "Once an order has been accepted, Company shall use its best efforts to deliver Products at the time requested in the Purchase Order."  *See also* Sections 12.2 and 12.5, which provide that Southwest could terminate the Distributor Agreement in same manner that Defendant could, and such termination would still trigger the buyback provisions of Section 12.5.

3

claim. *Id*. *43. The court reasoned, as is the case here, that "the parties' relationship was governed by Distributorship Agreements, which provided that Defendants were independent contractors, a status which, objectively, contravenes the Defendants' assertion that Plaintiff owed them a *de facto* fiduciary duty." *Id*. L.A. Pet Foods argued that the distributor agreement obligated it do certain things, such as maintain a level of inventory sufficient to service the needs of its customers, and that this provision indicates that the parties understood that Defendants were putting their trust in. *Id*. *44. The court rejected this argument as creating a fiduciary duty. *Id*.

Further, just as Plaintiffs failed to do here, L.A. Pet Foods did not cite one case in which a court concluded that a manufacturer owed a fiduciary duty to its distributor. *Id*. *42-43.

In a last ditch effort to establish a fiduciary duty owed by Defendant, Plaintiffs assert self-serving and baseless statements concerning the sale between Joe and Brad. In essence, Plaintiffs argue that Defendant became a fiduciary when Joe and Brad entered into the Agreement for Redemption of Corporate Stock[3] (the "Redemption Agreement"). Unquestionably, Defendant was not a party to the Redemption Agreement. In fact, the Redemption Agreement explicitly provides that Lokring "is a not a party to this Agreement for Redemption of Corporate Stock…" This Redemption Agreement between Joe and Brad was executed August 8, 2016, almost four months after the Distributor Agreement. At the time Brad entered the Redemption Agreement with Joe, Brad was fully aware of the terms of the earlier executed Distributor Agreement. Yet, somehow Lokring assumed a fiduciary duty as a result of a later executed agreement that it is not a party to? Even then, Plaintiffs' alleged fiduciary duty claim is contingent upon the contractual terms of the Distributor Agreement, and for the reasons stated above, such arguments fail as a matter of law.

---

[3] Attached to the Complaint as Exhibit C.

4

Accordingly, because the Distributor Agreement does not create a fiduciary duty, the claim must be dismissed.

C. **Plaintiffs' Unjust Enrichment Claim Should be Dismissed Because the Complaint Alleges a Valid and Enforceable Contract**

Plaintiffs' Opposition does not refute or address any argument raised by Lokring in support of dismissing the Plaintiffs' unjust enrichment claim. Rather, Plaintiffs' argument is a baseless diatribe the purported unconscionability of the Distributor Agreement, which Plaintiffs admit signing and profiting from. The argument has nothing to do with the sufficiency of Plaintiffs' unjust enrichment claim.

Plaintiffs, after explicitly alleging the express enforceability of the Distributor Agreement, now argue that the Distributor Agreement does not actually exist – it is a figment of everyone's imagination. Plaintiffs cannot have it both ways.

The Complaint does not allege any dispute concerning the existence or enforceability of the Distributor Agreement. *Resource Title Agency, Inc. v. Morreale Real Estate Services, Inc*., 314 F.Supp.2d 763, 772 (N.D.Ohio 2004) (A claim for unjust enrichment may be pled in the alternative, however, when the existence of an express contract is in dispute). Nor does it allege bad faith, fraud, or coercion. Plaintiffs cannot re-plead its Complaint in response to the Motion to Dismiss.

It is true that a plaintiff can maintain both breach of contract and unjust enrichment claims, but the unjust enrichment claim must be in the alternative. Here, Plaintiffs' unjust enrichment claim is clearly not plead in the alternative, it is an independent cause of action rooted in the Distributor Agreement.

Further, Plaintiffs' argument that the Distributor Agreement is "illusory" is not plead in the Complaint. This argument is a transparent attempt to stave off dismissal of the claim. The

5

Complaint does not allege that the Distributor Agreement is "illusory" or unenforceable. In fact, Plaintiffs allege the opposite. Plaintiffs allege that the Distributor Agreement is a valid and enforceable agreement, whereby Southwest is owed compensation for its return of the tooling and inventory to Lokring.

Finally, Plaintiffs' argument that the Distributor Agreement is "illusory" fails as a matter of law and fact. In support of its argument, Plaintiff contend that the Distributor Agreement is one-sided and that Lokring "could walk away from the distributorship at any time…" (Opposition, p. 7). Plaintiffs' argument fails to acknowledge that the termination provision (Distributor Agreement, Sec. 10.2) is mutual and Southwest could also walk away at any time and for any or no reason.

Particularly troubling about Plaintiffs' unjust enrichment claims is that they are contradicted by the facts. Plaintiffs argue that from "Lokring's perspective, it could walk away from the distributorship at any time, without any obligation to repurchase inventory or tooling." (Opposition, p. 7). Notwithstanding this baseless hypothetical, that is not what happened. As set forth in the Complaint, Lokring expended time, money and resources to inspect inventory. (Compl. ¶ 55). Lokring then offered to repurchase the Lokring sourced inventory for $1,000,000. Contrary to the Complaint allegation (at ¶ 69), Defendants offer included compensating Plaintiff for returned tooling.

Based on the foregoing, and as set forth in the Motion to Dismiss, the Court should dismiss Plaintiffs' unjust enrichment claim with prejudice.

**D.    There Is Not Intentional Interference with a Contract Claim Because Lokring Merely Exercised its Contractual Rights**

Lokring does not admit – tacitly or otherwise – that it interfered with any contract between Brad Shepard and Joe Shepard. Lokring merely exercised its contractual rights.

6

Plaintiffs proffer two arguments in response to Lokring's argument that its actions were contractually permissible and, therefore, privileged. First, Plaintiffs argue that Lokring failed to state a reason for termination. Second, Plaintiffs contend that the termination was not in "good faith." Lokring addresses these arguments in order below,

The Distributor Agreement unquestionably allows "either party for any reason" to terminate the Distributor Agreement. *See*, Section 12.2 of the Distributor Agreement (Ex. D). On September 21, 2020, invoked Section 12.2 and terminated the Distributor Agreement effective October 21, 2020. *See*, Notice of Termination (Ex. E).

Plaintiffs' argument that Lokring's termination was improper because it gave "no reason" belies logic and the express language of the provision. *First*, Section 12.2 allows ***either*** party to terminate the Distributor Agreement for "any reason," and it does not require the terminating party to provide that reason to the terminated party. The only requirement imposed on the terminating party under Section 12.2 is to give the terminated party "written notice thirty (30) days in advance." Plaintiffs' do not contend that Lokring failed to notice 30 days in advance. *Second*, whether the termination is for "any reason" or "no reason" is really a distinction without a difference. For example, Lokring (or Southwest) could have terminated the Distributor Agreement because it snowed in London, England on December 1, 1967. In other words, the reason is inconsequential.

Plaintiffs' "good faith" argument further misses the mark and is indicative of Plaintiff's entire case. This argument would require the Court to invalidate a party's ability to perform its contractual rights.

Southwest and Lokring willingly executed the Distributor Agreement. The Distributor Agreement contains a mutual termination provision (Sec. 12.2), whereby Southwest or Lokring can terminate the Distributor Agreement at any time and for any reason. Lokring exercised its right

and terminated the Distributor Agreement. Now, Plaintiffs have the temerity to argue that Lokring should not have the ability to exercise its contractual rights. Plaintiffs' argument is meritless and should be dismissed with prejudice.

### E. **Plaintiffs Waive Their Equitable Estoppel Claim**

Plaintiffs do not respond to Lokring's argument that equitable estoppel is a defense, and not an independent cause of action under Ohio law. Accordingly, the Court must dismiss Plaintiffs' equitable estoppel claim.

### CONCLUSION

For all these reasons, Lokring Technology, LLC, respectfully asks this Court to dismiss Plaintiffs' First Amended Complaint, with prejudice, pursuant to Civ.R. 12(B)(6) for failure to state a claim.

Respectfully submitted,

 */s/ Matthew C. Miller*
**SAMUEL J. LAURICIA III (0078158)**
*slauricia@westonhurd.com*
**ROBERT E. GOFF, JR. (0069818)**
*rgoff@westonhurd.com*
**MATTHEW C. MILLER (0084977)**
*mmiller@westonhurd.com*
**WESTON HURD LLP**
1300 East 9th Street, Suite 1400
Cleveland, Ohio 44114-1862
Phone: (216) 241-6602; Fax: (216) 621-8369
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

A copy of the foregoing was served via the Court's electronic filing system on December 18, 2020 to all counsel of record.

>  */s/ Matthew C. Miller*
> **MATTHEW C. MILLER (0084977)**

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I hereby certify that the within Memorandum in Support of Defendant's Motion to Dismiss adheres to the page limitations established by Local Rule 7.1(f).

> */s/ Matthew C. Miller*
> **MATTHEW C. MILLER (0084977)**