## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **Shepard and Associates, Inc., et al.,** | **CASE NO. 1:20-cv-2488** |
| **Plaintiffs,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **Lokring Technology LLC,** | |
| **Defendant.** | **MEMORANDUM OF OPINION AND ORDER** |

Currently pending is the Motion of Plaintiffs Shepard and Associates, Inc. (d/b/a Lokring Southwest Company) and Brad Shepard to Join a Required Party pursuant to Fed. R. Civ. P. 19(a). (Doc. No. 76.)  Defendant Lokring Technology, LLC filed a Brief in Opposition on August 27, 2021, to which Plaintiffs replied on August 31, 2021.  (Doc. Nos. 81, 82.)   For the following reasons, Plaintiffs' Motion is DENIED.

## I.      Relevant Factual Background and Procedural History

### A.      Factual Allegations

In 2003, Joe Shepard, father of Plaintiff Brad Shepard, formed Lokring Southwest Company (hereinafter "Southwest) to act as an exclusive distributor for Defendant Lokring Technology LLC ("Lokring").[1] (Doc. No. 41 at ¶ 7.)  Lokring and Southwest entered into a written agreement for Southwest to act as an exclusive distributor for portions of the southwestern United States.  (*Id.* at ¶ 11.)  As a Lokring distributor, Southwest would purchase Lokring products at a stated price and mark

---

[1] Lokring is engaged in the business of design and production of advanced fluid and gas transfer connectors for various industries.  (Doc. No. 61 at ¶ 23.)

up the price for resale to customers, keeping the margin as its profit.  (*Id*. at ¶ 9.)  Either party had the right to terminate the distributorship "for any reason." (*Id*. at ¶11.) Upon termination, Lokring had the option, but not the obligation, to repurchase some or all of Southwest's inventory. (*Id*.)

In 2015, Lokring approached Joe Shepard to propose that he establish a new distributorship in the southeastern United States.  (*Id*. at ¶ 17.) Joe Shepard then moved to Florida to establish a new exclusive distributorship as Joe Shepard & Associates, Inc., while at the same time operating Southwest, with the assistance of his son, Brad Shepard, who was a Southwest employee.  (*Id*. at ¶ 18.)  After Joe Shepard made the southeast distributorship operational, Lokring advised him that he could not hold two distributorships.  (*Id.* at ¶ 19.)

Subsequently, Joe Shepard advised Lokring that he would be willing to finance the purchase of Southwest by his son.  (*Id*. at ¶ 20.) Pursuant to the terms of the distributorship agreement, such a purchase of a Lokring distributorship by a third party required Lokring's approval.  (*Id*. at ¶ 21.)  In 2016, after extended negotiations, Lokring subsequently approved the sale of Southwest's shares to Brad Shepard.  (*Id*. at ¶ 30; Doc. No. 41-3.)

Southwest and Lokring also entered into an Amended & Restated Lokring Exclusive Distributor Agreement ("Distributor Agreement"), dated April 25, 2016.  (Doc. No. 41 at ¶ 32; Doc. No. 41-4.)  Like the previous Distributor Agreement, the April 2016 Distributor Agreement provides that the agreement "may be terminated by either party for any reason by giving the other party written notice thirty (30) days in advance."  (Doc. No. 41-4 at Section 12.2.)  It also contains provisions relating to the repurchase of inventory and tooling upon termination, as well as the same types of requirements and restrictions regarding the promotion and sale of Lokring's products noted above. (*Id.* at Sections 5, 6, 12.5(c), (d)).

2

Additionally, according to Lokring, the Distributor Agreement had various Appendices, including a Distributor Confidentiality and Non-Competition Agreement ("NDA") and Distributor Employee Confidentiality and Non-Competition Agreement ("ENDA").  (Doc. No. 61 at ¶ 16; Doc. No. 9-1 at PageID#s 282-288; Doc. No. 9-3 at PageID#s 295-301.)  Lokring alleges that Plaintiffs executed the NDA.  (Doc. No. 61 at ¶¶ 16, 18.)

Plaintiffs allege that, after Brad Shepard became the owner of Southwest in 2016, he continued to grow the business and, at Lokring's insistence, invested hundreds of thousands of dollars in Lokring tooling and equipment (some of which was defective and had to be returned to Lokring for refurbishing), established a sales force, leased facilities to accommodate the growing business, and purchased vehicles and equipment to service Southwest's customers.  (Doc. No. 41 at ¶¶ 34, 35 37.)  Among other things, in February 2019, Shephard hired Jared Guidry as a Technical Sales Consultant for Southwest, with a start date of March 1, 2019.  (Doc. No. 61 at ¶ 19.)  Lokring alleges, "upon information and belief," that Guidry signed an ENDA and agreed to be bound thereby.  (*Id.* at ¶ 22.)

In May 2020, Joe Shepard announced his retirement as a Lokring distributor.  (Doc. No. 41 at ¶ 41.)  In response, Lokring asked him if the successor to his distributorship could purchase the business from him in order to duplicate the structure of Brad Shepard's purchase of Southwest where Joe Shepard financed the transition, which would prevent Lokring from having to outlay any money to repurchase inventory and tooling. (*Id*. at ¶ 42.) Although it upset Lokring's owner, Bill Lennon, Joe Shepard declined to participate in such a transaction.  (*Id*. at ¶¶ 43-44.)  As a result, after Lokring terminated Joe Shepard & Associates, Inc.'s southeast distributorship, it was forced to repurchase most of the inventory for resale to Joe Shepard's successor.  (*Id*. at ¶ 45.)

3

On September 21, 2020, although Lennon had informed Brad Shepard that he was doing a "great job" only months before, Lokring notified Brad Shepard that it was terminating Southwest's distributorship.  (*Id*. at ¶¶ 46, 48; Doc. No. 41-5.)  At that time, Brad Shepard still owed hundreds of thousands of dollars to Joe Shepard on the promissory note for his purchase of Southwest.  (Doc. No. 41 at ¶ 47.)  Lokring did not provide a reason for its decision.  (*Id*. at ¶ 49.)

The April 2016 Distributorship Agreement terminated on October 21, 2020.  (Doc. No. 61 at ¶ 76.)  Lokring alleges that Guidry's employment with Plaintiffs ended on that same date.  (*Id*. at ¶ 95.)  Following his termination, Guidry commenced employment with Tube-Mac, a direct competitor of Lokring.  (*Id*. at ¶ 96.)  According to Lokring, Plaintiffs and Guidry then created and implemented a scheme to interfere with Lokring's business by diverting Lokring's customers to Tube-Mac.  (*Id*. at ¶ 93.)

Meanwhile, Plaintiffs and Lokring became embroiled in a dispute over Plaintiff's inventory and tools.  Lokring alleges that, based on an inspection conducted on October 24, 2020, it offered to pay Plaintiffs $963,590.29 for their inventory and tools.[2] (Doc. No. 61 at ¶ 82, 83.)  According to Plaintiffs, however, the full value for Southwest's inventory and tooling is approximately $1,350,000.  (Doc. No. 41 at ¶ 52.) Plaintiffs allege that Lokring has wrongfully refused to pay this full amount without demanding a release, in violation of the April 2016 Distributor Agreement.  (*Id*.)  Lokring, on the other hand, alleges that Plaintiffs have improperly refused to return the inventory and that this refusal is "part of Plaintiffs' scheme to solicit Lokring's customers and cause damage to the latter's business."  (Doc. No. 61 at ¶ 89, 91.)

---

[2] Lokring alleges that its payment offer "took into account a negative adjustment of $108, 056.24, which is the net of the account receivable Plaintiffs owe Lokring and the returned merchandise adjustment Looking owed Plaintiffs."  (Doc. No. 61 at ¶ 84.)

4

In the midst of this ongoing dispute, Lokring appointed Alba Pipework ("Alba") as its new exclusive distributor for the region previously serviced by Plaintiffs.  (Doc. No. 76-1 at ¶ 11.)  Alba Pipework is a Texas limited liability company that maintains its principal place of business in Austin, Travis County, Texas.  (*Id*. at ¶ 1.)  According to Alba, it identified itself as the new Lokring distributor and provided correct payment information to Lokring's customers.  (*Id*. at ¶ 13.)  Alba claims, however, that "[s]ome of Lokring's customers to which Alba Pipework has sold Lokring's products have mistakenly forwarded payment for the purchases from Alba Pipework to [Shepard & Associates]."  (*Id*.)  Specifically, Alba claims that Plaintiffs have acknowledged receipt of customer funds for the sales made by Alba Pipework in the amount of $239, 439.92.  (*Id*. at ¶ 15.)  Alba states that, "[d]espite demand and without justification, [Shepard & Associates] has failed and refused to turn over the money to Alba Pipework."  (*Id*. at ¶ 17.)

## B.    Procedural History

On November 3, 2020, Plaintiffs filed a Complaint in this Court against Lokring.  (Doc. No. 1.)  Shortly thereafter, on November 12, 2020, Plaintiffs filed an Amended Complaint, setting forth the following causes of action: (1) breach of contract, (2) breach of fiduciary duty, (3) unjust enrichment, (4) intentional interference with contract, and (5) equitable estoppel.  (Doc. No. 5.)

Lokring filed a Motion to Dismiss, seeking the dismissal of all claims in Plaintiffs' Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), which Plaintiffs opposed.  (Doc. Nos. 6, 7.)  In addition, and while Lokring's Motion to Dismiss was still pending, Lokring filed an Emergency Motion to Enforce the Contracts in which it asserted that Plaintiffs had failed to return Southwest's inventory as required under the Distributor Agreement and should be ordered to do so by the Court.  (Doc. No. 9.)  Plaintiffs opposed the Motion.  (Doc. No. 10.)

On March 19, 2021, this Court issued a Memorandum Opinion & Order, in which it denied Lokring's Emergency Motion to Enforce the Contracts on the basis that Lokring had not filed any counterclaims against Plaintiffs regarding their alleged breach of the Distributorship Agreement. (Doc. No. 13 at pp. 7-11.)  With regard to Lokring's Motion to Dismiss, the Court (1) denied Lokring's Motion with regard to Plaintiff's claims for breach of contract and breach of fiduciary duty; and (2) granted the Motion with regard to Plaintiff's unjust enrichment, intentional interference with contract, and equitable estoppel claims.  (*Id*. at pp. 11-27.)

A flurry of complaints and counterclaims followed the Court's ruling.  On March 25, 2021, Lokring filed Counterclaims against Plaintiffs for (1) breach of the April 2016 Distributor Agreement (Count I); (2) breach of the confidentiality and non-competition provisions of the NDA (Count II); and (3) spoliation of evidence (Count III).[3]  (Doc. No 17.)  Plaintiffs then filed a Second Amended Complaint on June 1, 2021, asserting claims for (1) breach of contract (Count I); (2) breach of fiduciary duty (Count II); (3) breach of the covenant of good faith and fair dealing (Count III); (4) unjust enrichment (Count IV); and (5) promissory estoppel (Count V).[4]  (Doc.  No. 41.)

The following month, on July 13, 2021, Lokring filed its First Amended Counterclaims and Third-Party Complaint against Jared Guidry and Tube-Mac Industries, Inc, in which it asserts the following ten (10) claims:  (1) breach of the Distributor Agreement, as against Plaintiffs only (Count I); (2) breach of the NDA and ENDA, as against Plaintiffs and Guidry (Count II); (3) spoliation of

---

[3] Lokring also filed an Emergency Motion for Temporary Restraining Order, Preliminary Injunction and Sanctions.  (Doc. No. 18.)  The Court conducted a hearing on April 5, 2021, at which time the parties reached an agreement.  (Doc. No. 22.)

[4] Lokring promptly moved to dismiss Plaintiffs' Second Amended Complaint.  (Doc. No. 54.) Plaintiffs filed a Brief in Opposition on June 28, 2021, to which Lokring replied on July 12, 2021.  (Doc. Nos. 55, 59.)  This Motion remains pending.

evidence, as against Plaintiffs and Guidry (Count III); (4) tortious interference with business relationships and with contract, as against Plaintiffs, Guidry, and Tube-Mac (Counts IV and V); (5) civil conspiracy, as against Plaintiffs, Guidry, and Tube-Mac (Count VI); (6) misappropriation of trade secrets under federal and state law, as against Plaintiffs Guidry and Tube-Mac (Counts VII and VIII); (7) unfair competition and deceptive trade practices under federal and state law, as against Plaintiffs and Tube-Mac (Count IX); and (8) unjust enrichment, as against Plaintiffs, Guidry, and Tube-Mac (Count X).[5]  (Doc. No. 61.)

On August 19, 2021, Plaintiffs filed a Motion pursuant to Fed. R. Civ. P. 19(a) to Join Alba as a required party.  (Doc. No. 76.)  Therein, Plaintiffs argue that Alba should be joined in this action because, on August 13, 2021, Alba filed an action in Texas state court against Plaintiff herein, Shepard & Associates ("S&A"), based on S&A's failure to return the $239,439.92 in erroneous payments it received from Alba's customers.  (Doc. No. 76-1.)  Alba alleges Texas state law claims for theft, money had and received, and unjust enrichment; and seeks a temporary restraining order.[6] (*Id.*)  Lokring filed a Brief in Opposition to Plaintiffs' Motion for Joinder on August 27, 2021, to which Plaintiffs replied on August 31, 2021.  (Doc. Nos. 81, 82.)

Plaintiffs' Motion for Joinder is now ripe and ready for resolution.

---

[5] On August 6, 2021, third-party defendant Tube-Mac filed a Motion to Dismiss all of Lokring's claims against it pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. No. 71.)  Lokring's brief in opposition is due by September 28, 2021.  *See* Minutes of Proceedings dated September 1, 2021.

[6] The parties have not provided, and the Court does not have access to, the Texas state court docket sheet.  During a status conference in the instant action, the parties advised this Court that the parties to the Texas litigation stipulated to a TRO requiring Shepard & Associates to maintain the funds that Alba claims.  The parties herein also represented that the TRO issued by the Texas state court expired on August 30, 2021 but was extended for another fourteen (14) days, until September 14, 2021.

## II.     Analysis

In their Motion, Plaintiffs argue that Alba should be joined as a required party under Fed. R. Civ. P. 19(a) because "both Lokring and [Alba] claim the same damages arising from the same transfers" and, therefore, "[t]heir claims are inextricably tied."  (Doc. No. 76 at p. 3.)  Plaintiffs maintain that Lokring and Alba have "nearly identical claims" against Plaintiffs for the same funds and, therefore, complete relief cannot be accorded the existing parties to this action unless Alba is joined. (*Id.* at p. 4.)  Plaintiffs also argue that "all the claims arise from the same nucleus of operative fact" and that "[r]ather than having litigation proceed in two forums for the same thing, the interest of the parties, judicial economy, and the public interest are all served by joining Alba so that all claims are centralized in one proceeding."  (*Id.* at p. 5.)

Lokring argues that joinder is not necessary or appropriate because "Lokring did not and does not claim any right, title, or interest in and to money due and owing [Alba] or products Alba sold to customers."  (Doc. No. 81 at p. 2.)  Lokring maintains that, although it may rely on the fact that Plaintiffs received and retained this money as early as November 2020 without notifying Alba or Lokring in order to "prove certain of Lokring's claims," there is no risk of inconsistent *judgments* because "the money that Plaintiffs have separately converted from Alba is not part of the relief sought by Lokring." (*Id.* at p. 5.)  Lokring further asserts that Plaintiffs' Motion should be denied because they have failed to demonstrate that this Court has personal jurisdiction over Alba.  (*Id.*)

In determining whether a person is an indispensable party under Fed. R. Civ P. 19, the Sixth Circuit applies a three-step test.[7]  *See Keweenaw Bay Indian Cmty. v. State*, 11 F.3d 1341, 1345 (6th

---

[7] The Court notes that neither party recites the legal standard for evaluating joinder under Rule 19 or otherwise cites any legal authority in support of their respective positions.  Counsel for the parties are reminded that any motions and briefing filed in this action should be supported by citation to supporting legal authority.

Cir. 1993); *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 666 (6th Cir. 2004).  At the first step, courts "determine whether a person is necessary to the action and should be joined if possible." *Keweenaw Bay Indian Cmty,* 11 F.3d at 1345.  This is determined through Rule 19(a), which provides as follows:

> **(a) Persons Required to Be Joined if Feasible**.
>
> **(1) Required Party**. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).  The burden is on the moving party to establish that a party is necessary for purposes of Rule 19(a).[8]  *See Eagle Realty Invs., Inc. v. Dumon*, 2019 WL 608830 at *2 (S.D. Ohio Feb. 13, 2019).  "If the court determines that the person or entity does not fall within one of these provisions, joinder, as well as further analysis, is unnecessary." *Local 670, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL–CIO v. Int'l Union, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL–CIO*, 822 F.2d 613, 618 (6th Cir. 1987).

---

[8] "The moving party may satisfy this burden through the production of affidavits or other relevant extra-pleading evidence." *Reilly v. Meffe*, 6 F. Supp. 3d 760, 774 (S.D. Ohio 2014) (internal quotations omitted).  *See also Hensley v. Conner,* 800 Fed. Appx. 309, 312 (6th Cir. 2020) ("In determining whether Rule 19 requires joinder of additional parties, the court may consider evidence outside the pleadings."); *Norfolk Southern Railway Co. v. Baker Hughes Oilfield Operations, LLC*, 443 F.Supp.3d 877, 883 (S.D. Ohio Mar. 6, 2020).

If, however, an absent person or entity is a necessary party under Rule 19(a), the Court must proceed to the second step of the test.  At the second step, the Court looks to whether joinder is feasible, or if a lack of subject matter or personal jurisdiction makes joinder impossible.  *See, e.g., Am. Express Related Servs. Co. v. Bank One-Dearborn, N.A*., 195 Fed. Appx. 458, 460 (6th Cir. 2006); *Norfolk Southern Railway Co. v. Baker Hughes Oilfield Operations, LLC*, 443 F.Supp.3d 877, 881 (S.D. Ohio Mar. 6, 2020).  "If personal jurisdiction is present, the party shall be joined; however, in the absence of personal jurisdiction (or if venue as to the joined party is improper), the party cannot properly be brought before the court." *Local 670*, 822 F.2d at 618.

If joinder is not feasible, the Court proceeds to the third step of the test, which asks whether the absent party is indispensable.  At this step, "the court must weigh the equities of the situation pursuant to Rule 19(b) and determine if the suit can continue in the party's absence or if the case should be dismissed because the party is indispensable."[9] *Am. Express Travel Related Servs., Co*., 195 Fed. Appx. at 460.  *See also Glancy,* 373 F.3d at 666; *Norfolk Southern Railway Co.*, 443 F.Supp.3d at 881.

Here, Plaintiffs first argue that Alba is required to be joined under the first step of the test because, pursuant to Rule 19(a)(1)(A), the Court cannot accord complete relief among the existing parties in Alba's absence.  "'Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought.'"  *School*

---

[9] Rule 19(b) provides that: "If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).  The factors determining indispensability are: "first, to what extent a judgment rendered in the person's absence might be prejudicial to [the person] or to those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." *Keweenaw*, 11 F.3d at 1346 (quoting *Local 670*, 822 F.2d at 618).  *See also* Rule 19(b)(1)-(4).

10

*Dist. of City of Pontiac v. Secretary of U.S. Dept. of Educ.*, 584 F.3d 253, 265 (6th Cir. 2009) (quoting *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir.1996*)). See also Laetham Equipment Co. v. Deere & Co.*, 485 Fed. Appx. 39, 44 (6th Cir. 2012).  As another court in this District recently explained:

> Rule 19 'complete relief' does not enforce optimal judicial economy by requiring joinder of all parties necessary to complete resolution of all disputes involved in the current claims' factual underpinnings. Rather, recognizing that the plaintiff is the master of his own complaint, Rule 19 requires joinder of all parties necessary so that the 'plaintiff may receive complete relief from *this defendant*.' *Norfolk S. Ry. Co. v. Baker Hughes Oilfield Ops. LLC*, 443 F.Supp.3d 877, 884 (S.D. Ohio 2020).  'Even if future litigation involving an absent party is inevitable if plaintiff prevails in this lawsuit, Rule 19(a)(1)(A) only looks to those who are already parties.' *Id*. (citing *MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2nd Cir. 2006)).

*We Project, Inc. v. Relavistic, LLC*, 2021 WL 1986672 at * 1-2 (N.D. Ohio May 3, 2021) (emphasis in original).

Here, the Court finds that it can afford "complete relief" between Plaintiffs and Lokring without joining Alba.  The only funds sought by Alba in the Texas litigation are the payments that were mistakenly made by Alba's customers to Shepard & Associates for Lokring goods sold by Alba. Lokring is not seeking these funds in this litigation. As noted above, Lokring has repeatedly represented in its briefing before this Court that it "does not claim an interest in the money that Alba is entitled to for Lokring products it sold to customers." (Doc. No. 81 at p. 6.)  Moreover, the Court does not interpret Lokring's counterclaims as seeking damages relating to these particular funds. Lokring's Amended Counterclaims and Third-Party Complaint do not reference any of the specific

11

mistaken payments identified in Alba's Texas state court complaint[10] nor do they generally set forth any factual allegations that Plaintiffs have wrongfully retained payments mistakenly made to Shepard & Associates for products sold by Alba.  In addition, Lokring's Amended Counterclaims do not seek damages from Plaintiffs for funds that were mistakenly paid to Plaintiffs by customers of Alba. Rather, Lokring's Amended Counterclaims seek damages for matters unrelated to Plaintiffs' retention of Alba's funds, such as (1) Plaintiffs' alleged violations of the confidentiality, non-competition, and non-solicitation provisions of the NDA; (2) Plaintiffs' alleged breach of the April 2016 Distributor Agreement and unfair competition by failing to timely return Lokring's inventory and tooling;[11] and (3) Plaintiffs' and Guidry's alleged destruction of an executed copy of Guidry's ENDA.

Plaintiffs, however, argue that a reference in Lokring's Amended Counterclaims to the McJunkin Redman Corporation account demonstrates that Lokring and Alba "claim the same damages from the same transfers."  (Doc. No. 76 at p. 3.)  The Court disagrees.  The relevant paragraphs of Lokring's Amended Counterclaim allege as follows:

> 123. The scope and extent of Plaintiffs', Guidry's and Tube-Mac's misappropriation of Lokring's Information is not presently known but based on the nature and amount of Information misappropriated, Dow [Chemical] was not the lone Lokring customer Guidry contacted with the other parties' assistance.

---

[10] Alba identifies the following specific payments in its Complaint: (1) fourteen payments to Lyondell Bassell; (2) six payments to Seksui Specialty Chemicals; (3) five payments to Union Pacific; and (4) five payments to Holly Frontier. (Doc. No. 76-1 at ¶ 15.)

[11] Lokring also alleges that Plaintiffs violated the April 2016 Distributor Agreement by: "a. ordering inventory other than directly from Lokring; b. maintaining and using a CRM in order to obtain and use Lokring's confidential information to the latter's detriment; c. ordering inventory but not timely paying for same, for which a balance remains due and owing to Lokring; d. acquiring inventory from terminated distributors and in a manner that interfered with Lokring's contractual rights with such former distributors and in breach of Plaintiffs' agreements; e. failing to maintain and provide copies of ENDAs Plaintiffs were obligated to cause Distributor's employees to enter pursuant to Section 5.1(q) of the EDA…; [and] f. fail[ing] to return Lokring's Intellectual Property and Information as required by Section 12.5(a) of the EDA." (Doc. No. 61 at ¶ 150.)  Plaintiffs have not argued or demonstrated that any of these claims relate to S&A's retention of mistaken payments for products sold by Alba.

12

> 124. As an example, Plaintiffs' Accounts Receivable report as of October 31, 2020, indicated McJunkin Redman Corporation owed Plaintiffs $7,945.62 with respect to Plaintiffs' sale of Lokring's Products, which amount continues to be listed as an account receivable through May 31, 2021.  However, subsequent to October 31, 2020, McJunkin Redman Corporation has paid Plaintiffs at least $22,525.17.

(Doc. No. 61 at ¶¶ 123, 124.)  The Court does not read these paragraphs as alleging that Plaintiffs wrongfully retained payments mistakenly made by McJunkin Redman to S&A for products sold by Alba.  Rather, the Court construes the above paragraphs as alleging that Plaintiffs and Guidry improperly used Lokring's confidential information to obtain business from McJunkin Redman after the termination of the April 2016 Distributor Agreement.  Thus, the Court finds that Lokring's allegations relating to the McJunkin Redman account are not the "same claims" as those asserted by Alba in the Texas litigation.  Plaintiffs' argument that Lokring and Alba seek "the same damages arising from the same transfers" is without merit.[12]

The Court also notes that Plaintiffs do not assert any claims in their Second Amended Complaint relating to mistaken payments to S&A by Lokring customers after the termination of the April 2016 Distributor Agreement.  Nor do they specifically argue or assert that they are entitled to retain the mistaken payments at issue in the Texas litigation.  Indeed, in their Motion, Plaintiffs expressly state that they "readily acknowledge that the funds [claimed by Alba] are not plaintiffs'." (Doc. No. 76 at fn 1.)  Under these circumstances, Plaintiffs have failed to demonstrate that the Court

---

[12] Plaintiffs also complain that complete relief cannot be accorded the existing parties without Alba's joinder because "[i]f Alba is not joined, Plaintiffs could prevail on Lokring's counterclaim, but Alba then could proceed against Plaintiffs in Texas state court, as third-party beneficiary of the non-compete agreement, for damages for its lost sales. Or, Lokring could obtain a judgment against Plaintiffs for lost sales at the price it charges Alba, leaving Alba to pursue claims against Plaintiffs for damages at the price it charges its customers." (Doc. No. 76 at pp. 4-5.)  Alba, however, is not making any claims for lost sales.  Plaintiffs' arguments are entirely speculative and without merit.

cannot accord complete relief among existing parties in Alba's absence.  The Court, therefore, finds that Alba is not a necessary party for purposes of Rule 19(a)(1)(A).

The Court also rejects Plaintiffs' argument that joinder is required under Rule 19(a)(1)(B)(ii) because, if Alba is not joined, Plaintiffs will be subject to a "substantial risk of incurring, double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii).[13]  As discussed above, Lokring's Amended Counterclaims against Plaintiffs in this action do not seek damages relating to payments mistakenly made to Shepard & Associates for products sold by Alba.  Thus, there is no risk that Plaintiffs may be subject to incurring double or inconsistent obligations relating to these funds, i.e., that Plaintiffs would be "unable to comply with one court's order without breaching another court's order concerning the same incident." *See We Project, Inc.*, 2021 WL 1986672 at * 2 (citing *Delgado v. Plaza Las Ams., Inc.*, 139 F.3d 1, 3 (1st Cir. 1998)).

Accordingly, the Court finds that Alba is not a necessary party under Rule 19(a)(1).[14]  Having so found, the Court need not analyze the final two steps of the Rule 19 analysis.  *See Local 670, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL–CIO*, 822 F.2d at 618 ("If the court determines that the person or entity does not fall within one of these provisions, joinder, as well as further analysis, is unnecessary."); *Norfolk Southern Railway Co.*, 443 F.Supp.3d at 885 ("Because FDF, Wildcat, Silver Creek, and BNSF are not necessary parties under Rule 19(a), there is no need to conduct the final two steps of the Rule 19(a) analysis.")

---

[13] Plaintiffs do not argue that joinder is required under Rule 19(a)(1)(B)(i).

[14] The parties spend a great deal of time arguing about whether or not Alba was aware of or utilized the proper vendor numbers in communicating with its customers.  (Doc. No. 81 at PageID#s 1113-1114, 1129; Doc. No. 82 at p. 3; Doc. No. 82-2.)  The parties have not sufficiently explained or demonstrated how or why this issue is relevant to the determination of whether Alba is required to be joined as a necessary party under Rule 19(a)(1).  The Court finds that it is not.

14

**III.     Conclusion**

For all the reasons set forth above, Plaintiffs' Motion to Join a Required Party (Doc. No. 76) is DENIED.

**IT IS SO ORDERED.**


                                                                  _s/Pamela A. Barker_____
                                                                  PAMELA A. BARKER
Date:  September 23, 2021                                         U. S. DISTRICT JUDGE