UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHEPARD AND ASSOCIATES, INC., *et al.*, | ) ) ) | CASE NO. 1:20-cv-02488 |
| Plaintiff, | ) ) ) | JUDGE BRIDGET M. BRENNAN |
| v. | ) ) | |
| LOKRING TECHNOLOGY, LLC, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants/Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| TUBE-MAC INDUSTRIES, INC., | ) ) | |
| Third-Party Defendant. | ) | |

Before the Court are Plaintiffs' Motion to Apply Texas Law (Doc. No. 197) and Motion for Leave to File Third Amended Complaint (Doc. No. 201). Defendant/Third-Party Plaintiff Lokring Technology, LLC ("Lokring") filed oppositions to both motions on March 31, 2022. (Doc. Nos. 211, 212.) Plaintiffs replied in support of their Motion to Apply Texas Law on April 4, 2022, and replied in support of their Motion for Leave to File Third Amended Complaint on April 5, 2022. (Doc. Nos. 215, 216.) Lokring sought and was granted leave to file a surreply to the Motion to Apply Texas Law on April 11, 2022. (Doc. No. 223.)

For the reasons discussed herein, Plaintiffs' motions are **DENIED**.

I. **Background**

A. **Factual Allegations**

Lokring is an Ohio company that designs, produces, and sells industrial couplings. (Doc. No. 41 at ¶ 3.) Shepard and Associates, Inc., doing business as Lokring Southwest ("Southwest")

is a Texas company operating as an exclusive Lokring distributor based in LaPorte, Texas.  (*Id.* at ¶ 1.)  Brad Shepard lives in Texas, where he owned and operated Southwest.  (*Id.* at ¶ 2.)  In April 2016, Plaintiffs entered into a written Amended and Restated Lokring Exclusive Distributor Agreement ("EDA") to act as an exclusive distributor for Lokring products in the southwestern United States.  (*Id.* at ¶ 32; Doc. No. 41-4.)

The EDA provides that the agreement "may be terminated by either party for any reason by giving the other party written notice thirty (30) days in advance."  (Doc. No. 41-4 at PageID# 676.)  The EDA also contains a provision regarding choice of law and forum, which states:

> **Governing Law and Jurisdiction:** This Agreement is made in the State of Ohio and the validity of this Agreement, any documents incorporated in or executed in connection with this Agreement, and the construction, interpretation, and enforcement of this Agreement, and the rights of the parties to this Agreement shall be determined under, governed by, and construed in accordance with any applicable laws of the United States of America and the laws of the State of Ohio, without regard to principles of conflicts of law.  The parties agree that all actions or proceedings arising in connection with this Agreement, may be brought in any state or federal court of competent jurisdiction sitting in Lake County, Ohio or Cuyahoga County, Ohio.  The parties to this Agreement waive any right each may have to assert the doctrine of forum non conveniens or to object to venue to the extent any proceeding is brought in accordance with this Section.

(*Id.* at PageID# 678.)

In February 2019, Southwest hired Jared Guidry ("Guidry") as a Technical Sales Consultant for Southwest.  (Doc. No. 61 at ¶ 19.)  Guidry started working with Southwest on March 1, 2019.  (*Id.*)  Guidry resides in LaPorte, Texas.  (*Id.* at ¶ 5.)  In June 2020, Brad Shepard learned how to download Lokring's "Big Contacts List," which contained over 26,000 rows of specific customer information.  (Doc. No. 98-1 at PageID# 1314.)  Guidry also learned how to download this information.  (*Id.*)  In July 2020, Lokring became aware that Plaintiffs and Guidry had accessed this information.  (Doc. No. 98-2 at PageID# 1314.)  On September 21, 2020, Lokring notified Brad Shepard that it was terminating its distributor agreement with Plaintiffs.  (Doc. No.

41 at ¶ 48.) Lokring did not provide Plaintiffs with a reason for doing so. (*Id.* at ¶ 49.) Plaintiffs then brought this lawsuit and have alleged, in part, that Lokring violated the valid and enforceable EDA. (*See* Doc. No. 1.)

### B. Procedural History

On November 3, 2020, Plaintiffs initiated this action against Lokring. (Doc. No. 1.) On November 12, 2020, Plaintiffs filed an Amended Complaint setting forth the following claims: (1) breach of contract, (2) breach of fiduciary duty, (3) unjust enrichment, (4) tortious interference with contract, and (5) equitable estoppel. (Doc. No. 5.) On December 1, 2020, Lokring filed its Motion to Dismiss. (Doc. No. 6.) Plaintiffs filed their opposition on December 8, 2020 (Doc. No. 7), and Lokring filed a reply on December 18, 2020 (Doc. No. 8). On March 19, 2021, the Court granted in part and denied in part Lokring's Motion to Dismiss the Amended Complaint. (Doc. No. 13.) Specifically, the Court dismissed Plaintiffs' unjust enrichment, tortious interference with contract, and equitable estoppel claims. (*Id.*)

On March 25, 2021, Lokring filed its Answer to the Amended Complaint and asserted counterclaims for breach of contract and spoliation of evidence. (Doc. No. 17.) On June 1, 2021, the last day to amend pleadings or add additional parties, Plaintiffs filed a Second Amended Complaint and alleged: (1) breach of contract, (2) breach of fiduciary duty, (3) breach of covenant of good faith and fair dealing, (4) unjust enrichment, and (5) promissory estoppel. (Doc. No. 41.) On June 14, 2021, Lokring filed its Motion to Dismiss the Second Amended Complaint. (Doc. No. 54.) Plaintiffs filed an opposition (Doc. No. 55), and Lokring filed a reply (Doc. No. 59).

On March 10, 2022, Plaintiffs filed a Motion to Apply Texas Law. (Doc. No. 197.) On March 16, 2022, Plaintiffs filed a Motion for Leave to File Third Amended Complaint. (Doc. No. 201.) The only difference between the Second Amended Complaint and Plaintiffs' proposed Third

Amended Complaint is the addition of a claim under the Texas Fair Practices of Equipment Manufacturers, Distributors, Wholesalers, and Dealers Act. (*Id.*) On March 30, 2022, Lokring filed oppositions to both motions. (Doc. Nos. 211, 212.) On April 4, 2022, Plaintiffs filed their Reply in Support of the Motion to Apply Texas Law (Doc. No. 215) and on April 5, 2022, they filed their Reply in Support of their Motion to Amend (Doc. No. 216). Because Plaintiffs' Reply in Support of the Motion to Apply Texas Law raised new arguments not included in their initial motion, the Court granted Lokring leave to file a surreply. (Doc. Nos. 222, 223.)[1]

Both motions are now ripe for this Court's consideration and will be addressed below.

## II. Law and Analysis

### A. Motion to Apply Texas Law

Plaintiffs move this Court for leave to amend the complaint so they may belatedly include a single cause of action pursuant to the Texas Fair Practices of Equipment Manufacturers, Distributors, Wholesalers, and Dealers Act (the "Texas Act"). *See* Tex. Bus. & Com. Code §§ 57.001, *et seq*. Plaintiffs acknowledge that the breach of contract claim they assert in this action is premised on the EDA, which includes the Ohio choice of law and choice of forum provisions. (Doc. No. 197 at PageID# 3820.) Plaintiffs also acknowledge their delayed attempt to include this claim, but assert that their Ohio counsel was only recently advised by Texas counsel that the Texas Act may apply to this dispute. (*Id.*)

To get around the acknowledged choice of law provision in the EDA, Plaintiffs argue that the provision is not absolute because the Restatement of Conflict of Laws § 187(2), as adopted by

---

[1] Plaintiffs sought to leave to file a reply to Lokring's surreply without providing good cause for such relief. (Doc. No. 224.) Plaintiffs' request was denied. (Doc. No. 230.)

the Ohio Supreme Court and recognized by the Sixth Circuit, provides that a choice law provision may be disregarded if:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rules of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(*Id.* at PageID# 3821-3822 (quoting Restatement (Second) of Conflict of Laws, § 187(2) (1971)).)

Plaintiffs do not rely on subsection (a) to support their argument. Instead, they assert under subsection (b) that Texas has an overriding policy concern and "a materially greater interest" in the distributor agreement at issue. (*Id.* at PageID# 3822.) Plaintiffs contend that, upon raising Section 187(2)(b) as a basis for setting aside the choice of law provision, the Court must consider the five Section 188 factors and determine that Texas law governs. (*Id.*) The five factors to be considered are "a) the place of the contracting, b) the place of negotiation of the contract, c) the place of performance, d) the location of the subject matter of the contract, and e) the … place of business of the parties." (*Id.* (citing Restatement (Second) of Conflict of Laws, § 188 (1971)).) Addressing these factors, Plaintiffs argue that Texas law would apply because the EDA was last signed by Brad Shepard in Texas; negotiated, in part, in Texas; and Plaintiffs' performance under the contract, namely Southwest's sales, occurred in Texas. (*Id.* at PageID# 3822-3823.)

Lokring focuses on the express terms of the EDA. The parties' agreement clearly states that Ohio will be the forum state and that Ohio law will apply to any dispute "without regard to principles of conflicts of law." (Doc. No. 211 at PageID# 4030-4031; Doc. No. 41-4 at PageID# 678.) And, with respect to Plaintiffs' reliance on the Restatement of Conflict of Laws, Lokring notes that Ohio courts generally uphold choice of law provisions, in part, because the Restatement

of Conflict of Laws recognizes the parties' ability to choose which state's laws will apply: "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." (Doc. No. 211 at PageID# 4032-4033 (quoting Restatement (Second) of Conflict of Laws, § 187(1) (1971) and citing Sixth Circuit case law recognizing "no exceptions" to enforcing Section 187(1)).) Lokring's final contention rests on Plaintiffs' failure to meet their burden of demonstrating that Texas's interest in this litigation is materially greater than Ohio's interest. (*Id.* at PageID# 4034-4037.)

Plaintiffs' reply asserts two theories in support of their argument – neither of which were raised in their initial motion. First, they assert that Texas law would only apply to their Texas Act claim. (Doc. No. 215 at PageID# 4115-4116.) Ohio law would continue to govern the remaining causes of action, including Plaintiffs' breach of contract claim. (*Id.*) The result being that laws of different states would apply to different causes of action in this case, with the parties' choice of Ohio law applying to all but one of the proposed causes of action. (*Id.*) Second, to add some support to their bare assertion that Texas has a materially greater interest in this dispute, Plaintiffs argue that the EDA is a contract of adhesion. (*Id.* at PageID# 4116-4117.) This, Plaintiffs argue, is the kind of contract borne of the "oppressive use of superior bargaining power" the Texas Act sought to prevent, thereby giving Texas a greater interest in the dispute. (*Id.*)

Lokring sought and was granted leave to address these two new arguments. At the outset, Lokring notes that these two new arguments were waived because Plaintiffs failed to include them in their initial briefing. (*See* Doc. No. 222 at PageID# 4207.) Lokring also asserts that applying laws of different states to different counts in the same action, recognized in the Restatement of Conflict of Laws as the doctrine of depecage, is generally disfavored under Ohio law. (Doc. No.

223 at PageID# 4220-4221.) As for the adhesion contract allegation, Lokring directs the Court to testimony, admissions, and documents that disprove Plaintiffs' assertion that the EDA was a contract of adhesion. (*Id.* at PageID# 4222-4223.)

**B. Analysis**

"Under Ohio law, contractual choice-of-law provisions are valid and enforceable." *CajunLand Pizza, LLC v. Marco's Franchising, LLC*, 513 F. Supp. 3d 801, 805 (N.D. Ohio 2021) (quoting *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 932 (S.D. Ohio 2012)). Under Ohio's Choice of Law Doctrine, the party asserting the conflict of law has the burden of proving that a conflict exists. *Gouge v. BAX Glob., Inc.*, 252 F. Supp. 2d 509, 521 (N.D. Ohio 2003). "Where the party seeking the application of foreign law fails to demonstrate a conflict, Ohio law governs." *Id.*

The Ohio Supreme Court has adopted the Second Restatement of Conflict of Laws with respect to choice of law provisions in contract disputes. *See Am. Interstate Ins. Co. v. H Serv. Ctr., Inc.*, 861 N.E.2d 524, 526-527 (2007). Section 187 of the Second Restatement of Conflict of Laws provides:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either:
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> >
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the

> particular issue and which, under the rule of §188 would be the state of the applicable law in the absence of an effective choice of law by the parties.
>
> (3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

The EDA expressly states that Ohio law governs any dispute "without regard to principles of contracts of laws." (Doc. No. 41-4 at PageID# 678.) It also states that the EDA may be terminated "by either party for any reason." (*Id.* at PageID# 676.) The parties' agreement could not be any plainer. Thus, pursuant to Section 187, the parties' choice of law provision is controlling.

Notwithstanding the plain language of the EDA, Plaintiffs argue that the choice of law provision may still be unenforceable. But Plaintiffs have not met their burden. Choice of law provisions are *only* set aside where applying the chosen law would be contrary to a fundamental policy of the state with a materially greater interest in the dispute and that state's law would have controlled absent the choice of law provision. Restatement (Second) of Conflict of Laws § 187, cmt. g (1971). Plaintiffs have not demonstrated that this is one of the "rare cases" triggering Section 187(2)'s considerations. *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 927 (6th Cir. 2006); *see also Down-Lite Int'l, Inc. v. Altbaier*, 821 F. App'x 553, 555-556 (6th Cir. 2020) (internal citation omitted) (upholding Ohio choice of law provision despite California's meaningful interest in the issue because courts should not "summarily brush aside the clear and unambiguous terms of the parties' agreement" to adjudicate a matter using a different state's laws).

Even entertaining the "what if" of a Section 187(2) analysis, Plaintiffs have not demonstrated how Texas's policies relating to distributor agreements are so fundamentally important that the parties' valid choice of law provision should be set aside, let alone that the Court should carve out an exception and allow this new cause of action to proceed under Texas law and

all other claims to proceed under Ohio law. This argument alone – that the choice of law provision is still valid as to some counts – also undermines Plaintiffs' theory that Texas has a materially greater interest than Ohio because the EDA is an adhesion contract.

Arguments not advanced in a party's initial motion are deemed waived. Meaning, arguments raised for the first time in a reply brief cannot be considered by the Court. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). Plaintiffs' motion did not assert that Texas had a materially greater interest because the EDA was a contract of adhesion or that Texas law only applied to their new Texas claim. Thus, Plaintiffs waived both of these arguments. Notwithstanding waiver, the Court has reviewed these two new assertions and finds the first belied by their own discovery responses and the second unpersuasive.

A contract of adhesion is a "'[s]tandardized contract form offered . . . on essentially [a] 'take it or leave it' basis.'" *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 872-873 (1998) (Cook, J., concurring in part) (quoting Black's Law Dictionary 38 (5th ed.1979)). A distinctive feature of an adhesion contract is that the weaker party has no realistic choice as to its terms. *Vistein v. Am. Registry of Radiologic Technologists*, 342 F. App'x 113, 121-122 (6th Cir. 2009). Plaintiffs do not direct this Court to any facts that would support that the EDA was a standardized contract or that Plaintiffs were the weaker party with no realistic bargaining position as to the contract's terms. In contrast, Lokring provides this Court with Plaintiffs' admission that they negotiated certain of the EDA's terms, including terms directly related to the termination of the EDA:

> **REQUEST FOR[sic] NO. 11**: Admit that prior to signing the EDA, you negotiated certain of its terms with Lokring.
>
> **RESPONSE**: Admit.
>
> **REQUEST NO. 12**: Admit that Lokring accepted some of your proposed changes to the EDA, including the elimination of the 15% restocking fee if products are sold back to Lokring after the agreement is terminated.

**RESPONSE**: Admit. (Doc. No. 223 PageID# 4222.)

As a final point, Plaintiffs' belated assertion that Ohio law applies to all counts but one – the Texas Act – would require the Court to apply the doctrine of depecage in this matter. In a similar lawsuit arising from the termination of a distributor agreement, an Illinois court declined to use the doctrine of depecage to apply the Illinois Franchise Disclosure Act (a similar act to the Texas Act) to a dispute where the parties selected Wisconsin law to govern in their contract. *Oakton Distribs., Inc. v. U-Line Corp*, No. 06C1353, 2006 WL 2714695 (N.D. Ill. Sept. 20, 2006). There, the Court found the parties expressly agreed that the contract was governed by Wisconsin law and accordingly saw "no reason why those provisions-voluntarily and mutually agreed upon-should not be given effect" in declining to use the doctrine of depecage. *Id*. at *4. The same is true here. Because an express provision in the contract addresses termination and because the parties agreed Ohio law governs the dispute "without regard to principles of conflicts of law," Ohio law governs the entirety of this dispute.

Plaintiffs' Motion to Apply Texas Law is **DENIED.**

**C.     Motion for Leave to File Third Amended Complaint**

Related to Plaintiffs' Motion to Apply Texas Law is their motion for leave to file a third amended complaint. The proffered amendment seeks to introduce a single new claim, that being a claim under the Texas Act. (Doc. No. 201.) Plaintiffs argue that the Texas Act directly addresses the issues underlying the Second Amended Complaint. (*Id.* at PageID# 3893-3894.) Specifically, Plaintiffs note that the Texas Act requires distributor agreements to be terminated with "good cause," which Plaintiffs allege did not occur when Lokring terminated the EDA. (Doc. No. 216 at PageID# 4122.) Lokring argues that Plaintiffs' motion is untimely and Plaintiffs have failed to

demonstrate good cause for failing to seek leave to amend the complaint sooner. (Doc. No. 212 at PageID# 4039-4040.) Further, Lokring argues the motion should be denied as futile because the EDA does not allow for claims under Texas law. (*Id.* at PageID# 4045-4047.) Lokring's arguments are well-taken.

Rule 15(a) indicates that leave to file an amended complaint should be "freely" granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Thus, "leave to amend should be denied if the amendment . . . would be futile." *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) (internal quotation omitted). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005).

Plaintiffs' proposed amendment is untimely. It also seeks to add a claim under the Texas Act and nothing more. As discussed above, Ohio law governs the dispute. Bringing a new claim premised on Texas law would be both futile and unduly prejudicial. Accordingly, Plaintiffs' motion to amend the complaint is **DENIED**.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion to Apply Texas Law and Plaintiffs' Motion for Leave to File Third Amended Complaint.

**IT IS SO ORDERED.**

Date: June 22, 2022

BRIDGET M. BRENNAN
U.S. DISTRICT JUDGE