UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHEPARD AND ASSOCIATES, INC., *et al.*, | CASE NO.  1:20-cv-02488 |
| Plaintiff, | |
| | JUDGE BRIDGET M. BRENNAN |
| v. | |
| LOKRING TECHNOLOGY, LLC, | **MEMORANDM OPINION AND ORDER** |
| Defendants/Third-Party Plaintiff, | |
| v. | |
| TUBE-MAC INDUSTRIES, INC., | |
| Third-Party Defendant. | |

Before the Court is Defendant/Third-Party Plaintiff Lokring Technology, LLC's ("Lokring") Motion to Dismiss Plaintiffs' Second Amended Complaint.  (Doc. No. 54.)  Plaintiffs opposed this motion on June 28, 2021 (Doc. No. 55), and Lokring replied on July 12, 2021 (Doc. No. 59).  For the reasons stated herein, Lokring's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

I.  **Background**

A.  **Factual Allegations**

Lokring is an Ohio company that designs, produces, and sells industrial couplings.  (Doc. No. 41 at ¶ 3; Doc. No. 61 at ¶¶ 1, 23.)  Shepard and Associates, Inc., doing business as Lokring Southwest ("Southwest"), is based in LaPorte, Texas.  (Doc. No. 41 at ¶ 1.)

In 2003, Brad Shepard's father, Joe Shepard, formed Southwest to act as an exclusive Lokring distributor. (Doc. No. 41 at ¶ 7.)[1] Lokring and Southwest entered into a written agreement for Southwest to act as the first exclusive distributor of Lokring products for specified geographical areas of the southwestern United States. (*Id.* at ¶¶ 8-9.) In its role as a Lokring distributor, Southwest purchased Lokring products at a stated price, resold the products to customers at a mark-up, and kept the margin as its profit. (*Id.* at ¶ 9.) The agreement specifically stated either party had the right to terminate the distributorship "for any reason." (*Id.* at ¶ 11.) Once a party terminated the agreement, Lokring had the option, but not the obligation, to repurchase some or all of Southwest's inventory. (*Id.*)

After Southwest was established, Lokring used the same template to establish other Lokring exclusive distributors around the world. (*Id.* at ¶ 13.) Lokring requires its distributors to comply with certain requirements and restrictions, including that they maintain adequate stocks of inventory; allow Lokring to train their employees in the use and installation of Lokring's products; create marketing policies and procedures in accordance with Lokring's standards; provide Lokring with sales forecasts; maintain pricing for the sale of products as determined by Lokring; submit market research for their sales areas; provide monthly reports of products sold and inventory levels; and provide information pertaining to their customers. (*Id.* at ¶ 14.)

In 2015, after receiving a proposal from Lokring to be a distributor in Florida, Joe Shepard established a new exclusive distributorship called Joe Shepard & Associates, Inc., this time servicing the southeastern region of the United States. (*Id.* at ¶¶ 17-18.) Joe Shepard continued

---

[1] The allegations contained in Plaintiffs' Second Amended Complaint are assumed to be true solely for purposes of ruling on Lokring's Motion to Dismiss.

to operate Southwest with the assistance of Brad Shepard, then a Southwest employee. (*Id.* at ¶ 18.)

After Joe Shepard established his Florida distributorship, Lokring told him he could not hold two distributorships at the same time. (*Id.* at ¶ 19.) Joe Shepard advised that he would finance the purchase of Southwest to Brad Shepard. (*Id.* at ¶ 20.) The then-existing distributor agreement's terms stated that Lokring must approve the purchase of a distributorship. (*Id.* at ¶ 21.) Lokring proposed structuring the sale through a stock purchase agreement between Brad and Joe Shepard for the going concern value of the distributorship. (*Id.* at ¶ 23.) The amount owed would be secured by a promissory note from Brad Shepard to Joe Shepard. (*Id.*) Brad Shepard would then execute a new distributor agreement with Lokring. (*Id.*) The primary benefit for Lokring was that it did not have to immediately repurchase Southwest's inventory and tooling for resale to a new distributor. (*Id.* at ¶ 24.) Lokring also secured a southeastern distributorship that would generate income to ensure Brad Shepard's promissory note payments to Joe Shepard. (*Id.*)

Notwithstanding, Lokring modified the initial proposal. (*Id.* at ¶ 25.) Under the new proposal, the consideration for Brad Shepard's purchase of his father's shares would be paid through a consulting agreement between Southwest and Joe Shepard rather than secured by a promissory note. (*Id.*) Lokring set the purchase price at $1,875,000. (*Id.*) Joe Shepard objected on the grounds that a consulting agreement afforded him fewer protections should the distributor agreement be terminated, including that he could be left with stock he could not sell or ensure that Lokring repurchased. (*Id.* at ¶ 26.) As a result, Joe Shepard revised the documents to provide for Brad Shepard's purchase of his shares in Southwest by promissory note, as it had been structured originally. (*Id.*)

During purchase agreement discussions, Lokring's owner Bill Lennon ("Lennon") informed Brad Shepard that Lokring would not agree to a definite term for the agreement, but assured Brad Shepard that so long as Plaintiffs continued to perform Southwest's future would be "solid." (*Id.* at ¶¶ 27-28.) With this in mind, Brad Shepard signed the agreement. (*Id.* at ¶ 29.) Lokring approved the sale of Southwest shares to Brad Shepard through the revised stock purchase agreement. (*Id.* ¶ 30.) Lokring and Southwest then entered into the Amended and Restated Lokring Exclusive Distributor Agreement ("EDA"). (*Id.* at ¶ 32.) The EDA "may be terminated by either party for any reason by giving the other party written notice thirty (30) days in advance." (Doc. No. 41-4 at PageID# 676.) With respect to repurchasing inventory and tooling, the EDA states:

> (c) Distributor shall make available for inspection, on terms reasonably agreed to by Company and Distributor, within fifteen (15) days of the termination of this Agreement for any reason, all Inventory then in Distributor's possession. The Inventory will be inspected by Company for re-saleability. If, in Company's sole discretion, the inventory is deemed to be in condition not suitable for resale ("Ineligible Inventory"), payment is not warranted and Company will not buy back the Ineligible Inventory. If, in the Company's sole discretion, the inventory is deemed suitable for resale and it is in original factory packaging ("Eligible Inventory"), Company will repurchase all Eligible Inventory at one-hundred percent (100%[)] of Distributor's initial purchase price, and Distributor will return inventory within fifteen (15) days of the inspection described herein. Company will deliver payment for the Eligible Inventory upon Company's receipt of the Eligible Inventory.
>
> (d) Distributor shall make available for inspection, at the time of the inspection set forth above concerning the Inventory, all tooling previously used by Distributor for demonstration, rental, or loan. Company will determine what, if any, reconditioning is required to restore these tools to their proper working condition. If Company decides in its own discretion that reconditioning is required, payment to Distributor of the returned tooling's initial purchase price will be net of reconditioning fee unless the tooling has been deemed Ineligible Inventory as described above, in which case, Company will not buy back the same.

(*Id.* at PageID# 676-677.) The EDA also contains a provision regarding choice of law and forum, which states:

> **Governing Law and Jurisdiction:** This Agreement is made in the State of Ohio and the validity of this Agreement, any documents incorporated in or executed in connection with this Agreement, and the construction, interpretation, and enforcement of this Agreement, and the rights of the parties to this Agreement shall be determined under, governed by, and construed in accordance with any applicable laws of the United States of America and the laws of the State of Ohio, without regard to principles of conflicts of law. The parties agree that all actions or proceedings arising in connection with this Agreement, may be brought in any state or federal court of competent jurisdiction sitting in Lake County, Ohio or Cuyahoga County, Ohio. The parties to this Agreement waive any right each may have to assert the doctrine of forum non conveniens or to object to venue to the extent any proceeding is brought in accordance with this Section."

(*Id.* at PageID# 678.) The parties agreed that the EDA represents "the entire Agreement and understanding of the parties relating to the subject matter hereof and supersedes all prior discussions and negotiations." (*Id.* at PageID# 678-679.)

Brad Shepard continued to grow Southwest's business. (Doc. No. 41 at ¶ 34.) At Lokring's request, he invested in Lokring tooling and equipment, established a sales force, leased facilities to accommodate the growing business, and purchased vehicles and equipment to service Southwest's customers. (*Id*. at ¶ 35.) Lokring controlled most aspects of Southwest's operations, making Southwest dependent upon Lokring for its economic existence. (*Id.* at ¶ 36.) Brad Shepard fully performed within the terms of the EDA. (*Id.* at ¶ 37.)

Meanwhile, Joe Shepard operated his southeast distributorship until May 2020. (*Id.* at ¶¶ 40-41.) Then, at the age of 65, Joe Shepard retired as a Lokring distributor. (*Id.* at ¶ 41.) Lokring proposed a similar transition of Joe Shepard's business. (*Id*. at ¶ 42.) Joe Shepard declined and Lokring closed the distributorship entirely. (*Id.* at ¶¶ 43, 45.) Lennon was not pleased. (*Id.* at ¶ 44.) By closing the southeast distributorship, Lokring was forced to repurchase most of the inventory. (*Id.* at ¶ 45.)

In June 2020, Lennon texted Brad Shepard and informed him that his future as a distributor was "solid." (*Id.* at ¶ 46.) As of August 1, 2020, Brad Shepard owed approximately $800,000 to

Joe Shepard on the promissory note for his purchase of Southwest. (*Id.* at ¶ 47.) On September 21, 2020, Lokring notified Brad Shepard that it was terminating the distributorship without stating a reason for the termination. (*Id.* at ¶¶ 48-49.) Lokring refused to pay Plaintiffs the fair market value of the Southwest distributorship or the full value of Southwest's inventory and tooling, valued at approximately $1,350,000. (*Id.* at ¶¶ 50-53.)

**B.     Procedural History**

On November 3, 2020, Plaintiffs filed a Complaint in this Court against Lokring. (Doc. No. 1.) Shortly thereafter, on November 12, 2020, Plaintiffs filed an Amended Complaint, setting forth the following causes of action: (1) breach of contract, (2) breach of fiduciary duty, (3) unjust enrichment, (4) tortious interference with contract, and (5) equitable estoppel. (Doc. No. 5.) On December 1, 2020, Lokring filed its Motion to Dismiss. (Doc. No. 6.) Plaintiffs filed their opposition on December 8, 2020 (Doc. No. 7), and Lokring filed a reply on December 18, 2020 (Doc. No. 8). On March 19, 2021, the Court granted in part and denied in part Lokring's Motion to Dismiss the Amended Complaint. (Doc. No. 13.) Specifically, the Court dismissed Plaintiffs' unjust enrichment, tortious interference with contract, and equitable estoppel claims and found Plaintiffs' breach of contract and breach of fiduciary duty claims well-pleaded. (*Id.*)

On March 25, 2021, Lokring filed an Answer to the Amended Complaint as well as Counterclaims. (Doc. No. 17.) On June 1, 2021, Plaintiffs filed a Second Amended Complaint (the "Complaint"), alleging (1) breach of contract, (2) breach of fiduciary duty, (3) breach of covenant of good faith and fair dealing, (4) unjust enrichment, and (5) promissory estoppel. (Doc. No. 41.) June 1, 2021 was also the Court's deadline to amend the pleadings. (*See* Doc. No. 34.) On June 14, 2021, Lokring filed its Motion to Dismiss the Second Amended Complaint. (Doc.

No. 54.) Plaintiffs filed an opposition (Doc. No. 55), and Lokring filed a reply in support of its Motion to Dismiss (Doc. No. 59).

On March 10, 2022, Plaintiffs filed a Motion to Apply Texas Law and later filed a Motion for Leave to Amend the Complaint in accordance. (Doc. Nos. 197, 201.) The Court denied these motions on June 22, 2022. (Doc. No. 256.)

## II. Law and Analysis

### A. Standard of Review

When addressing a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017) (setting forth the standard of review for a motion to dismiss); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The sufficiency of the complaint is tested against the notice pleading requirement that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this standard is a liberal one, a complaint must still provide the defendant with "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," to state a plausible claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Facial plausibility means that the complaint contains "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Such plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* "'[W]here the

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). In such a case, the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [and the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 678.

A complaint need not set down in detail all the particulars of a plaintiff's claim. However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678 (This standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). "Bare assertions," basic recitations of the elements of the cause of action, or "conclusory" allegations are not entitled to the assumption of truth and, without more, do not satisfy the Rule 8 notice standard. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

  **B.**  **Analysis**

    **1.**  **Breach of Contract – Count One**

Plaintiffs allege that they complied with the EDA, but Lokring, who exercised its option to repurchase Southwest's inventory and tooling, breached the EDA by refusing to pay for the inventory unless Plaintiffs released all their claims against Lokring. (Doc. No. 41 at ¶¶ 55-58.) Lokring asserts that the breach of contract claim was not properly pleaded for two reasons. First, it agreed to pay Plaintiffs for the inventory during the Court's proceedings on April 8, 2021, and wired Plaintiffs $958,590.29 on April 12, 2021. (Doc. No. 54 at PageID# 732.) Having paid Plaintiffs for the inventory, a breach of contract claim premised on a failure to pay cannot stand. (*Id.* at PageID# 732-733.) Second, Brad Shepard admitted to being in breach of the EDA by not

requiring Jared Guidry to sign a confidentiality agreement, thereby diminishing their own breach of contract claim. (*Id.* at PageID# 733.)

In response to Lokring's arguments about whether Guidry signed a confidentiality agreement, Plaintiffs argue that Lokring attempts to covert the motion to dismiss to one for summary judgment. (Doc. No. 55 at PageID# 849.) They do not make this argument about Lokring's assertion that it made payments for the repurchased inventory. Plaintiffs also point out that the Court previously denied Lokring's motion to dismiss this count on similar grounds. (*Id.* at PageID# 848.) Separately defending their breach of contract claim, Plaintiffs state that Lokring remains in breach because it has not fully paid for the inventory. (*Id.*) Plaintiffs also argue that any failure to have Guidry sign a confidentiality agreement could be an "immaterial breach" on their part if Lokring failed to monitor this requirement for other distributors. (*Id.* at PageID# 848-849.)

Plaintiffs' argument that extrinsic evidence converts a motion to dismiss to one of summary judgment is well-taken. If on a 12(b)(6) motion "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d). The Court will not consider such evidence and therefore declines to convert this motion to one for summary judgment. *See Barrett v. Harrington*, 130 F.3d 246, 253 (6th Cir. 1997) ("It is well established that a [d]istrict [c]ourt has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion.") (citation omitted). Lokring's basis for dismissing a breach of contract claim because the confidentiality agreement was not signed does just this. The Court declines to exercise its discretion to consider this extrinsic evidence at the motion to dismiss stage.

Independently, Plaintiffs have sufficiently pleaded a breach of contract claim. Lokring's argument regarding payments for repurchased inventory presents a factual determination that is not appropriate at this stage. Additionally, the breach of contract claim in this Complaint is identical to the breach of contract claim in Plaintiffs' First Amended Complaint. The Court already held that the EDA required Lokring to purchase the inventory without a release agreement, and that Plaintiffs adequately alleged that Lokring indicated its intent not to perform under the contract unless Plaintiffs consented to the release. (Doc. No. 13, PageID# 339.)

For the reasons stated, Lokring's Motion to Dismiss Count One is **DENIED.**

2. **Breach of Fiduciary Duty – Count Two**

Plaintiffs allege that Lokring breached its fiduciary duty by terminating Southwest's distributorship without cause. (Doc. No. 41 at ¶¶ 60-67.) For its challenge, Lokring incorporates the arguments raised in its initial motion to dismiss (Doc. No. 6). (*See* Doc. No. 54 at PageID# 736.) Lokring also argues that the EDA imposed many requirements on Lokring, including that Plaintiffs were independent contractors. (*Id.* at PageID# 733-737.) In opposition, Plaintiffs argue that the Court has already found this claim to be well-pleaded. (Doc. No. 55 at PageID# 849-850.)

The vast majority of business relationships, including independent contractor and franchisor-franchisee relationships, do not give rise to a fiduciary relationship. *Pasqualetti v. Kia Motors Am., Inc.*, 663 F. Supp. 2d 586, 598 (N.D. Ohio 2009). But, as the Court has also already noted, a fiduciary duty can arise where an agreement effectively grants one party "the authority to exercise near life and death economic power" over the other party. (Doc. No. 13 at PageID# 342 (quoting *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 215 (S.D.N.Y. 2007)).) The EDA imposed many restrictions and obligations on Southwest, including maintaining adequate service and warehouse facilities; prohibiting the sale of competing products

or products beyond its contracted territory; submitting market research information to Lokring; maintaining marketing policies and procedures meeting Lokring's standards; and providing Lokring with copies of its financial statements. (Doc. No. 13 at PageID# 344.) Given these restrictions, and others enumerated in the EDA, the Court held that these pleaded restrictions were sufficient to allege a claim for breach of fiduciary duty. (Doc. No. 13 at PageID# 344-345.)

The Court's analysis remains unchanged. Lokring's Motion to Dismiss Count Two is **DENIED**.

### 3. Beach of Covenant of Good Faith and Fair Dealing – Count 3

Plaintiffs allege that Lokring terminated the EDA in violation of the implied covenant of good faith and fair dealing. (Doc. No. 41 at ¶ 69.) Acknowledging there is a duty of good faith and fair dealing inherent in the EDA, Lokring argues that there is no freestanding cause of action for breach of the covenant of good faith and fair dealing under Ohio law. (Doc. No. 54 at PageID# 737.) Rather, the claim is subsumed in a breach of contract claim. (*Id*.) Plaintiffs agree that the breach of covenant of good faith and fair dealing is a contractual claim, but they argue that Lokring ignores that the liberal standard regarding amending complaints under Rule 15 permits them to add this claim as a new theory of recovery. (Doc. No. 55 at PageID# 850-851.) The Court concludes that there is no stand-alone claim for breach of the implied covenant of good faith and fair dealing and therefore dismissal is warranted.

"Ohio law does not recognize breach of the implied covenant of good faith and fair dealing as an independent cause of action apart from a valid breach of contract claim." *Kendell v. Phoenix Home Health Care Servs., Ltd*, 720 F. App'x 249, 254 (6th Cir. 2017). Courts have routinely held that a breach of contract claim "subsumes" one for breach of the duty of good faith and fair dealing. *See, e.g., Younglove Const., LLC v. PSD Dev., LLC*, No. 3:08CV1447, 2010 WL 3515603, at *3

(N.D. Ohio Sept. 3, 2010) (internal citation omitted).  Plaintiffs cannot lawfully pursue an independent cause of action for breach of covenant of the good faith and fair dealing under Ohio law.  To the extent Plaintiffs allege that Lokring breached the implied covenant of good faith and fair dealing, that claim must be argued under Plaintiffs' remaining breach of contract claim.  Lokring's Motion to Dismiss Count Three is **GRANTED**.

    4.    **Unjust Enrichment – Count Four**

Plaintiffs allege, as they did in their previous complaint, that Lokring was unjustly enriched because the EDA created a new distributorship in the southwest without Lokring having to expend resources to finance the new distributorship and by Lokring's refusal to compensate Southwest for the defective tooling Southwest purchased.  (Doc. No. 54 at ¶¶ 73-74.)  Plaintiffs now specifically allege an additional unjust enrichment theory: that the EDA is an illusory contract – and therefore void – because it does not impose any performance obligations on Lokring.  (*Id.* at ¶ 72.)

Lokring argues that the Court already dismissed this claim.  (Doc. No. 54 at PageID# 737-738.)  Including an illusory contract allegation does not result in a plausible unjust enrichment claim.  (*Id.* at PageID# 738.)  Lokring also argues that the allegation that Lokring had no obligations to perform under the EDA grossly mischaracterizes the EDA.  (*Id.*)  As a final point, Lokring argues that Ohio law prohibits recovery under an unjust enrichment theory where an express contract covers the same subject.  (*Id.*)

For their response, Plaintiffs assert that the contract placed only requirements upon Lokring, thereby creating a unilateral relationship.  (Doc. No. 55 at PageID# 852.)  Because the contract may be illusory, Plaintiffs assert that "there is a very real possibility the Court could determine that the EDA is void for lack of mutuality of obligation," and therefore they are

permitted to plead an unjust enrichment theory under the election of remedies.  (*Id.* at PageID# 853-854.)

A claim for unjust enrichment arises when a party retains money or benefits that, in justice and equity, belongs to another.  *Alshaibani v. Litton Loan Servicing, LP*, 528 F. App'x 462, 465 (6th Cir. 2013) (citing *Liberty Mut. Ins. Co. v. Indus. Comm'n of Ohio*, 40 Ohio St.3d 109, 532 N.E.2d 124, 125 (1988)).  "To recover under an unjust enrichment theory in Ohio, three elements are required: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment')."  *In re Congrove*, 222 F. App'x 450, 458 (6th Cir. 2007) (citing *Hambleton v. R.G. Barry Corp.,* 12 Ohio St.3d 179, 465 N.E.2d 1298, 1302 (1984)) (internal quotation omitted).

Ohio law prohibits recovery under an unjust enrichment theory where an express contract covers the same subject.  *See, e.g., Randolph v. New England Mut. Life Ins. Co.*, 526 F.2d 1383, 1387 (6th Cir. 1975); *R.J. Wildner Contracting Co., Inc. v. Ohio Turnpike Comm'n*, 913 F. Supp. 1031, 1043 (N.D. Ohio 1996).  Parties are permitted to alternatively plead unjust enrichment when the existence of the contract may be in dispute.  *See, e.g., Best Process Sols., Inc. v. Blue Phoenix Inashco USA, Inc.*, No. 1:21CV662, 2021 WL 5015487, at *13 (N.D. Ohio Oct. 28, 2021) (citing *Right-Now Recycling, Inc. v. Ford Motor Credit Co.*, No. 1:11-cv-364, 2015 WL 1197671, at *31 (S.D. Ohio March 16, 2015).  However, if the contract's existence is not in dispute, courts routinely dismiss unjust enrichment claims as precluded by the contract.  *See, e.g., Younglove Const., LLC v. PSD Dev., LLC*, No. 3:08CV1447, 2010 WL 3515603, at *2 (N.D. Ohio Sept. 3, 2010) (dismissing unjust enrichment claim where contract was valid and enforceable); *Hastings Mut. Ins. Co. v. Mengel Dairy Farms, LLC*, 461 F. Supp. 3d 655, 666 (N.D. Ohio 2020), *aff'd sub nom.*

*Hastings Mutual Insurance Company, Plaintiff-Appellee, v. Mengel Dairy Farms, LLC, Defendant-Appellant.*, No. 20-4090, 2021 WL 3021919 (6th Cir. July 16, 2021) ("Because the parties' dispute is governed by the contract, [defendant's] unjust enrichment claim fails as a matter of law.").

Under Ohio law, a contract is illusory "only when by its terms the promisor retains an unlimited right to determine the nature or extent of his performance." *Source Assocs., Inc. v. Valero Energy Corp.*, 273 F. App'x 425, 428 (6th Cir. 2008) (citing *Century 21 Am. Landmark, Inc. v. McIntyre*, 427 N.E.2d 534, 536-537 (Ohio Ct. App. 1st Dist. 1980)).  Much like they did in their initial motion to dismiss briefing, Plaintiffs again attempt to argue the EDA is illusory because it imposes no performance obligations on Lokring, except to provide Southwest with marketing materials, and allows Lokring to determine whether to perform in many other circumstances. (Doc. No. 55 at PageID# 852-854.)[2]  In its prior opinion, the Court found that Plaintiffs' argument that the contract was illusory failed because the contract appears, in fact, to impose mandatory performance obligations on Lokring.  (*See* Doc. No. 13 at PageID# 348.)  The Court also found that Plaintiffs failed to allege facts sufficiently disputing the EDA's validity.  (*Id.* at PageID# 349.) Despite having an opportunity to do so, Plaintiffs' one new allegation – which merely states that the EDA is illusory – has not cured this failure.

For those reasons, Lokring's Motion to Dismiss Count Four is **GRANTED**.

 5. **Promissory Estoppel – Count Five**

Plaintiffs allege that Lennon represented that Southwest's future with Lokring was "solid" on two separate occasions.  (Doc. No. 41 ¶¶ 28-29, 77-80.)  They also allege that Brad Shepard

---

[2] Plaintiffs did not plead an illusory contract theory in support of their unjust enrichment claim in the First Amended Complaint.  Instead, they argued it in response to Lokring's motion to dismiss.

detrimentally relied on these statements. (*Id*.) This, they argue, is sufficient to support a promissory estoppel claim. (Doc. No. 55 at PageID# 854-855.) Lokring argues that this is not a clear and unambiguous promise. (Doc. No. 54 at PageID# 739-740.) Not surprisingly, Plaintiffs argue that it is and that they are entitled to plead this count as an alternative theory of recovery. (Doc. No. 55 at PageID# 854-855.)

To state a claim for promissory estoppel, a party must allege (a) a clear and unambiguous promise; (b) reliance on the promise; (c) the reliance is reasonable and foreseeable; and (d) the party relying on the promise was injured by his or her reliance. *Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 374 (6th Cir. 2009). A promise is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Id.* (internal citation and quotation omitted). Promissory estoppel is not an available remedy where the legal relationship between the parties is governed by a valid and enforceable contract. *Blessing v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 244 F. App'x 614, 622 (6th Cir. 2007); *see also Keating v. Am.'s Wholesale Lender*, No. 1:11 CV 593, 2011 WL 2471732, at *4 (N.D. Ohio June 21, 2011).

As previously discussed, the EDA is a valid and enforceable contract. Any allegation that Plaintiffs relied upon Lennon's statement after the existence of the EDA, including the text message in 2020, cannot be the basis for a promissory estoppel claim. *See, e.g., Keating v. Am.'s Wholesale Lender*, No. 1:11 CV 593, 2011 WL 2471732, at *4 (N.D. Ohio June 21, 2011) (dismissing promissory estoppel claim where plaintiff alleged defendant's statement misled him because a valid contract between the parties existed).

As for Plaintiffs' assertion that Brad Shepard relied on Lennon's initial "solid" affirmation when deciding to enter into the EDA, (Doc. No. 55 at PageID# 854-855), a promise for purposes of promissory estoppel cannot be conditional.  *See, e.g., Faurecia Auto. Seating, Inc. v. Toledo Tool & Die Co.*, 579 F. Supp. 2d 967, 973 (N.D. Ohio 2008).  By their allegations, Lennon conditioned his so-called promise on the performance of the distributorship, rendering the promise unclear and ambiguous.  *Andersons, Inc. v. Consol, Inc.*, 185 F. Supp. 2d 833, 840 (N.D. Ohio 2001) (finding that "[t]o be 'clear and unambiguous,' the promise cannot be conditional").

Moreover, promissory estoppel "does not apply to oral statements made prior to the written contract, where the contract covers the same subject matter."  *Goodyear Tire & Rubber Co., Inc. v. Daimler Trucks N. Am., LLC*, No. 5:16CV1959, 2017 WL 4077175, at *3 (N.D. Ohio Sept. 14, 2017).  The EDA clearly included a provision allowing Lokring to terminate the agreement without cause.  (Doc. No. 41-4 at PageID# 676.)  The EDA also included a provision stating that it was "the entire Agreement and understanding of the parties relating to the subject matter hereof and *supersedes all prior discussions* and negotiations." (*Id.* at PageID# 678-679 (emphasis added).) Accordingly, a claim for promissory estoppel that contends Lokring promised terms beyond the EDA is not recognized by law.

Lokring's Motion to Dismiss Count Five is **GRANTED.**

### III. Conclusion

For the foregoing reasons, Lokring's Motion to Dismiss Plaintiffs' Second Amended Complaint is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, Lokring's Motion to Dismiss is **GRANTED** with respect to Counts Three, Four, and Five of Plaintiffs' Second Amended Complaint and **DENIED** with respect to Counts One and Two of Plaintiffs' Second Amended Complaint.

**IT IS SO ORDERED.**

Date: June 30, 2022

_____
BRIDGET M. BRENNAN
UNITED STATES DISTRICT JUDGE