UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHEPARD AND ASSOCIATES, INC., *et al.*, | ) ) ) | CASE NO.  1:20-cv-02488 |
| Plaintiff, | ) ) | |
| v. | ) ) | JUDGE BRIDGET M. BRENNAN |
| LOKRING TECHNOLOGY, LLC, | ) ) | |
| Defendants/Third-Party Plaintiff, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) ) | |
| TUBE-MAC INDUSTRIES, INC., | ) ) | |
| Third-Party Defendant. | ) | |

Before the Court is Third-Party Defendant Tube-Mac Industries, Inc.'s ("Tube-Mac")
Motion to Dismiss.  (Doc. No. 71.)  Third-Party Plaintiff Lokring Technology, LLC ("Lokring")
filed an opposition on September 28, 2021 (Doc. No. 100), and Tube-Mac replied on October 7,
2021 (Doc. No. 106).  For the reasons discussed herein, Tube-Mac's Motion to Dismiss is
**GRANTED** in part and **DENIED** in part.

I.    **Background**

    A.    **Factual Allegations**

    Third-Party Plaintiff Lokring designs, produces, and sells fluid and gas transfer connectors
in Willoughby, Ohio.  (Third-Party Compl., Doc. No. 61 at ¶ 23.)  Third-Party Defendant Tube-
Mac is a Pennsylvania company and Lokring's direct competitor.  (*Id.* at ¶¶ 6, 96.)  Lokring's
products are protected through patents in the United States and internationally.  (*Id.* at ¶ 24.)

Lokring also maintains confidential and trade secret information with respect to its business which, together with its patents, give Lokring a competitive advantage in the marketplace.  (*Id.* at ¶¶ 25-26.)  Lokring takes reasonable steps to protect this information and spends large amounts of time and resources to maintain its competitive advantage.  (*Id.* at ¶¶ 25, 27.)

As part of its business model, Lokring utilizes independent contractors, also referred to as distributors, to sell its products in specified territories.  (*Id.* at ¶ 29.)  Accordingly, when Lokring customers inquire about specific products, Lokring sends the request to the distributor operating in the designated territory where the customer resides.  (*Id.* at ¶ 30.)  As a result, distributors receive new contacts and commissions through Lokring's referral process. (*Id.*)

One such distributor was Shepard & Associates, also known as Lokring Southwest ("Southwest").  In early 2016, Joe Shepard indicated a desire to sell Southwest to his son, Brad Shepard.  (*Id.* at ¶¶ 39, 70.)  Accordingly, on April 25, 2016, Southwest and Brad Shepard ("Plaintiffs") entered into a written Amended and Restated Lokring Exclusive Distributor Agreement ("EDA") to act as Lokring's exclusive distributor in the southwest region of the United States. (*Id.* at ¶¶ 15, 71-72.)  Pursuant to the EDA, Lokring protected Plaintiffs' geographic territory and ensured that Plaintiffs' territory afforded Plaintiffs an opportunity to grow their business.  (*Id.* at ¶ 33.)  Further, as an exclusive distributor, Plaintiffs were only authorized to sell Lokring's products.  (*Id.* at ¶ 34.)

The EDA contained a Distributor Confidentiality and Non-Competition Agreement ("NDA") and a Distributor Employee Confidentiality and Non-Competition Agreement ("ENDA").  (*Id.* at ¶ 17.)  Plaintiffs agreed to and executed the confidentiality agreements. (*Id.* at ¶ 18.)  The EDA specifically required Plaintiffs to comply with the terms of the NDA and to execute the ENDA with future employees.  (*Id.* at ¶¶ 17, 37-38.)  The obligations set forth in the

NDA survived the termination of the EDA, meaning the requirements of confidentiality and non-competition continued even if a party terminated the distributor relationship.  (*Id.* at ¶18.)  Both contracts contain the following passage regarding confidentiality:

> [Plaintiffs] hereby undertake[] and agree[]:
>
> (c) not to disclose the Information to any third party except as provided in paragraph 1(b) above or as may be expressly authorized in writing by Lokring.  All employees and third parties to whom the [Distributor and Shepard] discloses Information as permitted under this Agreement shall: (i) have a need to know the Information; (ii) be bound to the Recipient by written confidentiality agreements or otherwise to maintain the Information in confidence on terms at least as restrictive as this Agreement; and (iii) be informed of the confidential nature of the Information to be disclosed to them and their obligations with respect to its use and disclosure.

(NDA, Doc. No. 9-1 at PageID# 282; ENDA, Doc. No. 9-3 at PageID# 296.)  The contracts define "Information" to include:

> all technical and non-technical information disclosed to the Recipient by or on behalf of [Southwest or] Lokring, including but not limited to, trade secrets, customer lists, patents and patent applications, mask works, integrated circuit topographies, industrial designs, copyrights, inventions, ideas, processes, formulas, source and object codes, data, programs, works of authorship, know-how, improvements, discoveries, developments, designs, facility lay-out and equipment, materials, recipes of manufacture, techniques, and test results

(Doc. No. 9-1 at PageID# 283; Doc. No. 9-3 at PageID# 297.)  The contracts also establish that the recipient was not to "solicit, encourage, or induce any . . . client/customer [or] prospective client/customer . . . to terminate its/his relationship with Lokring (in whole or in part)" or "otherwise interfere with the business of Lokring.  (Doc. No. 9-1 at PageID# 285; Doc. No. 9-3 at PageID# 298-299.)

Thus, Lokring restricted Plaintiffs and their employees from competing with Lokring or misappropriating its confidential information during and for a period of time following the termination of their relationship with Lokring.  (Doc. No. 61 at ¶ 34.)

On February 24, 2019, Plaintiffs hired Jared Guidry ("Guidry") as a Southwest employee. (*Id.* at ¶ 19.)  Guidry began working with Southwest on March 1, 2019.  (*Id.* at ¶ 19.)  As a condition of his employment with Plaintiffs, Guidry signed the ENDA and agreed to be bound by the confidentiality and non-compete agreements contained therein.  (*Id.* at ¶ 21.)[1]  During his employment, Guidry impermissibly forwarded confidential information to his personal email account, including Lokring's customer information, pricing information, and customer requests – all trade secret information.  (*Id.* at ¶ 45.)

Lokring terminated Plaintiffs' distributorship on October 21, 2020.  (*Id*. ¶ 76.)  Plaintiffs then brought this action against Lokring relating to the termination of the distributorship.  (*See* Doc No. 1.)  After Plaintiffs brought this suit, Lokring learned that Plaintiffs and Guidry were in violation of the EDA, NDA, and ENDA because they maintained Lokring's customer lists, pricing information, and supply information.  (Doc. No. 61 at ¶¶ 92-94.)  Following the termination of the distributorship, Guidry took a job with Tube-Mac.  (*Id.* at ¶ 96.)  This violated Guidry's ENDA. (*Id*.)  Lokring states that Plaintiffs and Guidry have used proprietary and confidential information to steer Lokring customers to Tube-Mac.  (*Id.* at ¶¶ 108-109.)  They have also encouraged Lokring customers to instead purchase Tube-Mac products. (*Id*.)

Lokring also alleges that Tube-Mac utilized Lokring's trade secrets to solicit business from Dow Chemical Company, a Lokring customer.  (*Id.* at ¶ 110.)  Tube-Mac, through its employee Guidry, contacted a specific individual at Dow utilizing trade secret information to obtain Dow's business for Tube-Mac.  (*Id.* at ¶¶ 110-113.)  Tube-Mac additionally sought to market its competing product "Pyplok" to TPC Group by misrepresenting Lokring's existing products and

---

[1] Lokring alleges that Guidry signed a copy of the ENDA, which has been disputed throughout proceedings.  In reviewing a motion to dismiss, the allegations in the complaint are accepted as true.  *See, e.g., Buddenberg v. Weisdack*, 939 F.3d 732, 738 (6th Cir. 2019).

their availability.  (*Id.* at ¶¶ 116-119.)  Lokring asserts that Tube-Mac, Plaintiffs, and Guidry are generally soliciting Lokring's customers and business by misrepresenting Lokring's products and their availability in an ongoing effort to interfere with its business operations.  (*Id.* at ¶¶ 129-130.)

Moreover, Lokring states that Plaintiffs, Guidry, and Tube-Mac conspired together to delay Lokring's ability to recover its products during the freeze in Texas in February 2021.  (*Id.* at ¶ 122.)  Lokring asserts that Plaintiffs and Guidry knew that withholding inventory causes disruption in the supply chain so they purposefully advised Lokring customers that Lokring's products were not available in an effort to refer customers to Tube-Mac. (*Id.* at ¶¶ 128.)

Lokring's Complaint alleges misappropriation of trade secrets in violation of state and federal law, as well as related state causes of action stemming, in whole or in part, from the alleged misappropriation of its confidential information.  (*See* Doc. No. 61.)

### B.  Procedural History

On November 3, 2020, Plaintiffs filed a Complaint in this Court against Lokring.  (Doc. No. 1.)  Shortly thereafter, on November 12, 2020, Plaintiffs filed an Amended Complaint, setting forth the following causes of action: (1) breach of contract, (2) breach of fiduciary duty, (3) unjust enrichment, (4) tortious interference with contract, and (5) equitable estoppel.  (Doc. No. 5.)  The Court granted in part and denied in part Lokring's Motion to Dismiss the Amended Complaint. (Doc. No. 13.)

On March 25, 2021, Lokring filed an answer to the Amended Complaint as well as Counterclaims against Plaintiffs.  (Doc. No. 17.)  On June 1, 2021, Plaintiffs filed their Second Amended Complaint.  (Doc. No. 41.)  Thereafter, Lokring filed its Motion to Dismiss the Second Amended Complaint on June 14, 2021.  (Doc. No. 54.)  Lokring then filed its Amended Counterclaims against Plaintiffs in addition to a Third-Party Complaint against Guidry and Tube-

Mac.  (Doc. No. 61.)  Plaintiffs answered the Amended Counterclaim.  (Doc. No. 62.)  Tube-Mac filed a Motion to Dismiss (Doc. No. 71) to which Lokring opposed (Doc. No. 100) and Tube-Mac filed a reply in support (Doc. No. 106).

On October 14, 2021, the Court began multi-day preliminary injunction hearing.  (*See* Doc. No. 117.)  The preliminary injunction hearing was a significant event in this case but is not relevant for purposes of this Order because it predates the Motion to Dismiss the Third-Party Complaint briefing, and Tube-Mac was not a party to the preliminary injunction hearing.

## II.  Analysis

### A.  Legal Standard

When addressing a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017) (setting forth the standard of review for a motion to dismiss); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The sufficiency of the complaint is tested against the notice pleading requirement that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).  Although this standard is a liberal one, a complaint must still provide the defendant with "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," to state a plausible claim.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Facial plausibility means that the complaint contains "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

*Twombly*, 550 U.S. at 556).  Such plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"  *Id.*  "'[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  In such a case, the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [and the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 678.

A complaint need not set down in detail all the particulars of a plaintiff's claim.  However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678 (This standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  "Bare assertions," basic recitations of the elements of the cause of action, or "conclusory" allegations are not entitled to the assumption of truth and, without more, do not satisfy the Rule 8 notice standard.  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at 555).

### B.    Discussion

#### 1.    Misappropriation of Trade Secrets

Lokring alleges Tube-Mac misappropriated its trade secrets in violation of the Ohio Uniform Trade Secrets Act ("OUTSA"), Ohio Rev. Code §§ 1333.61, *et seq.*, as well as the Defense of Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836, *et seq.*  State causes of action stemming, in whole or in part, from the alleged misappropriation of Lokring's confidential information, including tortious interference with business relationship, tortious interference with

a contract, civil conspiracy, unfair competition, and unjust enrichment, are also alleged.[2]  (*See* Doc. No. 61.)

Tube-Mac moves to dismiss Lokring's misappropriation of trade secrets claims for two reasons.  First, it argues Lokring failed to allege requisite facts in support of its misappropriation of trade secret claims, namely that the confidential information was a "trade secret" or that Lokring took reasonable steps to protect such information.  (Doc. No. 71 at PageID# 987-988.)  As its second stated reason, Tube-Mac argues that Lokring did not allege that Tube-Mac acquired trade secret information through improper means. (*Id.* at PageID# 989.)  Tube-Mac also asserts that the OUTSA preemption provision bars Lokring's claims for tortious interference with contracts and business relationships, civil conspiracy, unfair competition, and unjust enrichment because these claims are "entirely based on Tube-Mac's alleged use . . . of Lokring trade secret information." (*Id.*)

Lokring's defense of its misappropriation of trade secret claims relies heavily on its allegations that Guidry, with Tube-Mac's knowledge and consent, contacted two of Lokring's clients – Dow and TPC Group – in order to solicit their business for Tube-Mac. (Doc. No. 100 at PageID# 1504, 1506-07.)  The express terms of the EDA, NDA, and ENDA evidence that Lokring sought to protect the very information Tube-Mac utilized in its effort to compete.  (*Id.* at PageID# 1509-1510.)

Responding to the preemption argument, Lokring contends that independent factual allegations support the state law claims and, even if they do not, alternatively pleaded claims

---

[2] Lokring also pleads an unfair competition claim in violation of federal law, which is discussed below.

should not be dismissed where factual support for those claims may be developed in discovery. (*Id.* at PageID# 1494.)

To state a misappropriation of trade secret claim, a party must allege: "(1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret." *Handel's Enters., Inc. v. Schulenburg*, 765 F. App'x 117, 122 (6th Cir. 2019).[3]

The OUTSA preempts "conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret." Ohio Rev. Code § 1333.67; *see also Stolle Mach. Co. v. RAM Precision Indus.*, 605 F. App'x 473, 484 (6th Cir. 2015); *Allied Erecting and Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, 649 F. Supp. 2d 702, 720-722 (N.D. Ohio 2009) (noting that "courts have generally found that the [Uniform Trade Secret Act] preempts 'all alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade-secret status'") (quoting *Hauck Mfg. Co. v. Astec Indus., Inc.,* 375 F. Supp. 2d 649, 655 (E.D. Tenn. 2004)). This preemption extends to all claims based on misappropriation of information regardless of whether the information ultimately rises to the level of a "trade secret." *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 940 (S.D. Ohio 2012); *see also Stolle*, 605 F. App'x at 484 (finding Ohio courts construe the OUTSA to preempt causes of actions based on allegations of confidential information, even if that information is ultimately not deemed a trade secret).

---

[3] The definition of a trade secret and requirements for establishing misappropriation of trade secrets are substantially the same under the DTSA and the OUTSA. *See, e.g., Corp. Lodging Consultants, Inc. v. Szafarski*, No. 1:21-CV-1611, 2021 WL 3709914, at *5 (N.D. Ohio Aug. 20, 2021); *Just Funky, LLC v. Boom Trendz*, 2021 WL 2635377, at *6 (N.D. Ohio June 25, 2021).

As a result, the threshold question is whether the alternatively pleaded common law claims "are solely dependent on the same operative facts" as the OUSTA claim. *Stolle*, 605 F. App'x at 484-485.  If the answer is yes, the claims are preempted.  If the common law claims are premised on an "independent factual basis" separate from the misappropriation of trade secret allegations, then that portion of the claim is not preempted. *Id.* at 485; *see also Office Depot, Inc. v. Impact Office Prods., LLC*, 821 F. Supp. 2d 912, 921 (N.D. Ohio 2011) (quoting *Allied Erecting*, 649 F. Supp. 2d at 723-724).

Courts have rejected arguments that parties may alternatively plead state law claims based upon trade secret allegations when the parties have alleged a violation of the OUTSA. *See, e.g., Murray Energy Holdings Co. v. Bloomberg, L.P.*, No. 2:15-CV-2845, 2016 WL 3355456, at *11 (S.D. Ohio June 17, 2016) (dismissing common law claims because "[i]t would be incongruent to hold these [common] law claims are preempted [by the OUTSA] yet allow them to be pleaded in the alternative"); *Miami Valley*, 852 F. Supp. 2d at 941 (S.D. Ohio 2012) (dismissing with prejudice state law conversion claim based entirely on the alleged misappropriation of trade secrets due to wrongful taking of business contacts).

When considering a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 897 (6th Cir. 2019).  Lokring has sufficiently alleged the confidential information protected by the EDA, including its contact list, pricing list, and supply methods, are trade secrets.  (Doc. No. 61 at ¶¶ 41, 201-217.)  Courts regularly hold such information can constitute trade secrets. *See, e.g., Champion Food Serv., LLC v. Vista Food Exch.*, No. 1:13-CV-01195, 2013 WL 4046449, at *2 (N.D. Ohio Aug. 7, 2013) (plaintiff sufficiently pleaded trade secret claim where complaint alleged that "pricing lists, labor costs, packing costs,

product costs, business markups, shipping costs, marketing costs, customer lists, active quotes, and business correspondence" were confidential trade secrets); *Rotex Glob., LLC v. CPI Wirecloth & Screens, Inc.*, No. 1:16-CV-244, 2016 WL 776886, at *6 (S.D. Ohio Feb. 29, 2016) (finding plaintiff sufficiently alleged trade secret violation where the complaint stated defendant received customer lists improperly); *Corp. Lodging Consultants, Inc. v. Szafarski*, No. 1:21-CV-1611, 2021 WL 3709914, at *7 (N.D. Ohio Aug. 20, 2021) (finding "customer lists, pricing information, sales and marketing strategies, and other business information" can constitute trade secrets under the OUTSA"); *Avery Dennison Corp. v. Kitsonas*, 118 F. Supp. 2d 848, 854 (S.D. Ohio 2000) (same).

Lokring also alleges that it took reasonable steps to protect this confidential and trade secret information by requiring anyone with access to the information to sign a non-disclosure agreement. (Doc. No. 61 at ¶¶ 25, 41.)  Further, whether this information is, in fact, a trade secret is generally "a question of fact to be determined by the trier of fact upon the greater weight of the evidence." *Hoover Transp. Servs., Inc. v. Frye*, 77 F. App'x 776, 782 (6th Cir. 2003).  Accordingly, Lokring pleaded the first element of the offense – the existence of a trade secret – sufficient to withstand a motion to dismiss.

As for the final element of this offense, Lokring alleged that Tube-Mac improperly obtained and used Lokring's trade secret information knowing that doing so was in violation of the EDA, NDA, and ENDA.  (Doc. No. 61 at ¶¶ 92-94, 112, 114-115.)  Courts have found that a party can obtain confidential information improperly when that party knows that another obtained the information through unlawful means.  *See, e.g., Keller N. Am., Inc v. Earl*, No. 1:20-CV-2401, 2021 WL 3737915, at *9 (N.D. Ohio Aug. 24, 2021) (finding "offenders may be liable if they knew the information was acquired by improper means and yet they used that information or used that information without the owner's consent").  Here, Guidry obtained the customer list and

continued using it for Tube-Mac in violation of his contractual obligations under the EDA, NDA, and ENDA.  (Doc. No. 61 at ¶¶ 120, 144.)  Lokring pleads that Tube-Mac was aware that Guidry and Plaintiffs were bound by the non-disclosure agreements, yet Tube-Mac used the information regardless.  (*Id.* at ¶¶ 108, 114-115.)  These are sufficient allegations that Tube-Mac improperly obtained confidential information.

At this stage, Lokring is not required to prove its case, but rather to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Lokring fulfills this requirement by identifying specific information it claims to constitute a trade secret, namely its customer list, pricing information, and supply methods, and that Tube-Mac misappropriated such information for use in efforts to solicit business with Dow and TPC.  Accordingly, the Motion to Dismiss Counts Seven and Eight is **DENIED**.

### 2.    Tortious Interference with Business Relationship

Lokring complains that "Tube-Mac knew that Lokring had existing business relationships with certain of the latter's customers" including Dow and TPC, and that Tube-Mac, together with Plaintiffs and Guidry, conspired to and did intentionally interfere with said relationships.  (Doc. No. 61 at ¶¶ 113-119, 183-184.)  Tube-Mac has caused "a breach or termination of certain of Lokring's business relationships," which has and continues to damage Lokring.  (*Id.* at ¶¶ 186-187.)  In further support of this claim, Lokring offers that Plaintiffs and Guidry "attempted to and did steer Lokring customers," including Dow and TPC "based on the use of misappropriated Lokring Information."  (*Id.* at ¶¶ 108-119.)

Tube-Mac, Guidry, and Plaintiffs are also alleged to have intentionally delayed Lokring's recovery of its inventory during 2021 Texas freeze – when Lokring's inventory was sparse and its need to resell merchandise was acute.  (*Id.* at ¶ 122.)  During this period of delay, Plaintiffs and

Guidry advised Lokring customers that Lokring products were no longer available so that customers would purchase similar products from Tube-Mac. (*Id.* at ¶¶ 128-130.) As a sort of catch-all, Lokring states that "upon information and belief . . . Tube-Mac successfully stole other Lokring customers through their various unlawful and improper conduct." (Doc. No. 61 at ¶ 113.)

Tube-Mac argues that this claim does not allege any business relationship actually harmed by Tube-Mac. (Doc. No. 71 at PageID# 990-991.) Nor does it contain an allegation that Tube-Mac ever procured a customer that had previously done business with Lokring. (*Id.* at PageID# 991.) And, even if it did, the claim is preempted because the supporting allegations hinge on Lokring's misappropriation of trade secrets allegations. (*Id.* at PageID# 989.) For its part, Lokring responds that the Complaint clearly states that the interference was with its customers, including but not limited to Dow and TPC. (Doc. No. 100 at PageID# 1499-1500.) Thus, Tube-Mac's narrow focus on this Dow allegation ignores other Complaint allegations. (*Id.* at PageID# 1499.) As a final point, Lokring states that discovery will reveal the extent to which Tube-Mac interfered with Lokring's business relationships. (*Id.* at PageID# 1500.)[4] Lokring does not address the preemption argument head-on.

To succeed on a tortious interference with a business relationship claim, the Complaint must allege: (a) a business relationship, (b) the wrongdoer's knowledge thereof, (c) an intentional interference causing a breach or termination of the relationship, and (d) damages resulting therefrom. *Hines v. Langhenry*, 462 F. App'x 500, 501-502 (6th Cir. 2011) (citation omitted).

---

[4] A plaintiff is not entitled to conduct discovery and gather facts necessary to cure defects in a pleading. *See, e.g.*, *Patterson v. Novartis Pharms. Corp.*, 451 F. App'x 495, 498 (6th Cir. 2011) ("The Supreme Court's decisions in *Twombly* and *Iqbal* do not permit a plaintiff to proceed past the pleading stage and take discovery in order to cure a defect in a complaint.") Lokring's allegations that discovery will reveal sufficient details to support insufficiently pleaded claims is not well-taken.

Lokring's tortious interference with a business relationship allegation is based upon Tube-Mac and Guidry's use of Lokring's confidential information, including customer lists, pricing information, and supply knowledge – all information Lokring separately alleges are trade secrets. (Doc. No. 61 at ¶¶ 41, 201-218.)  When the factual allegations are substantially similar, claims of tortious interference with business relationship are preempted by the OUTSA.  *Stolle*, 605 F. App'x at 485.  In *Stolle*, the Sixth Circuit found that Stolle alleged in its complaint that defendants solicited Stolle's customers and represented their abilities to sell a competing product.  *Id.*  The Sixth Circuit affirmed the district court's dismissal of the claim, finding "the core of Stolle's tortious interference claim—and the only part of it that is truly in dispute—is that defendants' solicitation of customers lacked justification, and the question of whether defendants lacked justification hinges on whether they were using 'wrongful means.'"  *Id.*  Whether the defendants in *Stolle* used "wrongful means" depended upon whether defendants used Stolle's trade secret information – customers list and technical information – without consent.  *Id.*  Accordingly, the Sixth Circuit found the claim to "essentially restate[] the operative facts of its claim for trade secret misappropriation under [the] OUTSA," and therefore was preempted.  *Id.*  The same is true here.

The facts supporting Lokring's tortious interference claim as it pertains to Dow and TPC Group, as well as Tube-Mac's use of Lokring's customer list, pricing data, and supply information to solicit business, are identical to its misappropriation of trade secret claim.  This claim is preempted.  *See, e.g., Murray Energy Holdings Co. v. Bloomberg, L.P.*, No. 2:15-CV-2845, 2016 WL 3355456, at *11-12 (S.D. Ohio June 17, 2016) (dismissing tortious interference claim as preempted by misappropriation of trade secrets claim).

Alternatively, Tube-Mac argues that any independent tortious interference claim still fails because the Complaint does not allege a specific business relationship that was targeted or

terminated. Tube-Mac's argument is well-taken. As stated above, the Complaint must identify a specific business that was subject to the tortious interference. *Wilkey v. Hull*, 366 F. App'x 634, 638 (6th Cir. 2010). Lokring fails to identify any specific business that Tube-Mac's conduct was directed toward or any breach or termination as a result of the conduct. A vague assertion that a party interfered with certain but unspecified business relationships is insufficient to state a claim. *Id*. Accordingly, dismissal of a claim for tortious interference with business relationships is appropriate "[a]bsent some factual allegation that [the defendant's] actions ended or prevented a business relationship." *Id.*

Without more, the allegations relating to the 2021 Texas freeze, misrepresentations of Lokring's products, and the vague assertion that Tube-Mac is stealing Lokring's customers are devoid of any facts to support them and cannot be the basis for a tortious interference with a business relationship claim. *See, e.g., BCG Masonic Cleveland, LLC v. Live Nation Ent., Inc.*, No. 1:21-CV-00710, 2021 WL 5166483, at *4 (N.D. Ohio Nov. 5, 2021) (dismissing tortious interference claim based on conclusory allegations of interference without identifying any specific businesses that were interfered with); *Barrio Bros., LLC v. Revolucion, LLC*, No. 1:18-CV-02052, 2020 WL 3547014, at *7 (N.D. Ohio June 30, 2020) (dismissing tortious interference claim where party alleged intent to interfere and knowledge of business relationships but failed to plead that the actions ended or prevented a relationship); *Richardson v. CVS Caremark Corp.*, No. 1:18-CV-1308, 2018 WL 4189522, at *3 (N.D. Ohio Aug. 31, 2018) (granting motion to dismiss where "Plaintiffs allege[d] no specific instances in which patients ended or chose not to enter into a business relationship with Plaintiffs as a result of the statements and ma[de] only conclusory statements regarding damages").

The only businesses specifically identified were Dow and TPC.[5]  But, the alleged interference with those businesses relationships was solely based on Tube-Mac's unauthorized use of Lokring's trade secret information.

For the reasons stated herein, Tube-Mac's Motion to Dismiss Count Four is **GRANTED**.

### 3.    Tortious Interference with Contracts

Tube-Mac is also alleged to have tortiously interfered with certain contracts by misappropriating Lokring's "confidential and proprietary information" and intentionally enticing others to breach the EDA, ENDA, NDA, and customer contracts. (Doc. No. 61 at ¶¶ 189-191, 193.)

Tube-Mac argues that Lokring failed to identify a single contract Lokring lost or Tube-Mac gained as a result of this alleged conduct.  (Doc. No. 71 at PageID# 990-991.)  Again, Tube-Mac states that even if such a result occurred, Lokring's claim plainly is premised on the misappropriation of its trade secrets.  (*Id.* at PageID# 989.)  Hence, this claim is preempted.  To refute Tube-Mac's initial argument, Lokring relies on the fact that the confidentiality provisions in the EDA, ENDA, and NDA expressly survive the distributorship.  (Doc. No. 100 at PageID#

---

[5] It is worth noting that Lokring's Complaint does not allege that a business relationship was breached or terminated as a result of Tube-Mac's alleged contacts with Dow and TPC. Accordingly, even if the Court were to find that a tortious interference claim with respect to Dow or TPC was not based on the misappropriation of trade secrets, this claim would fail because neither relationship was alleged to be breached or terminated.  *See Wilkey*, 366 F. App'x at 638 (finding plaintiff failed to state a claim because complaint lacked "some factual allegation that [defendant's] actions ended . . . a business relationship"); *Action Grp. Int'l, LLC v. AboutGolf, Ltd.*, No. 3:10-CV-2132, 2011 WL 1627943, at *11 (N.D. Ohio Apr. 29, 2011) (finding plaintiff failed to allege tortious interference claim where plaintiff failed to state that defendant "induced or otherwise purposely caused customers and others not to enter into or continue business relations" with plaintiff).

1501.)  Thus, by contacting Lokring's customers, Tube-Mac is interfering with those contractual relationships.  (*Id.* at PageID# 1500-1501.)

Once again, the preemption doctrine applies.  Lokring's claim is wholly predicated on the misappropriation of its trade secrets.  A tortious interference with a contract claim is dismissed when the facts underlying the claim are a recitation of the misappropriation of trade secret claim. *Jannx Med. Sys., Inc. v. Agiliti, Inc.*, No. 1:20-CV-00687, 2020 WL 7398795, at *3-4 (N.D. Ohio Dec. 17, 2020).  And to the extent that Lokring relies on breaches of the EDA, NDA, and EDNA to support this claim, courts similarly dismiss tortious interference claims based on the violation of an agreement designed to protect trade secrets.  *See, e.g.*, *Allied Erecting*, 649 F. Supp. 2d at 722-723 (dismissing tortious interference claim where plaintiff alleged defendant kept proprietary documents he obtained while working for plaintiff in violation of his employment agreement). The Complaint states as much.  (Doc. No. 61 at ¶¶ 189-195.)

For the reasons stated above, Tube-Mac's Motion to Dismiss Count Five is **GRANTED**.

### 4.    Civil Conspiracy

Lokring alleges that "Plaintiffs, Guidry, and Tube-Mac unlawfully and maliciously combined their efforts and conspired for the purpose to injure Lokring" by engaging in the unlawful acts of "breach of contracts, spoliation, tortious interference, misappropriation of trade secrets, unfair competition and deceptive trade practices."  (Doc. No. 61 at ¶¶ 198-199.)

In its Motion to Dismiss, Tube-Mac argues that Lokring did not plead any facts to show there was an unlawful act independent from the alleged conspiracy, nor did it plead any facts to show an agreement between Tube-Mac and Plaintiffs or Guidry to cause harm to Lokring.  (Doc. No. 71 at PageID# 991-992.)  Tube-Mac also seeks dismissal of the civil conspiracy claim because

it is "entirely based on Tube-Mac's alleged use of . . . Lokring's trade secret information."  (*Id.* at PageID# 989.)

Although proof of a civil conspiracy requires proving additional facts beyond the unlawful act, a conspiracy claim that remains dependent upon the misappropriation of trade secrets is preempted by the OUTSA.  *Stolle*, 605 F. App'x at 486.  At minimum, Lokring's allegations that its conspiracy claim rests on misappropriation of trade secrets must be dismissed as plainly in violation of R.C. 1333.67(A).  (Doc. No. 61 at ¶ 199.)  *See, e.g., Murray Energy Holdings Co. v. Bloomberg, L.P.*, No. 2:15-CV-2845, 2016 WL 3355456, at *11-12 (S.D. Ohio June 17, 2016) (dismissing conspiracy claim where facts mirror misappropriation of trade secret allegations).

The remaining alleged unlawful acts also relate to Lokring's misappropriation of trade secrets claim.  As the Sixth Circuit held, a conspiracy claim is preempted by the OUTSA where it is predicated on an unlawful act that is itself preempted by the OUTSA.  *Stolle*, 604 F. App'x at 486 (dismissing "conspiracy claim predicated on the underlying wrongful act of tortious interference with Stolle's business relations that would itself be preempted" by the OUTSA). Lokring concedes in its Complaint that the violations of breach of contract rest on breaches by Plaintiffs and Guidry of the ENDA and NDA, which relate specifically to the misappropriation of trade secrets claim.  (*See* Doc. No. 61 at ¶¶ 96, 114-115, 133-134.)  Further, as previously discussed above, Lokring's tortious interference claims rest solely on allegations of Tube-Mac misappropriating Lokring's confidential customer lists and pricing information.  (*Id.* at ¶¶ 108-112.)  And Lokring's conspiracy claim cannot rest on unfair or deceptive trade practices when Lokring alleges "Plaintiffs, Guidry and Tube-Mac have conspired together to misappropriate Lokring's confidential and protected information and trade secrets in their concerted efforts to unfairly compete with Lokring."  (*Id.* at ¶ 121.)

For the reasons stated, Tube-Mac's Motion to Dismiss Count Six is **GRANTED**.[6]

### 5. Unfair Competition

Lokring pleads an Unfair Competition and Deceptive Trade Practices Act violation under 15 U.S.C. § 1125 and Ohio Rev. Code §§ 4165.01, *et seq*.  The Complaint alleges that Plaintiffs, Guidry, and Tube-Mac conspired to misappropriate Lokring's confidential and trade secret information to unfairly compete with Lokring and solicit its customers.  (Doc. 61 at ¶¶ 121, 129.)  Lokring also pleads that Guidry, Tube-Mac, and Plaintiffs have used the underlying lawsuit to unfairly compete with Lokring by withholding inventory, maliciously using court proceedings towards their benefit, creating a shortage of needed inventory, and misrepresenting Tube-Mac's product characteristics.  (*Id.* at ¶¶ 219-230.)

Tube-Mac argues that Lokring has not alleged that any relevant statements were made in commercial advertising or promotion.  (Doc. No. 71 at PageID# 989-990.)  It is also not alleged that Tube-Mac engaged in commercial speech "disseminated either widely enough to the relevant purchasing public to constitute promotion within that industry or to a ***substantial portion of the plaintiff's or defendant's existing customer or client base*.**"  (*Id.* at PageID# 990 (emphasis in original).)  Rather, the Complaint only contains statements attributable to communications with Dow and TPC.  (*Id.* at PageID# 990.)  These two client contacts are not sufficient to state a claim that any alleged commercial speech was widely distributed to the public or even Lokring's client base.  (*Id.*)  Additionally, Tube-Mac states that the Complaint is devoid of sufficient causation or

---

[6] Lokring also argues that spoliation supports its civil conspiracy claim.  (Doc. No. 61 at ¶ 199.)  Lokring offers no allegations that Tube-Mac was aware of or participated in the spoliation of evidence that is alleged in the complaint.  Accordingly, this cannot be a basis for Lokring's conspiracy claim against Tube-Mac.

damages allegations.  (*Id.*)  Alternatively, Tube-Mac asserts that this claim is preempted.  (*Id.* at PageID# 989.)

Lokring argues in response that Tube-Mac improperly suggests that Lokring has more than two customers.  (Doc. No. 100 at PageID# 1510.)  It then goes on to argue that the extent of customer contacts exceeds these two customers but remains unknown because of various efforts to obstruct this litigation and destroy evidence.  (Doc. No. 100 at PageID# 1511.)  Lokring does not provide any response to Tube-Mac's preemption argument.

While Lokring's argument is not particularly clear, the Court must resolve two questions. Does the Complaint state a cognizable claim for unfair competition and deceptive trade practices? And if so, is the claim preempted?

Section 43 of the Lanham Act permits a civil action against "[a]ny person, who on or in connection with any goods or services, . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities[ ] . . . of his or her or another person's goods, services, or commercial activities[.]"  15 U.S.C. § 1125(a)(1)(B).[7]

To succeed on a claim for false advertising, a plaintiff must establish that: (a) the defendant has made false or misleading statements of fact concerning his product or another's; (b) the statement actually or tends to deceive a substantial portion of the intended audience; (c) the statement is material in that it will likely influence the deceived consumer's purchasing decisions;

---

[7] Likewise, under the Ohio Deceptive Trade Practices Act ("ODTPA"), a civil action may be filed when "[a] person, . . . in the course of the person's business, vocation, or occupation, . . . [d]isparages the goods, services, or business of another by false representation of fact[.]"  Ohio Rev. Code § 4165.02(A)(10).  Courts "evaluate an Ohio deceptive trade practices claim under the same analysis as that used for Lanham Act claims."  *Papa Ads, LLC v. Gatehouse Media, Inc.*, 485 F. App'x. 53, 55 (6th Cir. 2012) (citing *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 920 (6th Cir. 2003)).  Accordingly, Lokring's unfair competition claims raise and fall together.

(d) the advertisements were introduced into interstate commerce; and (e) there is some causal link between the challenged statements and harm to the plaintiff.  *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 323 (6th Cir. 2001).  In addition to these elements, a plaintiff must also allege that the challenged statements were made "in commercial advertising or promotion."  *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 798 (6th Cir. 2015) (quoting 15 U.S.C. § 1125(a)(1)(B)).  The Sixth Circuit has defined "commercial advertising or promotion" as: "(1) commercial speech; (2) for the purpose of influencing customers to buy the defendant's goods or services; (3) that is disseminated either widely enough to the relevant purchasing public to constitute advertising or promotion within that industry or to a substantial portion of the plaintiff's or defendant's existing customer or client base."  *Id.* at 801.

While Lokring brings a claim for unfair competition based in statute as opposed to common law, the Ohio Revised Code makes clear that the OUTSA's preemption provision displaces "other laws of this state providing civil remedies for misappropriation of a trade secret."  Ohio Rev. Code § 1333.67(a).  Courts have dismissed unfair competition claims that are based on unlawful use of trade secrets.  *See, e.g., Glasstech, Inc. v. TGL Tempering Sys., Inc.*, 50 F. Supp. 2d 722, 732 (N.D. Ohio 1999) (citation omitted) (dismissing unfair competition claim that was "no more than a restatement of the same operative facts which would plainly and exclusively spell out only trade secret appropriation"); *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) (finding Uniform Trade Secret Act preempts state law unfair competition claim).  To the extent Lokring's claim for unfair competition under Ohio Rev. Code §§ 4165.01 is based on the misappropriation of the confidential information, the claim is preempted.

The Court finds that Lokring sufficiently alleged an unfair competition claim under state and federal law that is independent of its misappropriation of trade secrets allegations.  Lokring

has alleged that Tube-Mac contacted Lokring customers, made materially false and misleading statements to those customers that were likely to deceive those customers, and that Lokring was harmed by this conduct.  (Doc. No. 61 at ¶¶ 219-230.)  Although Lokring only identifies two such customers, the Court must construe all facts in Lokring's favor.  And since Lokring need only demonstrate that the contacts were to a "substantial portion" of its client base, even a single customer can satisfy this requirement if the market is small and discrete.  *Grubbs*, 807 F.3d at 801; *see also Hillman Grp., Inc. v. Minute Key Inc.*, No. 1:13-CV-00707, 2016 WL 3654437, at *15 (S.D. Ohio July 8, 2016).  Because Lokring has alleged Tube-Mac contacted members of its customer base, the determination of the size of these customers in the market is a question of fact to be determined at a later stage.

Tube-Mac's Motion to Dismiss Count Nine is **GRANTED** in part and **DENIED** in part.

### 6.    Unjust Enrichment

Lokring's unjust enrichment allegations are premised on "unlawful and wrongful acts" committed by Plaintiffs, Guidry, and Tube-Mac.  (Doc. No. 61 at ¶ 232.)  Tube-Mac asserts that the factual allegations do not state a claim because Lokring failed to allege that Tube-Mac realized any actual benefit as a result of such conduct.  (Doc. No. 71 at PageID# 992-993.)  Further, even if this claim was sufficiently pleaded, it is also preempted.  (*Id.* at PageID# 989.)  Lokring's response is simply this: Tube-Mac benefitted from Guidry's possession of Lokring's confidential information, including its customer, pricing and supply information.  (Doc. No. 100 at PageID# 1512.)  This claim is preempted.

Unjust enrichment is a "restitution-based remedy" that may be sought when a person "has and retains money or benefits which in justice and equity belong to another."  *Baatz v. Columbia Gas Transmission, LLC*, 295 F. Supp. 3d 776, 790 (N.D. Ohio 2018), *aff'd,* 929 F.3d 767 (6th Cir.

2019) (citation omitted).   When such a claim is based on trade secret allegations, they are preempted.  *See, e.g., Glasstech, Inc.*, 50 F. Supp. 2d at 731 (N.D. Ohio 1999) ("Likewise, this Court concludes that Plaintiff's claims for quasi-contract/quantum meruit and unjust enrichment are essentially restitutionary in nature and are displaced by § 1333.67(A), as they do not fall under any exception enumerated in § 1333.67(B)."); *Office Depot*, 821 F. Supp. 2d at 922 (N.D. Ohio 2011) (dismissing unjust enrichment claim based on misappropriation of trade secrets as preempted).

Tube-Mac's Motion to Dismiss Count Ten is **GRANTED**.

## III.    Conclusion

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendant Tube-Mac's Motion to Dismiss.  Specifically, Tube-Mac's Motion to Dismiss is **GRANTED** with respect to Counts Four, Five, Six, and Ten.  Tube-Mac's Motion to Dismiss is **GRANTED IN PART** with respect to Count Nine.  Tube-Mac's Motion to Dismiss is **DENIED** with respect to Counts Seven and Eight.


**IT IS SO ORDERED**.


Date: July 1, 2022

_____
BRIDGET M. BRENNAN
UNITED STATES DISTRICT JUDGE