UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHEPARD AND ASSOCIATES, INC., *et al.*, | ) ) ) | CASE NO.  1:20-cv-02488 |
| Plaintiff, | ) ) | |
| v. | ) ) | JUDGE BRIDGET MEEHAN BRENNAN |
| LOKRING TECHNOLOGY, LLC, | ) ) | |
| Defendant/Third-Party Plaintiff, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) ) | |
| TUBE-MAC INDUSTRIES, INC., | ) ) | |
| Third-Party Defendant. | ) | |

This Order addresses Lokring Technology, LLC's ("Lokring") remaining Counterclaims against Shepard and Associates, Inc. and its principal Brad Shepard (collectively, "Plaintiffs"). (Doc. No. 61.)[1]  Those Counterclaims were the subject of a motion for summary judgment filed by Lokring.  (Doc. No. 310.)  Plaintiffs responded in opposition to that motion (Doc. No. 334), and Lokring replied (Doc. No. 352).  Plaintiffs cross-moved for summary judgment on those Counterclaims.  (Doc. No. 307.)  Lokring responded in opposition (Doc. No. 336), and Plaintiffs replied (Doc. No. 339).

---

[1] The Court previously dismissed certain of Lokring's Counterclaims against Plaintiffs and claims against Tube-Mac.  (Doc. No. 261.)

1

This Order also addresses Plaintiffs' remaining claims against Lokring in the Second Amended Complaint.  (Doc. No. 41.)[2]  Lokring filed a motion for summary judgment on both of Plaintiffs' remaining claims.  (Doc. No. 306.)  Plaintiffs responded in opposition to that motion (Doc. No. 335), and Lokring replied (Doc. No. 338).

## I.  **Undisputed Facts**

The Court finds that the following facts were not genuinely disputed.  Facts to which the parties jointly stipulated (Doc. No. 362) are cited as "SOF."

Located in Willoughby, Ohio, Lokring designs, develops, manufactures, and markets mechanically attached fittings for connecting pipes and other transfer systems for fluids and gases.  (SOF ¶ 1.)  Lokring also manufactures and sells tools used to install Lokring's fittings.  (*Id.* ¶ 3.)

Lokring sells its products through independent, exclusive distributors in various geographic areas within the United States and worldwide.  (*Id.* ¶ 2.)  Lokring's distributors sell the fittings and tools to customers, many of which are large companies with facilities around the world.  (*Id.* ¶ 4.)  Distributors can also lease tools to customers.  (*Id.*)  Lokring's distributors did not sell any other products besides Lokring's.  (*Id.*)  Distributors sell Lockring's products to customers within their exclusive territories.  (*Id.* ¶ 11.)

In 2003, Joe Shepard became an exclusive distributor for the Southwest territory, including Texas, Oklahoma, Colorado, Kansas, Wyoming, and parts of Nebraska.  (*Id.* ¶ 5.)  He formed Shepard and Associates, Inc. to operate the distributorship.  (*Id.*)  Joe Shepard hired his son, Brad, as a Shepard and Associates salesperson in 2009 or 2010.  (*Id.* ¶ 6.)

---

[2] The Court previously dismissed Counts Three through Five of the Second Amended Complaint. (Doc. No. 259.)

On September 29, 2015, Lokring and Joe Shepard signed a distributor agreement, which took effect on July 1, 2016.  (*Id.* ¶ 7.)  In April 2016, Lokring, Shepard and Associates, Brad Shepard, and Joe Shepard entered into two agreements: the Lokring Amended and Restated Exclusive Distributor Agreement ("EDA") and a Confidentiality and Non-Competition Agreement ("NDA").  (*Id.* ¶ 8.)  The NDA is listed as Appendix G to the EDA.  (*Id.*)

Effective July 1, 2016, Joe Shepard was released from the Southwest EDA – leaving Shepard and Associates and Brad subject to the EDA and NDA.  (*See id.* ¶ 10.)

On January 25, 2019, Shepard and Associates hired Zach Maywald.  (*Id.* ¶ 13.)  In February 2019, Shepard and Associates hired Jared Guidry.  (*Id.* ¶ 14.)  Guidry signed an offer letter.  (*Id.*)  Lokring does not have an executed copy of any non-disclosure or non-compete agreement between Guidry and Shepard and Associates.  (*Id.*)  Nor does Lokring have an executed copy of any non-disclosure agreement or non-compete agreement involving Guidry that names Lokring as a third-party beneficiary to the agreement.  (*Id.*)

From 2010 to June 30, 2020, Shepard and Associates used the Big Contacts software platform.  (*Id.* ¶ 23.)  Shepard and Associates and Joe Shepard entered information into this platform from 2010 to June 2020.  (*Id.*)  On June 29, 2020, Maywald, while still employed by Shepard and Associates, sent an email to Guidry and Brad Shepard.  (*Id.* ¶¶ 18-19.)  This email included a BP GOM.xlsx file and an ALLACOUNTS.xlsx file downloaded from the Big Contacts platform that each contained customer lists with personnel contact information.  (*Id.*)  The BP GOM.xlsx file and the ALLACOUNTS.xlsx file each contain rows of information that identify a site, a name, an email address, a phone number, and a position for the identified person.  (*Id.* ¶ 26.)  In some cases, the rows do not include all this contact information (*e.g.*, some contacts include only a company name or a phone number).  (*Id.*)

On September 7, 2020, Jared Guidry sent the BP GOM.xlsx file and the ALLACOUNTS.xlsx file from his Lokring email address to his personal email account.  (*Id.* ¶ 21.)

On October 20, 2020, Brad Shepard sent the BP GOM.xlsx file and the ALLACOUNTS.xlsx file from his Lokring email address to his personal email account.  (*Id.* ¶ 22.)  On June 3, 2020, Brad Shepard obtained a backup of the Big Contacts CRM included in a .zip file.  (*Id.* ¶ 27.)  On July 30, 2020, Brad Shepard sent the .zip file from his Lokring email address to his personal email account. (*Id.* ¶¶ 27-28.)

Approximately two months later, on September 20, 2020, Lokring advised Brad Shepard and Shepard and Associates that Lokring was terminating the EDA within 30 days as either party had the right to do under the EDA.  (*Id.* ¶ 24.)  On September 21, 2020, Brad Shepard met with and terminated all Shepard and Associates' employees effective immediately.  (*Id.* ¶ 25.)

After leaving Shepard and Associates, Guidry began working for Tube-Mac, a company that sold a competing product called Pyplok.  (*See id.* ¶ 29.)   While employed with Tube-Mac, Guidry sent emails soliciting the sale of Pyplok products using a Tube-Mac email address.  (*Id.*)  The emails Guidry sent are stored on Tube-Mac's email server.  (*Id.*)  Guidry stopped providing services to Tube-Mac by March 1, 2023.  (*Id.*)

## II.   Law and Analysis

### A.   Standard of Review

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."  Fed. R. Civ. P. 56(a). "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of showing that no

4

genuine issues of material fact exist." *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (citations and quotations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Mining Mach., Inc. v. Copley*, 145 F. App'x 149, 152 (6th Cir. 2005) ("The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact.").

A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849-50 (6th Cir. 2020) (citations and quotations omitted).

"Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Queen v. City of Bowling Green, Kentucky*, 956 F.3d 893, 898 (6th Cir. 2020) (quotation and citations omitted). "[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Id.*; *see also Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.,* 395 F.3d 338, 342 (6th Cir. 2005).

A party asserting or disputing a fact must cite evidence in the record or show that the record establishes either the absence or the presence of a genuine dispute. *See* Fed. R. Civ. P. 56(c) and (e). Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(2); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the Court's role is not to make credibility determinations or "weigh" conflicting evidence. *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014); *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir. 2003). "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Payne*, 767 F.3d at 530.

"The fact that both parties make motions for summary judgment, and each contends in support of his respective motion that no genuine issue of fact exists, does not require the Court to rule that no fact issue exists." *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir. 1948). "It is true that both parties seek to resolve this case through the vehicle of cross-motions for summary judgment, but the standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

**B.    Lokring's Motion on its Counterclaims**

Lokring contends in Counterclaim One that Plaintiffs breached the EDA. Counterclaim Two asserts breaches of the NDA. Counterclaim Three raises spoliation of evidence. In Counterclaims Seven and Eight, Lokring contends that Plaintiffs misappropriated trade secrets under federal and state law. Finally, Counterclaim Nine asserts unfair competition under the Lanham Act and Ohio law.

6

Lokring is the counterclaimant bringing these causes of action, and so Lokring bears the burden of persuasion at trial.  "In cases where the party moving for summary judgment also bears the burden of persuasion at trial, the party's 'initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'"  *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) (quoting *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)).  "[S]ummary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

### 1.  Prior Ruling on Preliminary Injunction

Throughout Lokring's summary judgment papers it asserts that the Court's Preliminary Injunction Order (Doc. No. 170) sets forth findings of fact and conclusions of law that establish Plaintiffs' liability.  That is incorrect.

"Because of the lesser burden of proof required to support a motion for preliminary injunction as contrasted with a motion for summary judgment, a trial court's disposition of the substantive issues joined on a motion for extraordinary relief is not dispositive of those substantive issues on the merits."  *William G. Wilcox, D.O., P.C. Employees' Defined Ben. Pension Tr. v. United States*, 888 F.2d 1111, 1114 (6th Cir. 1989).  "Findings made in the course of deciding whether to issue a preliminary injunction . . . generally do not establish the law of the case . . . ."  *Grudzinski v. Staren*, 87 F. App'x 508, 512 (6th Cir. 2004); *see also Harris v. Fitchville Twp. Trustees*, 154 F. Supp. 2d 1182, 1186-87 (N.D. Ohio 2001) ("The Sixth Circuit

has held that determinations made in the process of deciding a motion for preliminary injunction are not binding in a resolution on the merits.").

Neither for summary judgment nor at trial can Lokring rely on the Preliminary Injunction Order as if the Court's statements therein constitute evidence, undisputed facts, findings of fact, or law of the case *now*.  As a matter of law, they do not.

### 2.      Lokring's Breach of Contract Counterclaims

The EDA provides that its construction and enforcement – as well as any documents incorporated therein and executed in connection with that agreement – are governed by federal and Ohio law (without regard to conflict of laws principles).  (Doc. No. 9-1 at 279 § 13.5.)[3]

"A contract is generally defined as a promise, or a set of promises, actionable upon breach."  *Minster Farmers Coop. Exch. Co., Inc. v. Meyer*, 884 N.E.2d 1056, 1061 (Ohio 2008) (citations and quotations omitted).  The construction of a written contract is an issue of law. *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 148 (Ohio 1978) (court syllabus para. 1). The role of a court is to give effect to the intent of the parties to the agreement.  *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003); *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 714 N.E.2d 898, 900 (Ohio 1999).

"[P]arties to contracts are presumed to have read and understood them and that a signatory is bound by a contract that he or she willingly signed."  *Preferred Capital, Inc. v. Power Eng'g Grp., Inc.*, 860 N.E.2d 741, 745 (Ohio 2007).  "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement."  *Kelly v. Medical Life Ins. Co.*, 509 N.E.2d 411, 413 (Ohio, 1987); *see also Westfield*, 797 N.E.2d at 1261.

---

[3] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

Language in a contract is given its plain and ordinary meaning unless the contract, read as a whole, makes a different meaning clearly apparent. *Alexander*, 374 N.E.2d at 148 (court syllabus para. 2); *see also Westfield*, 797 N.E.2d at 1261.  "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Westfield*, 797 N.E.2d at 1261.  Thus, a "contract is construed as a matter of law if the contract is 'clear and unambiguous.'" *Fabrizi Trucking & Paving Co., Inc. v. City of Cleveland*, 85 N.E.3d 279, 285 (Ohio Ct. App. 2017) (citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684 (Ohio 1995)).

"Under Ohio law, the elements of a breach of contract claim are: the existence of a contract; performance by the plaintiff; breach by the defendant; and damage or loss to the plaintiff as a result of the breach." *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (numbers omitted).  "A claimant seeking to recover for breach of contract must show damage as a result of the breach.  Damages are not awarded for a mere breach of contract; the amount of damages awarded must correspond to injuries resulting from the breach.  As a general rule . . . courts have required greater certainty in the proof of damages for breach of contract than in tort." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1266 (Ohio Ct. App. 1996) (quotations and citations omitted).

### a)     Breach of the EDA

In Counterclaim One, Lokring contends Plaintiffs violated the EDA in two ways.

### (1)     Sections 5.1(q) and 13.1

Lokring asserts that Plaintiffs breached the agreement by failing to obtain a signed NDA from Guidry.  (Doc. No. 310 at 7215).  Section 5.1(q) provides:

5.1 Duties of Distributor:  During the term of this Agreement, from time to time, Company shall furnish Distributor policies and procedures, which it has issued for

its distributors, and Distributor agrees to abide by and carry out the provisions of such policies and procedures. Distributor further agrees:

> \* \* \*

> (q)  Distributor shall enter into and cause each employee of Distributor to enter into the Lokring Confidentiality Agreements as more specifically defined in Section 13. l herein.

(Doc. 9-1 at 268-70 § 5.1(q).)  Section 13.1 provides:

> 13.1 Lokring Confidentiality Agreements:   Distributor agrees to comply with, execute, and cause to be executed, the following confidentiality agreements below (collectively, known as the "Lokring Confidentiality Agreements"):

> > (a)  the  Distributor  Confidentiality  and  Non-Competition  Agreement attached in as Appendix G; and

> > (b)  the  Distributor  Employee  Confidentiality  and  Non-Competition Agreement attached herein as Appendix H.

(*Id.* at 278 § 13.1.)

Plaintiffs do not dispute that the EDA was an enforceable contract.  In fact, Plaintiffs'

Second Amended Complaint alleges breach of that same contract.  Plaintiffs have not shown that

Lokring failed to perform under the EDA – at least prior to its termination.[4]

As to the third element – breach – the following testimony shows that Plaintiffs failed to

perform under Sections 5.1(q) and 13.1 of the EDA.  Plaintiffs' principal Brad Shepard testified

as follows:

> Q:      . . . Did you ever present a confidentiality agreement to Jared Guidry?

> A:      No, sir.

> Q:      Is there any reference that Lokring  Technology, LLC  would  be  the beneficiary of any proposed confidentiality agreement?

> A:      No, sir.

---

[4] Plaintiffs' breach of the EDA claim goes towards Lokring's conduct following its notice terminating the EDA.

Q:      . . . Did you ever present a noncompete agreement to Jared Guidry?

A:      No, sir.

Q:      Did you ever tell Jared Guidry that a noncompete agreement would be required for which Lokring Technology, LLC would be a beneficiary?

A:      No, sir.

(Doc. No. 151 at 2843-44.)

The Court concludes from the undisputed facts that Lokring has shown the first three elements of the breach of contract claim in Counterclaim One.  Those three elements having been shown are now "established in the case."  Fed. R. Civ. P. 56(g).

### (2)      Section 12.5

Lokring also claims that "Plaintiffs breached Section 12.5 [of the EDA because] Plaintiffs failed to return any and all copies of the Intellectual Property (as defined in the EDA) and Information (as defined in the NDA) to Lokring upon termination of the EDA.  This includes the Big Contacts List (both the customer list and customer notes) and other documents containing Confidential Information."  (Doc. No. 310 at 7215.)

Upon termination by either party, Section 12.5 provides, in pertinent part:

Distributor shall immediately return all Intellectual Property (as defined in this Agreement) and all Information (as more fully described in the "Lokring Confidential Agreements" attached herein as Appendix G and H respectively, and further defined below in Section 13.1 herein).  To the extent certain of the Information or Intellectual Property is incapable of being returned in tangible form then Distributor warrants, and will affirm by affidavit immediately delivered to the Company, that Distributor has destroyed all records of such Information or Intellectual Property.

(Doc. No. 9-1 at 277 § 12.5(a).)

The Court does not make findings or conclusions with respect to this particular breach theory for three reasons.  First, the duty to return information could be satisfied in more than one way under the contract.  (*See* Doc. No. 9-1 at 277 § 12.5(a) (describing a process for destruction

11

in addition or in lieu of return of information).)  Lokring's papers do not address if or how the destruction issue was addressed by the parties, and so it is not clear that Lokring is "entitled to judgment as a matter of law" on this issue.  *See* Fed. R. Civ. P. 56(a).  Second, facts surrounding these issues appear to be disputed.  (*Compare* Doc. No. 310 at 7215-16 *with* Doc. No. 334 at 11918-22.)  For example, Lokring points to open questions regarding materials that Plaintiffs may have kept in file cabinets (paper documents) and in computers (electronically stored information) where there is a dispute over whether material was returned.  (*See* Doc. No. 310 at 7209; Doc. No. 352 at 14561-63.)  Third, Plaintiffs' summary judgment papers rely on their affirmative defense of waiver.  (Doc. No. 334 at 11921, 11928.)  "Whether a party's inconsistent conduct amounts to waiver involves a factual determination within the province of the trier of fact."  *Accurate Electric Const., Inc. v. Ohio State Univ.*, 149 N.E.3d 1080, 1094 (Ohio Ct. App. 2019).

### b)  Breach of the NDA

#### (1)  Section B.3

Section B.3 of the NDA provides:

> Upon the termination of employment with Lokring for any reason, Recipient agrees, in addition to all obligations contained within the Lokring Exclusive Distributor Agreement, and independent thereof, that he will promptly return all tangible items containing (or relating to) such Information as described in paragraph 2 above, along with all other property of Lokring in Recipient's possession, whether in written or electronic form, and that Recipient will not retain copies of any item or document included within such category of Information.  To the extent certain of the Information in Recipient's possession is incapable of being returned in tangible form then Recipient warrants, and will affirm by affidavit immediately delivered to Lokring, that Recipient has destroyed all records of such Information.

(Doc. No. 9-1 at 286 § B.3.)

For the same reasons as discussed above regarding Section 12. 5 of the EDA, the Court does not make findings or conclusions with respect to Section B.3 of the NDA.

### (2)    Section A.1 and Guidry

In Counterclaim Two, Lokring contends that "Plaintiffs breached Section A.1.c. and other subsections of Section A.1 of the NDA when they disclosed protected Information as defined in the NDA to Guidry without obtaining a confidentiality agreement from Guidry on the same terms and with the same obligations as set forth in the NDA."  (Doc. No. 310 at 7216.)

The NDA provides, in pertinent part:

A.  Confidentiality:

1.  In respect of all information in whatever form relating in any way whatsoever to the Subject Matter which may be disclosed to the Recipient by or on behalf of Lokring or otherwise obtained by the Recipient, on account of Recipient's status as an exclusive distributor of Lokring (such information being hereinafter called "Information"), the Recipient hereby undertakes and agrees:

> a.  not to use the Information otherwise than for the purpose of providing outsourced manufacturing and sales services to Lokring (the "Purpose");

> b.  only to disclose the Information (and then only to the extent necessary) to those of the Recipient's employees to whom disclosure is necessary for the Purpose:

> c.  not to disclose the Information to any third party except as provided in paragraph l(b) above or as may be expressly authorized in writing by Lokring.  All employees and third parties to whom the Recipient discloses Information as permitted under this Agreement shall: (i) have a need to know the Information; (ii) be bound to the Recipient by written confidentiality agreements or otherwise to maintain the Information in confidence on terms at least as restrictive as this Agreement; and (iii) be informed of the confidential nature of the Information to be disclosed to them and their obligations with respect to its use and disclosure; [and]

> *  *  *

> h.  to be fully liable for and responsible for the fulfillment of the above obligations on the part of the Recipient's employees, and any other third party that the Recipient provides or makes Information available to.

2.  The term "Information" includes, without limitation:

> a.  all information relating to the Subject Matter, whether disclosed by conversation, written or document form, object or sample form, or by

13

observation and inspection, and whether or not such information is expressly marked as "confidential";

b. all technical and non-technical information disclosed to the Recipient by or on behalf of Lokring, including but not limited to, trade secrets, customer lists, . . . data, programs, . . . know-how . . . ;

c. all information concerning current and prospective . . . products, marketing and selling, . . . prices and costs;

d. all Information concerning suppliers and customers, whether or not such suppliers and customers were developed, identified or maintained by Lokring or Recipient; and

e. all . . . compilations, . . . and documents prepared for or by Lokring or the Recipient which contain or otherwise reflect, in whole or in part, such information referred to above or which are prepared or developed by the Recipient in connection with work performed for Lokring or its affiliates.

(Doc. No. 9-1 at 282-84 §§ A.1-A.2.)

There is no dispute that Maywald, an employee of Shepard and Associates, sent an email to Guidry and Brad Shepard that included two attachments containing customer information. (SOF ¶¶ 19, 26.)  Guidry forwarded the email – and the attached information – to his personal email account.  (SOF ¶ 21.)  Brad Shepard did the same to his personal email account.  (SOF ¶ 22.)  Brad Shepard also obtained and forwarded to his personal email account the notes data exported from the Big Contacts platform.  (SOF ¶¶ 26-28.)

Plaintiffs agreed in section A.1.h. of the NDA to be "fully liable for and responsible for" their employees' compliance with the NDA terms – and by its terms, this obligation was not contingent upon such employees having signed their own NDA contracts.[5]  Lokring submitted evidence and argument indicating that Guidry sent near-duplicate email solicitations from his Tube-Mac email account to many recipients who are listed in the customer contact lists Guidry

---

[5] The boilerplate NDA for employees is contained at Appendix H to the EDA.  (*See* Doc. 9-1 at 278 § 13.1(b).)

obtained during his employment at Shepard and Associates and then forwarded to his personal email account.  (*See* Doc. No. 310 at 7209-10; Doc. No. 310-1.)  Plaintiffs acknowledge in their brief that "[t]here is no dispute that Guidry used the BigContacts List to contact Southwest [*i.e.*, Shepard and Associates] customers."  (Doc. No. 334 at 11920.)

Accordingly, as to Counterclaim Two, Lokring has shown the first three elements of breach of contract.  Specifically, Plaintiffs did not comply with their obligations under Sections A.1.c. of the NDA.  Plaintiffs allowed Guidry to access and take "Information" as defined in Section 2 of the NDA in the form of the customer information contained in the BP GOM.xlsx file and an ALLACOUNTS.xlsx file, for which Plaintiffs are responsible under Section A.1.h. Those three elements having been shown as described above are now "established in the case." Fed. R. Civ. P. 56(g).

### (3)    Guidry and the Notes Data

Lokring asserts that "Guidry had a copy of Lokring's customer list and its customer notes in hand, and he began calling and sending emails to Lokring customers on behalf of Tube-Mac." (Doc. No. 310 at 7209.)  But Lokring's evidence with its summary judgment motions does not show that Guidry possessed the notes data; the evidence only indicates that Guidry had customer lists with contact information.  (*E.g.*, Doc. No. 310-20 at 7974 (Guidry wrote in an email that he "was able to retain some contact info.").)[6]  Lokring's evidence to show Guidry's purported possession and use of the notes data is an email Guidry wrote to two employees at a chemical company that began: "Hey guys!  Ya'll might remember me, I used to work at Lokring

---

[6] Lokring pointed out that on February 5, 2021, Brad Shepard provided Guidry with a purchase history of a Lokring customer, which appeared as a spreadsheet titled "Book16.xlsx."  (Doc. No. 310-18 at 7951.)  That purchase history document is not an excerpt from the narrative notes data. (Compare *id.* with Doc. No. 298-1 at 5464-6458.)

Southwest, I came down around this time last year and brought some pizza for lunch." (Doc.
No. 310-40.) Lokring argues that "Guidry's ability to recall this event is astounding . . . ." (Doc.
No. 310 at 7224 n.17.) That argument does not establish an undisputed fact. The email does not
show Guidry to have written some granular detail that is so minute or obscure as to require an
inference that Guidry must have consulted the notes database when writing this email. A short,
simple mention of a past pizza lunch is something Guidry might have remembered, and
Lokring's suggestion otherwise is speculative.[7]

Lokring also argues that Guidry's "sales plan further contains detailed information about
contacts which would be known based on the Big Contact Notes [Brad] Shepard sent to his
Hotmail email on July 30, 2020." (Doc. No. 310 at 7208 n.4.) But not until its reply brief did
Lokring first provide particularized evidence and argument as to why the notes data arguably is
reflected in Guidry's sales plan email. (*See* Doc. No. 352 at 14559; *see also* Doc. No. 352-1.)
"New evidence and new arguments are not appropriate in a reply brief . . . ." *Abraitis v. United
States*, No. 1:11-cv-2077, 2012 WL 2885586, at *1 (N.D. Ohio July 13, 2012).

From this record, Lokring has not established the absence of a genuine dispute of
material fact regarding its claim that Guidry acquired and/or used the notes data.

### (4)    Brad Shepard's Meeting

Lokring claims that Brad Shepard violated the NDA and his contractual obligations by
meeting with Tube-Mac personnel in January 2021. (Doc. No. 310 at 7209, 7212 n.9, 7217,
7218 n.12.) However, Lokring's papers do not provide a precise legal argument as to how or

---

[7] In fact, Lokring argues that it was Guidry who typed the notes data entry recounting his pizza
lunch meeting with the customer. (Doc. No. 333 at 11903-04.) Given that Guidry not only
attended the pizza lunch but also wrote about it in the Big Contacts platform could allow a jury
to find that Guidry may have remembered that pizza lunch without recourse to the notes
database.

why Brad Shepard's actions violate one or more of the four subsections in Section B.1 of the NDA.  On this point, Lokring has not established its clear entitlement to judgment as a matter of law under Rule 56(a).

### c) Damages

"Proof that the plaintiff incurred damages is an essential element of a breach of contract case.  Damages, therefore, are legally essential to a claim for breach of contract.  This means that a plaintiff's [f]ailure to prove the essential element of damages is . . . fatal to a cause of action for breach of contract.  This is because, [w]ithout damages, there can be no remedy for breach of contract." *Brock v. Servpro*, 183 N.E.3d 491, 498 (Ohio Ct. App. 2022) (quotations and citations omitted).  "In Ohio, [a] claimant seeking to recover for breach of contract must show damage as a result of the breach.  . . .  Damages, like all other elements of a breach of contract claim, must be proven by a preponderance of the evidence." *Eggert v. Meritain Health, Inc.*, 428 F. App'x 558, 563 (6th Cir. 2011) (quotations and citations omitted).

Lokring's motion for summary judgment on Counterclaims One and Two does not address contract damages or specify any amount or category of damages to be awarded against Plaintiffs because those were caused by a breach of the EDA or the NDA.  (*See* Doc. No. 310.)[8] Lokring thus has not carried the higher initial burden applicable to a plaintiff-movant.  *See Surles*, 678 F.3d at 455-56; *cf. Grantham & Mann, Inc. v. Am. Safety Prod., Inc.*, 831 F.2d 596, 601 (6th Cir. 1987).[9]

---

[8] The only discussion of damages in that motion were with respect to issues unique to Tube-Mac, *i.e.*, the presumption of damages for unfair competition where a plaintiff proves the literal falsity of a competitor's disparagement.  (Doc. No. 310 at 7230.)

[9] There is still some additional record evidence about damages that Lokring addressed in response to Plaintiffs' motion for summary judgment.  This is discussed below.

### 3. Spoliation

In Counterclaim Three, Lokring contends that:

> Plaintiffs repeatedly spoliated records (which spoliation continued throughout this litigation) that would reveal Plaintiffs were working together with Guidry and Tube-Mac in selling a competitive product with the use of Lokring's trade secret and confidential information. *See e.g.,* Ex. D; Doc. 236-6, PageID 4344; Brad Dep. at 256:13-15; 257:2; Guidry Dep. at 85:7-14. Further, Plaintiffs spoliated the NDA to which Guidry was subject as the same was required under Plaintiffs' EDA and was a condition of Guidry's employment with Plaintiffs. (Doc. 9-1, PageID 282; PageID 270, §5.1(q); Doc 151, Page ID 2940:9-12, PageID 2942:15-25). This ongoing spoliation has unduly prejudiced Lokring and has led to the harm incurred by Lokring.

(Doc. No. 310 at 7206.)

A cause of action exists under Ohio law for interference with or destruction of evidence. The elements for that tort claim are (A) pending or probable litigation involving the plaintiff, (B) knowledge on the part of defendant that litigation exists or is probable, (C) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (D) disruption of the plaintiff's case, and (E) damages proximately caused by the defendant's acts. *Smith v. Howard Johnson Co., Inc.*, 615 N.E.2d 1037, 1038 (Ohio 1993).

Lokring asserts that Plaintiffs withheld, concealed, and destroyed written contracts they purportedly executed with Guidry. (Doc. No. 310 at 7218.) If that claim is proved, the record indicates that Lokring may be able to show disruption of its case and resulting damages. (*See, e.g.*, Doc. No. 412 (holding that the absence of a written, signed contract precludes enforcement of Guidry's alleged contractual duties in light of the statute of frauds).)

Plaintiffs submitted evidence that this alleged written contract with Guidry did not exist (which, if proved, would indicate that Plaintiffs did not destroy it). (Doc. No. 334-1 at 11938 ¶ 11; *see also* Doc. No. 151 at 2876-77.) This evidence shows the existence of a genuine dispute regarding material facts. Lokring's papers do not rule out the possibility that a jury could believe

18

Guidry or Brad Shepard, whose testimony and affidavits disavow the existence of the signed, written contacts referenced in Lokring's spoliation claim.

For the reasons above, Lokring's motion for summary judgment on Counterclaim Three is denied.

### 4.        Trade Secret Counterclaims

Lokring contends in Counterclaim Seven that Plaintiffs are liable under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA").  Counterclaim Eight is essentially the same claim but under the Ohio Revised Code § 1333.61, *et seq.*  (Doc. No. 61 at 912-14.) Misappropriation is defined nearly identically in the federal and state statutes.  *Compare* 18 U.S.C. § 1839(5) *with* Ohio Rev. Code § 1333.61(B).

The Court previously held that Tube-Mac was not liable under federal or state law for trade secret misappropriation.  (Doc. No. 412 at 16676-99.)  The same legal analysis does not apply with respect to Plaintiffs, and so the Court's prior rulings do not preclude potential trade secret liability for Plaintiffs.  Nonetheless, unresolved questions remain.

Lokring's briefs do not clearly identify the factual bases and legal theories to resolve as a matter of law that Plaintiffs improperly disclosed trade secret information or the improper retention of these materials by Brad Shepard and Plaintiff.  the following question: whether either Plaintiff might be liable under federal or state trade secret law (*i.e.*, independent and irrespective of the actions of Guidry and Tube-Mac); whether either Plaintiff might be liable for trade secret misappropriation in connection with the actions of Guidry; whether either or both Plaintiffs might be liable for trade secret misappropriation in connection with the actions of Tube-Mac, notwithstanding that the latter may not be held directly liable for trade secret misappropriation.

For these reasons, Lokring's motion on Counterclaims Seven and Eight is denied.

### 5.    Unfair Competition

In Counterclaim Nine, Lokring originally pleaded a hodgepodge of allegations describing a conspiracy among Plaintiffs, Guidry, and Tube-Mac.  (Doc. No. 61 at 914-15.)  In its motion, Lokring requested summary judgment on two bases: "False Comparative Advertising (as against Tube-Mac)" and "Trademark Infringement (as against Tube-Mac)."  (Doc. No. 310 at 7227, 7231.)  The Court ruled in a prior Order that those two grounds were not viable.  (*See* Doc. No. 412 at 16699-710.)

Lokring did not move for summary judgment on any other theory that pertained to Plaintiffs.  For these reasons, Lokring's motion on Counterclaim Nine is denied.

### C.    Plaintiffs' Motion on Lokring's Counterclaims

For purposes of its Counterclaims, Lokring carries the burden of a plaintiff, while Plaintiffs carry the burden of a defendant.  Plaintiffs moved for summary judgment on each of Lokring's Counterclaims with variations on the same theme: a failure to show economic damages.  (*See* Doc. No. 307.)

### 1.    Summary Judgment and Damages

"The moving party may meet its burden [at summary judgment] by highlighting an absence of facts or evidence to support a plaintiff's claims.  That is, a movant can challenge the opposing party to 'put up or shut up' on a critical issue."  *Scadden v. Werner*, 677 F. App'x 996, 1000 (6th Cir. 2017) (quotations and citations omitted).  "[C]onclusory evidence does not suffice.  The purpose of summary judgment is to determine whether a material fact dispute exists for the jury to resolve, not to replace conclusory allegations of the complaint or answer with

conclusory allegations [in] an affidavit, verified complaint, or deposition." *Reedy v. West*, 988 F.3d 907, 914 (6th Cir. 2021).

"Once challenged on summary judgment, a plaintiff must come forward with competent, credible evidence to create a question of fact as to the existence of damages." *Loadman Group, L.L.C. v. Banco Pop. N.A.*, 4:10-cv-1759, 2013 WL 1150125, at *6 (N.D. Ohio Mar. 19, 2013). Summary judgment may be granted to a defendant in a breach-of-contract case where the plaintiff fails to provide evidence of economic damages resulting from a breach of contract. *E.g.*, *Wellington Corp. LLC v. Gennari Consulting, Inc.*, 631 F. Supp. 3d 464, 474 (N.D. Ohio 2022); *Princeton Radiology Assocs., PA v. Advocate Radiology Billing & Reimbursement Specialists, LLC*, No. 2:19-cv-2311, 2022 WL 501205, at *3 (S.D. Ohio Jan. 3, 2022).

In *Wellington*, the court held that a plaintiff's assurance of future trial testimony that would substantiate and quantify damages was insufficient to demonstrate a genuine triable issue for a jury. "Plaintiff maintains that it will prove its damages at trial through . . . testimony. . . . However, a plaintiff must prove damages, like all other elements of a claim, by a preponderance of the evidence. Accordingly, for the breach of contract claim to survive summary judgment, Plaintiff must show there is a genuine dispute of material fact about damages." *Wellington*, 631 F. Supp. 3d at 475 (citations omitted). Due to the plaintiff's failure to put forward evidence of its damages, the court granted summary judgment in favor of the defendant on a breach contract claim. *Id.* at 475-76. In *Loadman Grp.*, the plaintiff did point out affidavits and exhibits in the record that addressed damages. However, the bulk of that material was inadmissible as evidence for various reasons (*e.g.*, "speculative, not based on personal knowledge, not based on evidence in the record, inadmissible hearsay, and improper lay opinion testimony"). 2013 WL 1150125 at

\*7.  The defendant prevailed based on the plaintiff's failure to marshal admissible evidence of damages sufficient to withstand summary judgment.  *See id.*

Against this backdrop, the Court considers Plaintiffs' motion, which contends that each counterclaim fails for want of proof of compensable damages.

### 2.      Lokring's Expert Report

Plaintiffs' summary judgment motion incorporates its motion *in limine* to exclude expert report of W. James Lloyd.  (Doc. No. 307 at 6882; *see also* Doc. No. 299.)  Lokring, in turn, relies on Lloyd's expert report (and his anticipated testimony) to show economic loss and compensable damages.  (*See* Doc. No. 336 at 12118-20; *see also* Doc. No. 326.)

"[M]ere 'weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility.'"  *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (quoting *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993)).  "Although the opinions of the proffered testimony 'may very well be 'shaky,'' because the opinions were based upon facts in the record, and were not 'assumptions' or 'guesses,' challenges merely [go] to the accuracy of the conclusions, not to the reliability of the testimony."  *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 530 (2008) (quoting *Jahn v. Equine Services*, 233 F.3d 382, 90-93 (6th Cir. 2000)).

Plaintiffs argue that Lloyd made fundamental errors in his choice of inputs and computations to arrive at his opinion regarding a reasonable royalty.  Those are matters that can be exposed and explored on cross-examination.  In light of the authorities cited above, the Court does not exclude the report for purposes of resolving the pending summary judgment motions.

### 3.     Plaintiffs' Attorney Affidavit

Lokring requests that the Court strike the affidavit of attorney John Sayre (Doc. No. 307-02), who authenticated certain exhibits accompanying Plaintiffs' motion.  (*See* Doc. 336 at 12098-99.)  "Plaintiffs are correct that it is improper to seek to strike exhibits to a dispositive motion."  *Reid v. City of Detroit*, No. 18-13681, 2020 WL 5878218, at *1 (E.D. Mich. Oct. 2, 2020).  "Under Fed. R. Civ. P. 12(f), a court may strike only material that is contained in the pleadings."  *Fox v. Michigan State Police Dept.*, 174 F. App'x 372, 375 (6th Cir. 2006).  "Exhibits attached to a dispositive motion are not 'pleadings' within the meaning of Fed. R. Civ. P. 7(a) and are therefore not subject to a motion to strike under Rule 12(f)."  *Id.*  "[A] Court should 'disregard' inadmissible evidence, not strike that evidence from the record."  *Lombard v. MCI Telecommunications Corp.*, 13 F. Supp. 2d 621, 625 (N.D. Ohio 1998) (citing Sixth Circuit authorities).

The Court disregards the statements within Sayre's affidavit because those statements were not made based on his own personal knowledge.  The statements reflect his characterization of the written attachments.  The exhibits referenced in Sayre's affidavit, however, need not be excluded.  The cited documents are correspondence, emails, and an export report exhibit – *i.e.*, materials yielded in litigation or through discovery.

### 4.     Proof of Damages

"The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case."  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex*, 477 U.S. at 322).  "A court should view the facts and draw all reasonable inferences in favor of the non-moving party."  *Pittman v. Experian Info. Sols., Inc*., 901 F.3d 619, 628 (6th Cir. 2018).

For every type of contractual noncompliance or tortious conduct by Plaintiffs that Lokring proves, it also must prove how each of those caused damages.  *See generally Harrison Const. Co. v. Ohio Turnpike Comm'n*, 316 F.2d 174, 178 (6th Cir. 1963) (applying Ohio law) ("We conclude that a showing of causal connection between the breach of contract alleged and the damage allegedly suffered is part of [plaintiff's] prima facie case on which it sustains the burden of proof.").  Faced with Plaintiffs' motion, Lokring must come forward with admissible evidence of damages in order to withstand summary judgment.  *See DeCastro*, 761 N.E.2d at 617; *Loadman Grp.*, 2013 WL 1150125, at *6; *Wellington*, 631 F. Supp. 3d at 474; *Princeton Radiology*, 2022 WL 501205, at *3.

Although Lokring's evidence regarding damages is limited, the Court concludes that Lokring has pointed to some evidence upon which a jury could return a verdict in its favor on some aspect of each Counterclaim.

As to Counterclaims One and Two, Lokring cited evidence indicating that with Guidry's help, and perhaps by virtue of the customer lists he used, Tube-Mac made inroads with Lokring customers.  (*See* Doc. No. 336 at 12098-101, 12104.)  Lokring also cited some evidence indicating that it sustained losses by virtue of Plaintiffs' own actions in violation of the EDA and NDA.  (*See id.* at 12100-04.)

As to Counterclaim Three, *if* the first four elements of the claim are established at trial, Lokring indicates that it may seek recovery for litigation costs that it says were incurred to learn of, identify, and root out some but not all allegedly concealed or destroyed evidence.  (*See id.* at 12106-08 (citing evidence and prior testimony).)

24

As to Counterclaims Seven and Eight, Lokring points to Lloyd's report setting forth bases for his opinion that Lokring is entitled to payment of reasonable royalties. (*Id.* at 12119.) Lokring also argues:

> Plaintiffs lied about possessing Lokring's trade secrets, until they were caught. Following the PI Hearing, Plaintiffs were required to file an inventory of Lokring's trade secrets and confidential information in its possession. Plaintiffs were deceptive in this filing as well as Plaintiffs failed to disclose they possessed all the notes and activity summary that relate to the customer list – all of which was extracted from Lokring's Big Contacts CRM, then forwarded to Plaintiffs email.

(*Id.* at 12118-19 (citing Doc. No. 191 at 3754).)

There are material fact questions regarding Plaintiffs' acts and omissions with respect to information protected by the NDA, which Plaintiffs signed in favor of Lokring. Such questions include Plaintiffs' actions, omissions, retention, usage, or financial benefit from any misappropriation of information covered by the NDA.

As for Counterclaim Nine, Lokring has not marshaled evidence or arguments that would render Plaintiffs liable for the challenged statements of Guidry and Tube-Mac. Lokring has not developed a legal argument for liability under the Lanham Act outside of the alleged false advertising statements in Guidry's emails from his Tube-Mac account. The Court has already held that those statements were not actionable under the federal Lanham Act. (Doc. No. 412 at 16708-09.) With no other theory of Lanham Act liability before the Court, Plaintiffs' motion for summary judgment on Counterclaim Nine is granted.

With respect to the Ohio law claim, however, Plaintiffs' motion is denied. "Unfair competition ordinarily consists of representations by one person, for the purpose of deceiving the public, that his or her goods are those of another. It may also extend to unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements, all designed to harm the business of another." *Landskroner v. Landskroner*, 797 N.E.2d 1002, 1017

25

(Ohio Ct. App. 2003) (quotation and citations omitted).  The parties' respective briefing has not

done enough to satisfy Rule 56 and thereby establish or rule out potential liability for unfair

competition under Ohio law in Counterclaim Nine.

Plaintiffs' motion for summary judgment is granted with respect to the Lanham Act claim

in Counterclaim Nine and denied as to all other Counterclaims.

### D.     Lokring's Motion on Plaintiffs' Claims

### 1.     Breach of Contract

Plaintiffs contend that Lokring breached the EDA by not paying for tooling and inventory

returned to Lokring after the EDA's termination.  (Doc. No. 41 at 603 ¶¶ 52-59.)  The allegedly

breached EDA term ("Section 12.5") provides:

> **Return of Information, Intellectual Property, Inventory and Tooling:**  In the
> event that this Agreement is terminated by either party . . . Company and Distributor
> agree:
>
> * * *
>
> (c)     Distributor shall make available for inspection, on terms reasonably
>         agreed to by Company and Distributor, within (15) days of the
>         termination of this Agreement for any reason, all Inventory then in
>         Distributor's possession.  The Inventory will be inspected by
>         Company for re-saleability.  If, in Company's sole discretion, the
>         inventory is deemed to be in condition not suitable for resale
>         ("Ineligible Inventory"), payment is not warranted and Company
>         will not buy back the Ineligible Inventory. If, in the Company's sole
>         discretion, the inventory is deemed suitable for resale and it is in
>         original factory packaging ("Eligible Inventory"), **Company will
>         repurchase all Eligible Inventory at one-hundred percent
>         (100% of Distributors' initial purchase price [)], and Distributor
>         will return inventory with fifteen (15) days of the inspection
>         described herein.   Company will deliver payment for the
>         Eligible Inventory upon Company's receipt of the Eligible
>         Inventory**.
>
> (d)     **Distributor shall make available for inspection, at the time of
>         the inspection set forth above concerning the Inventory**, **all
>         tooling previously used by Distributor for demonstration, rental
>         or loan.[]**  Company will determine what, if any, reconditing is
>         required to restore these tools to their proper working condition.  If

> Company decides in its own discretion that reconditing is required, payment to Distributor of the returned tooling's initial purchase price will be net of reconditing fee unless the tooling has been deemed Ineligible Inventory as described above, in which case, Company will not buy back the same.

(Doc. No. 9-1 at 277-78 § 12.5 (emphasis added).)  Lokring advances two arguments in support of its contention that a reasonable jury could not find that Plaintiffs are entitled to damages for any alleged breach of Section 12.5.  (*See* Doc. No. 306 at 6599-600.)

Lokring first contends that Plaintiffs have not – and cannot – offer any evidence rebutting that it satisfied its Section 12.5 obligations by paying Plaintiffs $963,590.29 for inventory and tooling.  (*Id.*; Doc. No. 338 at 12227.)  Not so.  Plaintiffs have directed this Court to record evidence showing that the $958,590.29 payment was not reflective of the inventory and tooling repurchased by Lokring pursuant to Section 12.5.  (Doc. No. 335 at 12005-06.)  It appears that Lokring calculated the value of the repurchased inventory and tooling as $1,245,134.42.  (Doc. No. 308 at 6894-95.)  But Lokring determined that it only owed Plaintiffs $963,590.29 because it deducted $173,487.89 for "post-inventory inspection adjustment" and $108,056.24 for "AR owed Lokring and RMA adjustment."  (*Id.*)  Lokring's summary judgment papers do not explain the deductions reflected in the one document used to confirm the amount that it paid – let alone provide evidence to substantiate the accuracy and validity of the deductions.  Having reviewed the email exhibit in which Lokring's attorney computed the balance owed based on various deductions, the Court is left with as many questions as it has answers.  The Court cannot rule as a matter of law that the $963,590.29 payment satisfies Section 12.5.

Lokring also argues that Plaintiffs' breaches of the EDA preclude them from bringing a breach of contract claim under the EDA.  (Doc. No. 306 at 6600.)  To Lokring, Plaintiffs' failure to return inventory and tooling and to protect Lokring's trade secrets and confidential

information make it impossible for them to prove the second element of a breach of contract claim: *i.e.,* that Plaintiffs performed under the EDA.  (Doc. No. 306 at 6600; Doc. No. 338 at 12225.)  *See also Integrated Design Eng'g & Analysis Servs., Inc. v. Giddy Holdings, Inc.*, No. 5:20-cv-00563, 2021 WL 848949, at *3 (N.D. Ohio Mar. 5, 2021) (noting the second element of an Ohio law breach of contract claim is the plaintiff's performance under the contract).

Ohio law, however, provides that "a breach of one of several terms in a contract does not discharge the obligations of the parties to the contract, unless performance of the term is essential to the purpose of the agreement, and default by a party who has substantially performed does not relieve the other party from performance."  *Becker v. Direct Energy, LP*, 112 N.E.3d 978, 988 (Ohio Ct. App. 2018) (citations and quotations omitted); *see also Integrated Design,* 2021 WL 848949, at *3 ("As a general rule, a party does not breach a contract when the party substantially performs the terms of the contract.  For the doctrine of substantial performance to apply, the part unperformed must not destroy the value or purpose of the contract.") (quotations and citations omitted).  Lokring has not met its burden of showing that a jury could find that Plaintiffs substantially underperformed under the EDA.  Determinations regarding substantial performance present questions of fact generally left to a jury.  *E.g.*, *Ashley v. Henahan*, 47 N.E. 573, 575-76 (Ohio 1897); *Lawless v. Board of Education of Lawrence Cnty. Educational Service Center*, 141 N.E.3d 267, 286 (Ohio Ct. App. 2020).

Accordingly, Lokring's motion is denied with respect to Count One of Plaintiffs' Second Amended Complaint.

### 2.      Breach of Fiduciary Duty

Count Two of Plaintiffs' Second Amended Complaint alleges that Lokring breached its fiduciary duty to Plaintiffs.  (Doc. No. 41 at 603-04 ¶¶ 60-67.)  Specifically, Plaintiffs allege that

28

the terms of the distribution agreement between Lokring and Plaintiffs "placed Lokring in a position of disproportionate power and control over Southwest," thereby creating a fiduciary relationship.  (*Id.* ¶¶ 62, 64.)  In light of this fiduciary relationship, Plaintiffs allege that Lokring's "summary termination of Southwest's distributorship" constituted a breach of fiduciary duty.  (*Id.* ¶ 66).

Lokring counters that Plaintiffs' breach of fiduciary duty claim fails as a matter of law for three reasons: (A) Plaintiffs cannot establish that a fiduciary relationship existed; (B) Plaintiffs cannot identify which fiduciary duty Lokring allegedly violated; and (C) this claim is made in the alternative if the EDA were found to be "an illusory contract."  (Doc. No. 306 at 6600-01.)  For the reasons below, the Court concludes that Plaintiffs' breach of fiduciary duty claim fails as a matter of law because they have not established that a fiduciary relationship existed between Lokring and Plaintiffs.[10]

A breach of fiduciary duty claim has three elements: "the existence of a duty arising from a fiduciary relationship; a failure to observe the duty; and an injury resulting proximately therefrom."  *Huff v. Mahajan*, No. 1:20-cv-2499, 2022 WL 3921904, at *4 (N.D. Ohio Aug. 31, 2022) (numbers omitted).  With respect to the first element, Lokring acknowledges that it engaged in a business relationship with Plaintiffs, but argues that the EDA did not "elevate [the] relationship to a fiduciary level."  (Doc. No. 306 at 6601 (citing *Pasqualetti v. Kia Motors Am., Inc.*, 663 F. Supp. 2d 586, 598 (N.D. Ohio 2009).)  In response, Plaintiffs argue that Lokring exerted near-total control over Southwest such that this relationship could be considered fiduciary in nature.  (Doc. No. 335 at 12008).  Plaintiffs also assert that whether the relative

---

[10] The Court need not reach Lokring's additional arguments in support of summary judgment. For example, the Court need not address Lokring's argument that the economic loss doctrine bars the fiduciary duty claim.

power imbalance between them and Lokring gives rise to a fiduciary relationship is a question of fact.  (*Id.* at 12007-09.)

"The vast majority of business relationships . . . do not give rise to a fiduciary relationship."  *Pasqualetti*, 663 F. Supp. 2d at 598. Such a relation might arise if an "agreement effectively grants one party 'the authority to exercise near life and death economic power' over the party."  (Doc. No. 259 at 4534 (quoting *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 215 (S.D.N.Y. 2007)).)  Having reviewed the arguments and evidence on record,[11] it is clear that Lokring did not exert "near life and death economic power" over Plaintiffs such that a fiduciary relationship existed.

More importantly, Plaintiffs have not shown that some power imbalance produced the EDA and NDA.  In fact, it is clear that Brad Shepard had far more experience and insight into Lokring any the typical independent contractor, franchisee, etc.  He had been a part of his father's business for years.  And so Brad Shepard knew the implications, resulting duties, and stakes of the contracts he executed on behalf of himself and Shepard and Associates.  No reasonable jury could conclude otherwise.

The same result inheres if the Court applies the elements outlined in *Franklin Park Lincoln-Mercury Inc. v. Ford Motor Co.*, 530 F. App'x 542 (6th Cir. 2013) to establish the

---

[11] Plaintiffs attach affidavits from Brad Shepard, Joe Shepard, and John Sayre to their opposition to Lokring's motion for summary judgment.  (Doc. Nos. 335-1, 335-2, 335-3).  Lokring asserts that the Court may not consider the information in these affidavits because they "consist of improper hearsay testimony and inadmissible parol evidence."  (Doc. No. 338 at 12229).  For the Court to consider extrinsic evidence, "there [ ] must be ambiguity" in the contract terms. *Arrowood Indemnity Co. v. The Lubrizol Corp. et al.*, No. 1:10-cv-2871, 2015 WL 12734893, at *4 (N.D. Ohio Apr. 14, 2015).  Because Plaintiffs do not claim that the terms of the EDA are ambiguous and the parties previously "agreed that the EDA represents 'the entire Agreement and understanding of the parties relating to the subject matter hereof and supersedes all prior discussion and negotiations,'" (Doc No. 259 at 4529), the Court will not consider the affidavits attached to Plaintiffs' opposition.

existence of such a fiduciary relationship: "(1) the vulnerability of one party to the other which (2) results in the empowerment of the stronger party by the weaker which (3) empowerment has been solicited or accepted by the stronger party and (4) prevents the weaker party from effectively protecting itself." *Id.* at 546 (quoting *Manhattan Motorcars*, 244 F.R.D. at 214-15).

Plaintiffs have not introduced evidence that they were prevented from effectively protecting themselves as a result of their relationship with Lokring and the terms of the EDA. Both Plaintiffs and Lokring acknowledge that the EDA contains a 30-day termination provision. (Doc. No. 306 at 6587; Doc. No. 335 at 12007.)  As Lokring highlights, this provision allows for *either* party to terminate the EDA with 30 days' notice.  (Doc No. 306 at 6587.)  The fact that Plaintiffs did not initially agree to this term does not negate the fact that the termination provision allowed Plaintiffs to protect themselves should the distribution agreement become disadvantageous.  The other points Plaintiffs raise in opposition to Lokring's motion likewise do not "set forth specific facts showing that there is a genuine issue for trial" regarding the existence of a fiduciary relationship with Lokring.  *Liberty Lobby*, 477 U.S. at 250 (articulating the standard for submitting issues to the jury).

Plaintiffs' claim for breach of fiduciary duty fails as a matter of law, and Lokring's motion for summary judgment is granted with respect to Count Two of Plaintiffs' Second Amended Complaint.

### III.      Conclusion

Lokring's motion for summary judgment on its remaining Counterclaims (Doc. Nos. 310 and 311) is DENIED.

Plaintiffs' motion for summary judgment on Lokring's remaining Counterclaims (Doc. No. 307) is GRANTED as to the federal Lanham Act claim in Counterclaim Nine and DENIED as to all other Counterclaims.

Lokring's motion for summary judgment on the remaining claims in Plaintiffs' Second Amended Complaint (Doc. Nos. 306 and 312) is GRANTED as to Count Two and otherwise DENIED.

Plaintiffs' request to exclude the expert report of W. James Lloyd from summary judgment consideration is denied and, for the reasons stated herein, *Plaintiffs' Motion in Limine to Exclude the Expert Report of W. James Lloyd* (Doc. No. 299) is likewise DENIED.

**IT IS SO ORDERED.**

Date: August 18, 2023

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE