UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHEPARD AND ASSOCIATES, INC., *et al.*, | ) CASE NO.  1:20-cv-02488 |
| Plaintiff, | ) |
| | ) JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) |
| LOKRING TECHNOLOGY, LLC, | ) |
| | ) **MEMORANDUM OPINION** |
| Defendant/Third-Party Plaintiff, | ) **AND ORDER** |
| v. | ) |
| TUBE-MAC INDUSTRIES, INC., | ) |
| Third-Party Defendant. | ) |

Before the Court is Third-Party Defendant Tube-Mac Industries, Inc.'s Motion for Attorney's Fees and Costs.  (Doc. No. 427.)[1]  Third-Party Plaintiff Lokring Technology, Inc., opposed the motion (Doc. 440), and Tube-Mac replied in support (Doc. No. 441).  For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

**I.     Background**

On August 15, 2023, the Court granted Tube-Mac's motion for summary judgment on Lokring's three remaining claims against it: trade secret misappropriation under the Defend Trade Secrets Act, trade secret misappropriation under Ohio law, and unfair competition under both federal and Ohio law.  (Doc. No. 412.)[2]  No notice of appeal was filed, and the time to do

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

[2] The Court's Memorandum Opinion and Order granting Tube-Mac's Motion for Summary

so has passed.

Tub-Mac now moves for all allowable fees and costs pursuant to Federal Rule of Civil Procedure 54, 28 U.S.C. § 1927, and this Court's inherent powers. (Doc. No. 427 at 16914.) In support of its Motion, Tube-Mac attached the Declaration of Lynn Alstadt ("Declaration"), an attorney with the law firm representing Tube-Mac in this litigation. (*See* Doc. No. 427-5.) Appended to the Declaration are invoices, billing statements, and financial records in support of Tube-Mac's request for $1,014,849.69 in fees and costs. (*See id.*)

## II. **Taxable Costs**

Federal Rule of Civil Procedure 54(d) provides that costs, other than attorneys' fees, should be allowed to the prevailing party. Fed. R. Civ. P. 54(d)(1). This Rule creates a presumption in favor of awarding costs. *White & White, Inc. Am. Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986). Once Rule 54(d) is invoked, the unsuccessful party bears the burden of overcoming this presumption. *Id*. at 732.

Those costs recoverable under Rule 54(d) are specifically listed in 28 U.S.C. § 1920 ("Section 1920"). Section 1920 states:

> A judge or clerk of court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for us in this case;
>
> (5) Docket fees under section 1923 of this title;

---

Judgment details the dispute between Tube-Mac and Lokring. (*See* Doc. No. 412 at 16671-74.) That factual summary is incorporated herein by reference.

> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretation services under section 1828 of this title.
>
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

"[T]he discretion that Rule 54(d)(1) gives courts (the 'unless the court otherwise directs' proviso) is discretion to decline requests for costs, not discretion to award costs that § 1920 fails to enumerate." *In re Cardizem CD Antitrust Litig.*, 481 F.3d 355, 359 (6th Cir. 2007)

Tube-Mac was granted summary judgment on all Lokring's remaining claims. (Doc. No. 412 at 16710.) Lokring's time to appeal the summary dismissal of its claims has passed. (*See id.*) Tube-Mac is the prevailing party. (*Id.*)

The Declaration identifies specific costs for which Tube-Mac seeks reimbursement: deposition transcripts and videos, subpoena service, electronic storage of documents, and expert witnesses. (*See* Doc. No. 427-5 at ¶¶ 12-16 (deposition transcripts and videos); *id.* at ¶ 20 (subpoena service); *id.* at ¶ 21 (electronic storage fees); *id.* at ¶ 28 (expert witnesses).) Notably, the Declaration states that the "costs incurred by Tube-Mac in defense of the claims asserted against it by Lokring are reasonable." (*Id.* at ¶ 31.) The Declaration also states that the information obtained allowed Tube-Mac to successfully defend itself in this litigation. (*Id.*)

Lokring bears the burden of overcoming the presumption in favor of taxing costs. *White*, 786 F.2d at 732. In opposition, however, Lokring generally states that Tube-Mac "makes little effort to explain why most of its costs were necessary or reasonable, instead relying only on the declaration of Lynn Alstadt, which merely lists the fees and costs incurred, without any detail or differentiation between amounts recoverable as fees and as costs." (Doc. No. 440 at 17659.)[3]

---

[3] Lokring cites *Phillips v. N. Am., LLC v. Otton*, No. 1:19-cv1253, 2021 WL 4711951 (N.D.

A few points about this statement. First, Lokring incorrectly states that the burden rests with Tube-Mac. It does not. *See White*, 786 F.2d at 732. Second, the Declaration does, in fact, attest to the reasonableness and necessity of the costs incurred. (Doc No. 427-5 at ¶ 31.) Third, Lokring fails to provide any support that a declaration like the one here – submitted under penalty of perjury – is somehow insufficient for this Court to award costs. (*See* Doc. No. 440 at 17659-60.) Finally, Lokring's accusation that the Declaration neither details nor differentiates between fees and costs is belied by the contents of the Declaration and the numerous records attached to it in support. (*See* Doc No. 427-5.)

A. **Deposition Transcripts and Videos**

As stated above, a court may tax a party for "fees for printed or electronically recorded transcripts necessarily obtained for use in this case . . . ." 28 U.S.C. § 1920(2). Hard copy transcripts and videotaping costs are both taxable. *BDT Prod., Inc. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 419-20 (6th Cir. 2005), *abrogated on other grounds by Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012).

Lokring took the depositions of seven different individuals associated with Tube-Mac. (Doc. No. 427-5 at ¶ 12.) Lokring also took the depositions of Brad Shepard, the Plaintiff, and Jared Guidry, a dismissed party who, at different times, was employed by Shepard and Tube-

---

Ohio Aug. 20, 2021) to support its assertion that Tube-Mac needed to demonstrate reasonableness and necessity in the first instance. (Doc. No. 440 at 17659.) But *Otton* does not support Lokring's position. In fact, it contradicts it. Deposition costs, including costs associated with video depositions, were awarded against the unsuccessful party over objection. 2021 WL 4711951, at *5. Relying on *White*, the court stated, as this Court does here, that "the burden is on the [unsuccessful party] to identify with specificity why each deposition was not necessary." *Id.* at *2. The unsuccessful party failed to meet its burden, but the court noted that necessity was established nonetheless. *Id.* at *2-3. The court declined other deposition-related charges (e.g. media and could services and realtime services) on the basis that ancillary costs exceed what is allowed under Section 1920. *Id.* at *3.

Mac. (*Id*.) For its part, Tube-Mac noticed one Rule 30(b)(6) deposition for which Lokring presented the following as corporate designees: William Lennon, Mary Jackson, Sean O'Brien, and Mark Sindelar. (*Id*. at ¶ 13.) William Lennon was deposed on a separate occasion pursuant to this Court's Order. (*Id*.) Two expert witnesses were deposed in connection with the dispute between Tube-Mac and Lokring. (*Id*. at ¶ 14.) Tube-Mac also seeks to have its portion of the transcript costs associated with the Court's preliminary injunction hearing included. (*Id*. at ¶ 16.)

Tube-Mac seeks the costs associated with these specific transcriptions and video recordings, all of which are included in a chart. (*Id*. at ¶ 15.) It also attaches the corresponding invoices. (*Id*. at ¶ 15; *see also id.* at 17546-65.)

In its response, Lokring says nothing of the transcription or video recording costs. It does not state why any one of these costs would be unreasonable or unnecessary. (*See* Doc. No. 440 at 17659-60.) Lokring has not overcome the presumption in favor of taxing these costs.

Notwithstanding the absence of an objection from Lokring, the Court finds that the transcriptions and recordings were necessarily obtained for use in the dispute between Lokring and Tube-Mac. Nine of the deposition transcriptions or recordings listed were for witnesses associated with Tube-Mac. (Doc. No. 427-5 at ¶ 12.) Lokring initiated these nine depositions. (*Id*.) The preliminary injunction hearing transcript was also made necessary by Lokring's assertions and repeated reliance on the hearing to support assertions it made against Tube-Mac and Guidry.[4] (Doc. Nos. 94, 95.) Four depositions were tied to Tube-Mac's Rule 30(b)(6) deposition of Lokring. (Doc. No. 427-5 at ¶ 13.) The remaining two depositions were for expert

---

[4] Much like its response in opposition to the present motion, Lokring has often cited to the preliminary injunction transcript to support its claims against Tube-Mac. (*See* Doc. No. 412 at 16696.) Thus, Lokring made this transcript necessary and costs incurred to obtain it were reasonable.

witnesses identified by Lokring and Tube-Mac. (*Id.* at ¶ 14.) Upon review, the costs are also reasonable.

Accordingly, Lokring is taxed $32,070.74 for the deposition and hearing transcripts and deposition recordings. (Doc. No. 427-5 at 17386.)

### B. Subpoena Service

Under Section 1920(1), the "fees of the clerk and marshal" may be taxed. Where the party seeking costs used a private process server, the costs cannot exceed what the U.S. Marshal Service ("USMS") would charge to serve the subpoena. *Arrambide v. Wal-Mart Stores, Inc.*, 33 F. App'x 199, 202-03 (6th Cir. 2002). Per 28 C.F.R. § 0.114, the USMS service fees are "$65 per hour (or portion thereof) for each item served by one USMS employee, agent, or contractor, plus costs and any other out-of-pocket expenses."

Attached to the Declaration are documents detailing service costs. (Doc. No. 427-5 at ¶ 20; *see also id.* at 17585-89.) In reviewing the records, Tube-Mac utilized the services of private process servers who charged approximately $95 to $210 per hour. (*Id.* at 17585-17589.)

Lokring has stated no objection to these service costs. (*See* Doc. No. 440 at 17659-60.) Notwithstanding, Tube-Mac is only entitled to reimbursement in the amount of $65 per subpoena. With ten subpoenas identified (Doc. No. 427-5 at ¶ 20), the total allowable cost is $650. *See* 28 U.S.C. § 1920(1); 28 C.F.R. § 0.114. Lokring is hereby taxed in the amount of $650 in subpoena service fees.

### C. Electronic Storage Costs

Tube-Mac requests data housing costs for its electronically stored documents. (Doc. No. 427-5 at ¶ 21.) Tube-Mac asserts that "this documentation and retention copying service that permitted review and production of documents and [the] retention of produced documents are

noted in each invoice of Exhibit B and are also summarized [in the chart] below." (*Id.*)  Tube-Mac also states that as file storage increased, so did the retention costs. (*Id.*)

Lokring objects to this cost. (Doc. No. 440 at 17659-60.) It argues that Section 1920 does not include storage of electronic records. (*Id.*) In support, Lokring cites *Consumer Fin. Protection Bureau v. Weltman, Weinberg & Resi, Co., LPA*, 342 F. Supp. 3d 766 (N.D. Ohio 2018). (*Id.*) In *Weltman*, the court distinguished between copying to or from electronic files and housing electronic data, with the former falling under Section 1920(4) and the latter not being included in Section 1920 at all. 342 F. 3d at 769-71.

The Court's authority to tax costs is limited to those costs specified in Section 1920. Costs associated with *copying* are taxable. *See* 28 U.S.C. § 1920(4). Costs associated with *retention* are not. *See Weinberg*, 342 F. 3d at 769-71. While Tube-Mac avers that the $32,644.81 it seeks is associated with a "retention and copying service," it does not specifically apportion the costs associated with copying.[5] (Doc. No. 427-5 at ¶ 21.) Accordingly, Tube-Mac's request for electronic storage costs is denied.

D.      **Expert Witness and Travel Costs**

The Declaration references "expert witness work costs" (Doc. No. 427-5 at ¶ 28) and "attorney travel costs" (*id*. at ¶ 3). To the extent Tube-Mac seeks these in costs under Rule 54(d) rather than fees pursuant to the authorities addressed below, the Court addresses each in turn.

Section 1920(6) lists "compensation of court appointed experts" as a taxable cost. "Court appointed experts" is not a defined term in the statute. *Id.* "[T]he starting point in construing a statute is the language of the statute itself," *Randall v. Loftsgaarden*, 478 U.S. 647, 656, 106

---

[5] The referenced chart has two columns, the first of which is named "E-Discovery Data Housing Cost." (Doc. No. 427-5 at ¶ 21.) There is no column for copying, nor is there a separate list of what *copied* files, drives, or documents may be included in the listed invoice totals. (*Id.*)

S.Ct. 3143, 92 L. Ed. 2d 525 (1986), but "[s]tatutory language has meaning only in context." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 415, 125 S. Ct. 2444, 162 L. Ed. 2d 390 (2005). To assist in assessing context, the Sixth Circuit has discussed the close relationship between 1920(6) and Federal Rule of Evidence 706. *Cardizem*, 481 F.3d at 362-63. There are several reasons to support the conclusion that Rule 706 and Section 1920(6) use the term "court appointed expert" in the same manner: the temporal proximity of the enactment of the Federal Rules of Evidence, the amendment to include "court appointed expert," and the House committee report linking Rule 706 and 1920(6). *Id.* at 363-64. For the reasons stated in *Cardizem*, the Court finds that only those experts appointed by it and pursuant to Rule 706 are the "court appointed experts" referenced in Section 1920(6). Since no such witness was appointed in this case, these costs will not be taxed.

Lokring also objects to Tube-Mac's inclusion of attorney travel fees. (Doc. No. 440 at 17660.) Expenses associated with attorney travel are not taxable as costs under Section 1920. *Necak v. Select Portfolio Servicing, Inc.*, No. 1:17-cv-1473, 2019 WL 13196983, at *2 (N.D. Ohio July 25, 2019); *Wyandotte Sav. Bank v. NLRB*, 682 F.2d 119, 120 (6th Cir. 1982) (holding that because they are not mentioned in Section 1920, travel costs cannot be recovered).

For the reasons stated above, the costs associated with deposition and hearing transcripts and deposition recordings, along with those related to service of process, were reasonable and necessary. All other requests for costs are denied. Lokring is hereby ORDERED to pay Tube-Mac $32,720.74 in costs pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d).

### III. Legal Doctrines Governing Tube-Mac's Request for Fees

The "'American Rule' has generally required parties to pay their own attorney's fees in a lawsuit – whether or not they ultimately win or lose the suit." *Wesco Ins. Co. v. Roderick Linton*

*Belfance, LLP*, 39 F.4th 326, 336 (6th Cir. 2022). Like any general rule, there are exceptions to the American Rule. *See id.* One type of exception stems from "sources permit[ing] one party to obtain attorney's fees if the other party (or that party's attorney) has engaged in litigation misconduct." *Id.* at 337. Citing various sources, Tube-Mac invokes this type of exception. (Doc. No. 427 at 16919-21.)

**A. Trade Secret**

The Ohio Uniform Trade Secrets Act and the federal Defend Trade Secrets Act both permit a prevailing party to recover its attorney's fees when a "claim of misappropriation is made in bad faith," which can be established by circumstantial evidence. Ohio Rev. Code § 1333.64(A); 18 U.S.C. § 1836(b)(3)(D); *see also Hytera Commc'ns Corp. v. Motorola Sols., Inc.*, No. 1:17-cv-1794, 2021 WL 1698693, at *2 (N.D. Ohio Apr. 29, 2021). Bad faith "requires objective speciousness of the plaintiff's claim and subjective bad faith in bringing or maintaining the claim." *Degussa Admixtures, Inc. v. Burnett*, 277 F. App'x 530, 534 (6th Cir. 2008) (cleaned up). To show "speciousness," a party need not "conclusively prove a negative," but rather must "point to the absence of evidence of misappropriation in the record." *AWP, Inc. v. Safe Zone Servs., LLC*, No. 3:19-cv-00734, 2022 WL 2910023, *3 (W.D. Ky. July 21, 2022) (quotations omitted). Ohio courts reviewing attorney fee awards in the context of bad faith claims highlight that bad faith requires "a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive, or ill will partaking of the nature of fraud." *Metron Nutraceuticals, LLC v. Mark E. Adams, Entox Sols., LLC*, No. 1:20-cv-01803, 2023 WL 6117988, at *2 (N.D. Ohio Sept. 19, 2023) (quoting *State ex. Rel. Summers v. Fox*, 174 N.E.3d 747, 752-53 (Ohio 2021)) (bracket omitted).

Tube-Mac argues that Lokring knew or should have known there was no signed confidentiality contract with Guidry at the outset and certainly after discovery concluded. (Doc.

No. 427 at 16922-23.)  It also argues that Lokring knew or should have known that it did not take the necessary precautions to protect its proprietary information.  (*Id.* at 16924-25.)  Tube-Mac further argues that there was no evidence Guidry took the customer lists by nefarious means.  (*Id.* at 16923-24.)

Lokring rightly counters that the mere fact that the claims were unsuccessful is not enough to merit a finding of bad faith under either federal or Ohio law.  (Doc. No. 440 at 17632.)  Tube-Mac must demonstrate, and this Court must find, that Lokring's misappropriation claims were objectively specious *and* that Lokring subjectively asserted those claims in bad faith.  (*Id.*)  Lokring urges that where courts found objective speciousness, there was a total absence of evidence to support the claim.  (*Id.* at 17639.)

Tube-Mac prevailed on summary judgment, but the Court's analysis does not stop there.  While Lokring did not meet its burden under Rule 56, it had a basis to pursue discovery as to a confidentiality agreement with Guidry and what Guidry did with the Lokring information he obtained after he began working for Tube-Mac.  It is certainly material to this Court's analysis that Guidry sent emails challenging the quality of Lokring's product from a Tube-Mac server.

Lokring's claims were not wholly baseless, and Tube-Mac has not satisfied this Court that Lokring, or its lead counsel in this matter, pursued the trade secret claims in bad faith.

### B. Lanham Act

The Lanham Act grants courts the discretion to award attorney's fees to prevailing parties "in exceptional cases."  15 U.S.C. § 1117(a).  The Supreme Court construed the term "exceptional" "in accordance with [its] ordinary meaning" to signify "'uncommon,' 'rare,' or 'not ordinary.'"  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014) (quotations and citations omitted).  "An 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both

the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 235 (6th Cir. 2019) (applying *Octane Fitness*' definition of "exceptional" in the Lanham Act context) (brackets omitted).

The party seeking fees under this section bears the burden of proving that the case is exceptional by a preponderance of the evidence. *Hytera Comms. Corp., Ltd. v. Motorola Sols., Inc.*, No. 1:17-cv-1794, 2021 WL 1698693, at *1 (N.D. Ohio Apr. 29, 2021). District courts determine whether a case is exceptional on a case-by-case basis, considering the totality of the circumstances. *Miller v. Hurst*, No. 3:17-cv-00791, 2021 WL 859552, at *2 (M.D. Tenn. Mar. 8, 2021). The Court's authority to impose fees under the Lanham Act is discretionary. *Id.*

Tube-Mac argues that Lokring never had evidence of lost business, lost customers, or widespread customer confusion. (*See* Doc. No. 427 at 16925-26.)

> Lokring argues:
>
> True, granting summary judgment necessarily means that the Court found the facts unequivocally favored one side. But it is important not to conflate the summary judgment standard with the standard for an "exceptional case" – otherwise every case in which a court grants summary judgment would also entail fee shifting. There is no suggestion, either in statutory language, or case law, that this would be an appropriate result.

(Doc. No. 44 at 17641 (quoting *Alamo Grp., Inc. v. Fecon, Inc.*, No. 1:17-cv-820, 2021 WL 3660198, at *5 (S.D. Ohio Aug. 17, 2021)).) *See also Hytera*, 2021 WL 1698693, at *2 (declining to find that plaintiff's position was "so devoid of substance that it renders the case extraordinary for purposes of assigning attorney fees."). This is because "the point of an exceptional finding is not to punish a party for advancing a position that ultimately loses." *Alamo Grp., Inc.*, 2021 WL 3660198, at *5.

Lokring's litigating position – when put to the test during the summary judgment phase – did not present any material fact in dispute. This is true. But was it "exceptionally" devoid of evidentiary support? No. Lokring obtained and cited evidence in support of its summary judgment papers. There were matters pursued in discovery, including whether any customer was persuaded or deceived by Guidry's emails sent from Tube-Mac servers, that Lokring included in its dispositive motion papers. A litigating position that ultimately did not withstand summary judgment is not by itself exceptional. Tube-Mac has not demonstrated to the Court that Lokring's pursuit of the Lanham Act claim was so lacking in evidentiary support as to make its position "exceptional."

A case still may be deemed exceptional due to the manner in which it was litigated. *See Evoqua Water*, 940 F.3d at 235. To be sure, Lokring and its lead counsel provided Tube-Mac with much to cite in support of this proposition. But because the alleged exceptional nature in which Lokring pursued its claims dovetails with vexatious litigation, the Court will address attorney conduct below.

### C. Vexatious Litigation

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. A court may impose personal liability on an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." *BDT Prod., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 757 (6th Cir. 2010). Awards of attorney's fees "are warranted when an attorney engages in conduct that 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Magnesium Mach., LLC v. Terves, LLC*, 2021 WL 5772533, at *6 (6th Cir. 2021) (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1049

(6th Cir. 1996)).  The Sixth Circuit found that "at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney" under 28 U.S.C. § 1927.  *Jones v. The Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986).

Tube-Mac lists multiple instances of alleged misconduct:

1. Belated pursuit of an unpleaded trademark infringement claim (Dkt. 311, PageID# 8482; Dkt. 418, PageID# 16791–92; Dkt. 341, PageID# 12296; Dkt. 328-3, PageID# 11736–37) and contending Tube-Mac was liable for acts of Plaintiffs and/or unpleaded spoliated evidence (Dkt. 296, PageID# 4964; Dkt. 418, PageID#16765–66).

2. Nondisclosure of damage theories, including (a) a presumption of damages theory for Count 9 and (b) profit margin information on which Lokring's expert witness relied for opining on damages contrary to prior representations by counsel that the expert would only rely upon documents produced by Lokring (Dkt. 297, PageID# 5074-75; Dkt. 297-1, PageID# 5079; *see also* Dkt. 296, PageID# 4960–66).

3. Requiring Tube-Mac to file a motion to compel for Lokring's failure to respond to interrogatories based on an incorrect counting of interrogatories. (Dkts. 214, 218, 219, and April 27, 2022, non-document order). In Lokring's own opposition, it could not even identify the 25 interrogatories that it had supposedly answered. (Dkt. 218, PageID# 4139).

4. Refusal to admit that it did not possess any agreement involving Mr. Guidry throughout discovery, which was contrary to its own testimony that it did not have it. (Dkt. 158, PageID# 3281–82; Dkt. 163; Dkt. 164; Dkt. 84-3, PageID# 1199).

5. Refusal to produce documents related to its theory of damages and its alleged trade secrets. (*See, e.g.*, Dkt. 164-3, PageID# 3456–59). The Big Contacts database, including a "notes" file, was not produced until July 7, 2023, just a few weeks before the close of discovery. (Exh. 1, *see also* Dkt. 296, PageID# 4960–66; Dkt. 297, PageID# 5074–75).

6. Refusal to produce documents based on confidentiality provisions to delay production, even though there was a protective order (Exh. 1, *see also* Dkts. 86–87).

7. Filing a request to take official notice of uncorroborated and irrelevant documentation related to Mr. Guidry's relationship with his ex-wife (Dkt. 140, 144, 153).

8. Disregarding the Court's page limitations during summary judgment by attempting to file two reply briefs exceeding 20 total pages (Dkts. 342, 343, 344).

9. Belatedly contending that the expert report of Mr. Kelly attached to a motion to exclude his testimony (Dkt. 298) included confidential information. This contention was made over a month after the motion was filed and over a week after Lokring, in a publicly available document, cited to the supposedly confidential information included in the report as evidence of what was within a Big Contacts "notes" file that Plaintiffs allegedly misappropriated (Dkt. 322, at PageID# 11611–12; Dkt. 322-2 at PageID# 11641; Dkt. 311, PageID# 8475).

10. Engaging in repeated pejorative name calling and delaying production of documents that Lokring alleged to be or contain the trade secrets misappropriated by Tube-Mac:

    (a) Unreasonably refused to produce preliminary injunction exhibits T and U to Tube-Mac for months after the preliminary injunction hearing (Dkt. 164-3, PageID# 3456–57).

    (b) Contending the service of noticed subpoenas was unethical conduct by counsel for Tube-Mac (Exh. 2).

    (c) Resolving a discovery dispute by confirming that Lokring's expert witness would only be given documents that Looking had produced during discovery but then having that expert witness rely upon oral representations of Lokring's profit margins that were not produced by Lokring during discovery in violation of FRCP 26(a)(1)(A)(iii). (Dkt. 297, PageID# 5074-75; Dkt. 297-1, PageID# 5079).

    (d) Forcing Tube-Mac to repeatedly engage in meet and confers and ask for Court intervention to resolve straightforward discovery disputes based on positions contrary to basic discovery jurisprudence (Exh. 1 and *see also* Dkt. 158; Dkt. 162, Dkt. 297-2, PageID# 5082; Dkt. 164-3, PageID# 3456–59).

11. Pursuing seven depositions of Tube-Mac personnel to increase costs and learn of Tube-Mac's relationship with Steve Burke (who formerly worked for a Lokring distributor) and his company Hi-Tech Industrial, sales Tube-Mac made to non-Lokring customers like Space-X, who was not included in the Big-Contacts information in a way that provides any contact information (e.g., e-mail or phone number) for any SpaceX personnel, and mining other business data on topics irrelevant to Lokring's claims. (Dkt. 314-1, PageID# 10409–10, 10412, 10533; Dkt. 316-1, PageID# 10893–94, 10899, 10915–16; Dkt. 318-1,

>    PageID# 11286 (Burke) and 11293 (Hitech); Dkt. 319-1, PageID# 11346-47; Dkt. 320-1, PageID# 11500–01, 11503–04, 11506–07, 11510).
>
> 12. Threatening Tube-Mac with a lawsuit to coerce it from working with Mr. Guidry as an independent contractor, (Dkt. 84-3, PageID# 1199), because Mr. Guidry sent Mr. Lennon an e-mail expressing his unhappiness about losing his job and health insurance in the middle of the COVID-19 pandemic due to Lokring terminating the agreement with Mr. Guidry's former employer, Plaintiffs. (Dkt. 313-1, PageID# 10348–53).
>
> 13. Pursuing claims against Tube-Mac as discussed herein when the damages could not have realistically been significant (Dkt. 297-11, PageID# 5394, ¶ 73). Lokring's actual damage from the alleged conduct could not have been considered to be anything more than a relatively nominal sum since similar information is publicly available for a nominal fee of a few hundred dollars a month (Dkt. 309-9, PageID# 7044, ¶ 2; Dkt. 309-8, PageID# 7042, pp. 206–08) and Lokring paid Joe Shepard $1,000 for the administrative rights to the Big Contacts information (Dkt. 61, ¶¶ 55, 60, 63; Dkt. 147, PageID# 2238, 2271, 2287; Dkt. 148, PageID# 2372–78; Dkt. 309-8, PageID# 7042).

(Doc. No. 427 at 16927-29) (paragraph numbers corrected).

Lokring cites cases that distinguish zealous representation from unreasonable conduct. (Doc. No. 440 at 17657-58.) The imposition of attorney's fees as a sanction under 28 U.S.C. § 1927 ("Section 1927") is a high bar – reserved only for instances of objectively unreasonable conduct. *See Red Carpet Studios Div. of Source Adv. Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). As such, sanctions under Section 1927 are warranted only where "an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997) (quoting *Jones*, 789 F.2d at 1230).

Since the purpose of Section 1927 is to "deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy," more than negligence or incompetence is required. *Red Carpet Studios*, 465 F.3d at 646. As such, the central inquiry under Section 1927 is whether there is conduct at issue that "trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar

to the court . . . ." *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987).

A couple of initial points regarding Tube-Mac's list of contentions. First, Tube-Mac did not comply with Local Rule 37.1 when it filed the motion to compel cited in point 3. (Doc. No. 427 at 16927.) Meaning, the dispute may have been resolved without need to prepare and file a motion to compel if Tube-Mac complied with this Court's rules. Second, while unnecessary meet-and-confers may suggest vexatiousness, Tube-Mac's description of those conferences as "addressing straightforward discovery disputes based on positions contrary to basic discovery jurisprudence" is so vague as to potentially deter parties from meeting and conferring at all. (*Id.* at 16928.) Third, challenging the lawsuit at its inception because the damages "could not have realistically been significant" misses the point of trademark litigation. (*Id.* at 16929.) It also illustrates an inconsistency in Tube-Mac's positions. On one hand, Tube-Mac asserts that Lokring failed to properly protect its information and that Lokring should have known it. (*Id.* at 16924-25.) And then, on the other hand, Tube-Mac asserts that a party is vexatious for seeking to protect information by way of litigation if damages may be nominal. (*Id.* at 16927.) The "nominal damages" point is not well-taken. (*See id.*)

Other points, like lead counsel's willingness to engage in pejorative name calling and his delayed production of documents – including withholding documents Lokring's lead counsel acknowledged to the Court were both relevant to its unfair competition claims and subject to the protective order – are much closer calls. (*Id.* at 16927-29.) But when balancing those examples with the entirety of this particular litigation, the Court cannot find, as it must, that the conduct reached the level of vexatiousness necessary to warrant imposing an award of fees.[6]

---

[6] To be clear, the Court does not in any way condone lead counsel's conduct in this regard.

### D. Inherent Authority of the Court

The Court has the inherent power to manage its own affairs to achieve the orderly and expeditious disposition of cases. *Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962). An assessment of attorney's fees for an abuse of the judicial process is available to the Court under its inherent powers. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). The Court can assess attorney's fees "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 45-46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)). Bad faith is "something more than that a party knowingly pursu[ing] a meritless claim or action at any stage of the proceedings." *Lexmark*, 602 F.3d at 753 (emphasis omitted).

"In this Circuit, 'bad faith' is a requirement for the use of the district court's inherent authority." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 519 (6th Cir. 2002). Such "bad faith" requires "(1) that the claims advanced were meritless, (2) that counsel knew or should have known this, and (3) that the motive for filing suit was for an improper purpose such as harassment." *Magnesium Mach., LLC v. Terves, LLC*, No. 20-3779, 2021 WL 5772533, at *5 (6th Cir. Dec. 6, 2021) (quoting *United States v. Llanez-Garcia*, 735 F.3d 483, 492 (6th Cir. 2013)). Still, under inherent powers, the award of attorney's fees is to be "compensatory rather than punitive in nature." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017).

For all the reasons stated above, the Court declines to use its inherent authority as a basis to grant Tube-Mac's request for fees.

### IV. Conclusion

For the reasons stated herein, Tube-Mac's Motion for Fees and Costs is GRANTED in part and DENIED in part. Lokring is ORDERED to pay Tube-Mac $32,720.74 in costs pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d). Tube-Mac's remaining requests for costs and fees

are DENIED.

        **IT IS SO ORDERED.**

**Date**: March 29, 2024

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE